11/26/2014 3:23:06 PM
Chris Daniel - District Clerk Harris County
Envelope No. 3315236
By: KATINA WILLIAMS
Filed: 11/26/2014 3:23:06 PM

Case No. 2014-44974

| | | |
|---|---|---|
| Jared Woodfill; Steven F. Hotze; | § | In the District Court of |
| F.N. Williams, Sr.; and Max Miller | § | |
| *Plaintiffs,* | § | |
| v. | § | Harris County, Texas |
| Annise D. Parker, Mayor; Anna Russell, | § | |
| City Secretary; and City of Houston | § | |
| *Defendants.* | § | 152nd Judicial District Court |

## Defendants' Motion for Partial Summary Judgment

This Court should grant partial summary judgment in favor of all defendants and against plaintiffs on several discrete, purely legal issues. Plaintiffs' referendum petition failed to satisfy the requirements of the City Charter and the Texas Election Code, and contains thousands of deficient signatures on thousands of deficient pages that reflect pervasive non-accidental defects.

At this point, Defendants are not asking the Court to rule that any particular page falls into any of the categories described below or adjudicate any disputed facts regarding particular pages or signatures. To the contrary, Defendants' motion seeks partial summary judgment only with respect to the *legal requirements* necessary for petition pages and signatures to be valid. The parties need the Court's guidance on these threshold legal requirements, so the parties can then work to reach stipulations about the number of pages in each category and can assess the factual issues remaining for trial.

In an attempt to thwart Houston's Equal Rights Ordinance ("HERO"), plaintiffs (1) failed to adhere to the "manner and form" requirements for petitions, (2) failed to have thousands of signatures properly notarized, and (3) implausibly submitted more than hundred duplicate signatures when, of course, people only are allowed to sign once. In their pre-petition training materials and videos, plaintiffs and their fellow petition organizers admitted (indeed, emphasized) the legal requirements for a valid petition and warned that noncompliant signatures

3442501v1/014442

1

Exhibit E

and petition pages would be disqualified and "thrown out."  Because their petition failed, plaintiffs now change their story to argue the legal requirements do not matter.  Plaintiffs are wrong.

Part I of this motion discusses the pertinent background facts.  As Part II explains, it is not necessary for the Court to make factual findings with respect to any of these facts to rule on the purely legal matters at issue in this motion for partial summary judgment.

In Part III, Defendants move for partial summary judgment to establish the legal invalidity of five discrete categories of petition pages based on their failure to meet the City Charter's *manner and form* requirements:

- Pages where the circulator's affidavit was not notarized.

- Pages where the circulator notarized his or her own affidavit.

- Pages where the circulator's signature is invalid.

- Pages on which a circulator did not sign the oath.

- Pages where the circulator did not properly subscribe the oath.

- Pages certified by circulators who did not validly sign the petition.

In Part IV, Defendants move for partial summary judgment to establish the legal invalidity of four discrete categories of petition signatures:

- Signatures that were crossed-out or withdrawn before the petition was submitted cannot be counted as legally valid signatures under Texas Election Code § 277.0022(a).

- Signatures that pre-date June 3, 2014, the first day people lawfully could sign the petition under the City Charter.

- Signatures added after the circulator signed the verification.

- Signatures of the same person that appear more than once.

The Court's resolution of these legal matters will enable the parties to refine their presentations to the trier of fact, and will better position the parties and this Court to discuss the most appropriate and efficient way to resolve this matter.

I.
Facts

A.    The Petition Failed

This lawsuit arises out of the Houston City Council's passage of HERO, Ordinance No. 2014-530, which prohibits discrimination based on an individual's sex, race, color, ethnicity, national origin, age, familial status, marital status, military status, religion, disability, sexual orientation, genetic information, gender identity, or pregnancy in city employment and city services, city contracts, public accommodations, private employment (excluding religious organizations), and housing.  The City Council passed HERO on May 28, 2014, and HERO was published on June 3, 2014.  *See* X-1, at 4 (HERO).

Plaintiffs and others organized a petition drive to try to force the City Council to repeal HERO or place it on the ballot for a referendum vote.  On July 3, 2014, plaintiffs and their fellow petition organizers presented the City Secretary with a referendum petition that they claimed included approximately 55,000 signatures, although plaintiffs crossed out and withdrew nearly 24,000 signatures (more than 40%) for reasons they chose not to explain.

On August 4, 2014, City Secretary sent the Mayor a memorandum noting that the City Charter required 17,269 signatures for the referendum to pass and stating in the last paragraph that:

> According to the City Attorney's Office and reviewed by the City Secretary the analysis of the City Attorney's Office, 2,750 pages containing 16,010 signatures do not contain sufficient acknowledgment as required by the Charter.  Therefore, according to the City Attorney's Office *only 2,449 pages containing 15,249 signatures can lawfully be considered* toward the signatures required.

On August 14, 2014, the City Secretary Anna Russell debunked plaintiffs' false assertion that she validated the petition, and signed an Affidavit noting: "***The contention that my staff or I "validated" the July 3 Petition is <u>not</u> correct.  I made no determination of the validity of the July 3 Petition***."  *See* X-4, at ¶ 12, to City's Response in Opposition to Plaintiffs' Request for Temporary Injunction.  The City Secretary reviewed the City Attorney's analysis, attached a copy of the analysis as a part of her memo, and stated that the City Attorney determined that the petition did *not* have a sufficient number of signatures because "***only 2,449 pages containing 15,249 signatures can lawfully be considered toward the signatures required.***"

On August 4, the City issued a press release noting that thousands of signatures on the referendum petition "failed to meet one or more of these requirements and had to be disregarded."  Plaintiffs' efforts to force a referendum failed.

B.    <u>Plaintiffs' Non-Compliance with the Law</u>

The City Charter sets forth specific requirements for referendum petitions, and plaintiffs did not satisfy them.  To be valid, a referendum petition must be signed and verified "*in the manner and form*" set out in the City Charter.  *See* City Charter Art. VII-b, §§ 3, 2(a), Art. VII-a; *see also* Tex. Elec. Code Ann. § 277.001, *et seq.*

Among other things, the City Charter requires a person collecting signatures on a petition to sign an affidavit before a notary public on each page with signatures.  The City Charter specifies the requirements of that affidavit, mandating that on each page the circulator must swear under oath that (1) the circulator is one of the signers of the petition, (2) the statements in the petition are true, (3) each signature on the page was made in the circulator's presence on the day and date it purports to have been made, and (4) the signature is a genuine signature of the

person whose name it purports to be.  *See id.* Art. VII-a, § 3.  Because the City Charter expressly requires a circulator's affidavit, pages that do not contain a proper circulator's affidavit are invalidated along with all signatures on that page as a matter of law.

In fact, the face of the petition alone shows that it did not comply with the City Charter's requirements.  For example:

- Many petition circulators failed to sign and verify the circulator's affidavit and oath as required by Section 3 of Article VII of the City Charter, thus invalidating all signatures on those pages.  *See* X-2, exhibit A at 10-19.

- Many signatures are not valid because there was no record that the petition circulator signed the petition as required by Section 3 of Article VII-a.  *See* X-2, exhibit A at 1-3.

- Many signatures are not valid because there is no record that petition circulators signed the petition as required.  One reason for this defect may result from the failure to include a space for the circulators to sign below the oath as required by the Charter (and as is typical of any written oath).  *See* X-2, exhibit A at 4-9.

- Many signatures are not valid because petition circulators improperly notarized their own oaths in violation of Texas Government Code § 406.008(b)(2) (item 6). *See* X-2, exhibit A at 20.

Plaintiffs and their associates themselves crossed-out and withdrew nearly 24,000 signatures (more than 40% of all signatures) for reasons they chose not fully to explain.

C.    <u>Strict Compliance with the Law is Required</u>

In *In re Francis*, 186 S.W.3d 534, 539 (Tex. 2006), the Texas Supreme Court explained that "We agree that *the omission of any statutorily required information on a petition renders signatures on that petition invalid*."  Texas courts treat requirements for repeal petitions under the Texas Election Code and municipal charter provisions as "analogous to requirements for candidates to get on the ballot, which repeatedly have been held mandatory and *therefore*

*require strict compliance*."  *City of Sherman v. Hudman*, 996 S.W.2d 904, 918 (Tex. App.—Dallas 1999, pet. granted, judgm't vacated w.r.m.).[1]

While plaintiffs argue in this lawsuit that the law does not matter, the fact is plaintiffs and their fellow petition organizers long have known that they had to comply strictly with Texas law. The back side of many of plaintiffs' petition pages, along with publicly available materials, show that plaintiffs were well aware of legal requirements.  Those materials also show that the plaintiffs do not actually believe that their noncompliance is immaterial – even though that's what they now are representing to this Court.  (Defendants have access only to "publicly available" materials because plaintiffs and their associates have resisted producing any documents in this case; plaintiffs' refusal to participate in discovery is the subject of a motion to compel, which will be heard by this Court on December 12.)

Written instructions appear on the back side of many petition pages that plaintiffs and their fellow petition organizers submitted to the City on July 3.  These instructions emphasize the disqualifying importance of strictly adhering to the requirements set by in the City Charter and

---

[1] The Texas Supreme Court vacated the judgment but did not set aside the court of appeals' opinion.  *See* Tex. R. App. Proc. 56.3; *see* Texas Supreme Court Order Sheet, February 3, 2000 (https://www.supreme.courts.state.tx.us/historical/2000/feb/020300.htm).

Exhibit E

the Texas Election Code:



**Instructions to complete and return a petition:**

It is very important that anyone wishing to sign or gather signatures for the "No UNequal Rights" petition
review and follow these steps carefully so that every signature will be valid.

1.  **A person MUST be** registered to vote **in the City of Houston (registered** *and eligible to vote for
    Houston Mayor and City Council*) **in order to:**
    a.  SIGN the petition OR
    b.  GATHER signatures on a petition
2.  **The petition must be completed and signed according to the specific instructions on it:**
    a.  Please request that signers PRINT or WRITE LEGIBLY.  Any name that cannot be read will likely
        be invalidated. Signatures can of course be cursive.
    b.  MUST have:
        i.  First and Last Names (including suffix if relevant to your voter registration)
        ii. Street Number and Name (111 Main Street)
        iii. Date it is signed (month/date/year)
        iv. ZIP Code
    c.  MAY have (but NOT required at time of signing):
        i.  Voter Certificate number
3.  **The completed petition\*** must then be taken BY THE PERSON WHO COLLECTED THE SIGNATURES to
    **any church or business that has a Notary Public available** (list of designated churches\* will be posted
    on this website) **as follows:**
    a.  Sign the affidavit line at the bottom in the presence of the Notary Public; they will then
        complete the date and stamp the petition.
    b.  Petition sheet can be turned in with one or more signatures; does not have to be filled.

X-3 (back side of petition page 115). [2]

    The back sides of other petition pages use different language to emphasize the

importance of petition circulators satisfying the legal requirements imposed by the City Charter

---

[2] This page is also available at http://nounequalrights.com/information/wpcontent/uploads/2014/
05/Petition-Instructions.pdf (last visited on Nov. 21, 2014).

and the Texas Election Code:

## Petition Requirements:

- **EACH PETITION SHEET MUST BE NOTARIZED**
- Must be a registered voter in the City of Houston to SIGN and/or COLLECT signatures
- Signatures MUST be collected AND witnessed by a person registered to vote IN THE CITY OF HOUSTON
- Petitions can be delivered to a Drop off location (to be notarized) or mailed (if already notarized)
- Petitions must be received by mail or turned in to a NO Unequal Rights location by June 27
- If you do not know your Voter Cert #, it will be completed for you

X-4 (back side of petition page 4085).

Petition coalition coordinator Dave Welch, *see* X-8, made a presentation at what appears to be a circulator training lunch, and warned that noncompliance with the City Charter's requirements "would invalidate the entire sheet" of signatures such that they would be "thrown out."



**Dave Welch**

It's less important if someone who's not a registered voter signs the petition. That doesn't invalidate the petition, but if somebody goes in to notarize the sheet of the petition who is not a registered voter *that would invalidate the entire sheet*. OK, let me repeat that so that everybody really understands that. If somebody inadvertently signs the petition who is not a registered voter, that signature is not valid, but the rest of them will be. But, if the person collecting them who takes that to the notary to have it notarized and signed is not a registered voter in the City of Houston, *the whole sheet is thrown out*. OK. So it's very important that we validate that whoever who is in the church is gathering the signatures and overseeing that is a registered voter. It's not that hard. In most of our churches we have registered voters. We just need to make sure.

…

You can't just drop this – drop this [petition sheet] by, it has to be notarized before it actually counts. If the person who is dropping - who completes the petition doesn't have it notarized and just drops it off and leaves, *that sheet can't be used*. Okay. Those steps are very important.

*See* http://vimeo.com/98676462 (minutes 6.30 and 11:07).

D.     "Forgery, Fraud, or Other Non-Accidental Defects" in Plaintiffs' Petition

Defendants have identified substantial evidence of what appears to be "forgery, fraud, or other non-accidental defects" in plaintiffs' petition – evidence that discredits the petition and invalidates thousands of signatures.

Lead plaintiff Woodfill is no stranger to such defects.  Less than three months ago in *Risner v. Harris County Republican Party*, 2014 WL 4373568, *10-11 (Tex. App. – Houston [1st Dist.] Sept. 3, 2014, no pet. h.), the court considered an election case in which Woodfill (who at the time served as the Chair of the Harris County Republican Party) accepted "facially valid" election petition pages that turned out to involve "forgery, fraud, or other non-accidental defects discoverable only by independent investigation," including defects in circulators' certifications.  *Id.* at *14 (citing *In re Francis*, 186 S.W.3d 534, 542 (Tex. 2006)).  The *Risner* court cited the Texas Supreme Court's decision in *In re Bell* and noted that "we must construe the Election Code in light of the objectives sought to be attained by the code, and 'one of the principal purposes behind the Election Code [is] the prevention of election fraud.'"  *Risner*, 2014 WL 4373568 at *11 (citing *In re Bell*, 91 S.W.3d 784, 785 (Tex. 2002).

The *Risner* court rejected Woodfill's argument that "the truthfulness of a circulator's affidavit is strictly a criminal matter and should not be subject to challenge in a civil injunction proceeding."  *Id.* at *10.  The court explained that "prevention of election fraud" was important and concluded that:

> a challenge to a candidate's application may result in a review of the truthfulness of the application's contents. Based on the trial court's findings that *the circulator's affidavits* contained false statements, that the petition pages contained *fraudulent signatures*, and that there were less than 250 valid signatures filed with Salazar's application, Salazar's application was deficient when it was filed and on the December 9, 2013 filing date.

*Id.* at *11 (citations omitted).  The court reversed and enjoined the Harris County Republican Party from certifying Salazar's name for inclusion on the general election ballot. (Woodfill previously had "certified Salazar for the primary ballot." *Id.* at *2, 16.)

Defendants have a valid legal interest in applying the Texas Election Code's and City Charter's requirements "to protect the integrity and reliability" of the referendum process, and Defendants' interest "is particularly strong with respect to efforts to root out fraud." *Doe v. Reed*, 561 U.S. 186, 187-88 (2010).

The U.S. Supreme Court has made clear, however, that Defendants' "interest in preserving electoral integrity is not limited to combating fraud. That interest extends to efforts to ferret out invalid signatures caused not by fraud but by simple mistake, such as duplicate signatures or signatures of individuals who are not registered to vote…." *Id.* n.8; *see also Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."); *In re Bell*, 91 S.W.3d at 785 (finding the statutory purpose of preventing election fraud serves as a guide when construing petition requirements). Plaintiff Woodfill's previous involvement in a fraudulent petition, evidence of fraud in this case, and multiple other defects in petition signatures and pages underscore Defendants' legal interest in enforcing the Texas Election Code's and City Charter's requirements here.[3]

---

[3] The fraudulent and non-accidental defects that pervade plaintiffs' failed petition are not the subject of this motion and do not now require any findings from this Court.

II.

Partial Summary Judgment Is Proper and Necessary

This Court should grant partial summary judgment on the discrete legal issues raised by the Defendants' motion.  The Defendants' motion raises pure issues of law and there are no genuine issues of material fact.  *See* Tex. R. Civ. P. 166a(c).  It is for this Court to decide as a matter of law the legal requirements for valid referendum petitions under the City Charter and the Texas Election Code.  *See City of Houston v. Todd*, 41 S.W.3d 289, 297 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) ("Matters of statutory construction are questions of law for the court to decide," and courts must "construe a city charter provision according to the rules governing the interpretation of statutes generally").  Defendants are entitled to summary judgment on legal requirements of the Texas Election Code and City Charter.

III.

Categories of Legally Invalid Petition Pages

A.      Circulator's Signature Not Notarized

The City Charter expressly provides "Form of Petition" requirements in § 3 of Article VII-a, including the requirement that "Each signature to said petition shall be proved or acknowledged as required of petitioners by Article IX, Section 3 of this Charter, or shall be verified as follows."  What "follows" in § 3, Article VII-a, is a sample affidavit for circulators that must be sworn to and subscribed before a notary.  Likewise, Article IX, § 3 requires that each circulator signature "must be made acknowledged or proved before an officer authorized by law to take acknowledgments and proof of deeds."  Thus, the City Charter requires that each page of the petition be validly sworn to and subscribed before a notary.

Under Texas law, a notary's certification must include a certificate of acknowledgement, the notary's signature, and the notary's seal.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 121.004(b) ("The officer shall: (1) make a certificate of the acknowledgment; (2) sign the

11

certificate; and (3) seal the certificate with the seal of office."). To be valid, the notary's commission must be valid; it cannot have expired before the notary certified the page. *See* City Charter Art. IX, § 3 ("Petitions") ("To each signature the house address of the signer must be added, and the signature must be made acknowledged or proved before an officer authorized by law to take acknowledgments and proof of deeds."); Tex. Gov. Code Ann. § 406.002 ("The term of a notary public expires four years after the date the notary public qualifies.")

Defendants have identified numerous petition pages that are legally deficient because they do not comply with these and other certification requirements. *See* X-11 (sample petition pages). In some cases, there is no notary at all on the circulator's affidavit. In other cases, the notary's certification lacked all legally required elements. In other cases, the notary's term had expired. In each case, the relevant page is not certified by a notary as required. This Court should rule as a matter of law that any pages that are not notarized, have incomplete notarizations, or were notarized by persons with expired notary commissions are legally insufficient under § 3, Article VII-a, of the City Charter. *See In re Francis,* 186 S.W.3d at 539 ("We agree that the ***omission of any statutorily required information on a petition renders signatures on that petition invalid***.").

The petition organizers were well aware of these notary requirements. Their petition instructions repeatedly and consistently acknowledge the importance of notarizing each petition page. See, for example, X-4 (excerpt from back side of petition page 4085):



## Petition Requirements:
• EACH PETITION SHEET MUST BE NOTARIZED

And X-3 (excerpt from back side of petition page 115):

3. **The completed petition\*** must then be taken BY THE PERSON WHO COLLECTED THE SIGNATURES to any church or business that has a N**otary Public available** (list of designated churches\* will be posted on this website) as follows:

   a. Sign the affidavit line at the bottom in the presence of the Notary Public; they will then complete the date and stamp the petition.

Coalition organizer Dave Welch also emphasized the importance of this requirement:



**Dave Welch**

You can't just drop this – drop this [petition sheet] by, *it has to be notarized before it actually counts. If the person who is dropping - who completes the petition doesn't have it notarized and just drops it off and leaves, that sheet can't be used*. Okay. Those steps are very important.

*See* http://vimeo.com/98676462 (minutes 11:07).

B.   Circulators Who Notarized Their Own Signature

Contrary to the "Form of Petition" requirements in § 3, Article VII-a and Texas law, there are petition pages where the circulator notarizes his or her own signature.

§ STATE OF TEXAS
① § COUNTY OF HARRIS

Pamela Mitchell, being first duly sworn on oath depose and say: that I am one of the signers of the above petition, that the statements made therein are true, and that each signature appearing thereto was made in my presence on the day and date it purports to have been made, and I solemnly swear that the same is a genuine signature of the person whose name it purports to be.

Sworn to and subscribed before me this  27  day of  June , 2014 . Notary Public, State of Texas

PAMELA ANN MITCHELL
My Commission Expires
March 10, 2017

www.NoUNequalrights.com

X-5 (sample petition page).

A notary may not notarize her own signature.  Texas Government Code § 406.008(b)(2) requires the Secretary of State to provide a notary a list of prohibited acts with her commission, and Item 6 on that list of prohibited acts is that "***A Notary Public may not: . . . (6) notarize the notary's own signature***."   Notary Public Information, List of Prohibited Acts, available at http://www.sos.state.tx.us/statdoc/edinfo.shtml#List.   Indeed, it has long been "established in this state, that a person who identifies himself with the transaction by placing his name on the

face of an instrument as an active and essential party thereto, is not competent to give it authenticity as an officer." *Clements v. Texas Co.,* 273 S.W.993, 1004 (Tex. Civ. App.—Galveston 1925, writ ref'd).

Texas courts therefore recognize that a notary cannot notarize his or her own signature. *See also Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 551 (Tex. App.—Texarkana 2014) ("Hamilton, as a notary, could not notarize her own signature."); *Linder v. Bell Cnty. Bail Bond Bd.*, No. 03-05-00710-CV, 2007 WL 437163, at *4 (Tex. App.—Austin Feb. 8, 2007) (problems with a document included that "it was self-notarized.").

This Court should rule that pages in which circulators notarized their own signatures are legally deficient.

C.   Invalid Circulator Names

On several pages, the circulator's name is invalid because he or she failed to both print and sign their name, and often the signature is illegible.  For example:



X-12 (sample petition pages).

This defect is the result of the petition-organizers' failure to include on their petition a space for the circulators to sign *below the oath* as required by the Charter (and as is typical of any written oath).  Some circulators signed in the blank following the first word of the oath ("I, _____, being first duly sworn on oath… "), a space designed for the circulator to print his or her name to identify who is taking and signing the oath—and did not otherwise print their name, making it impossible to verify the identity of the circulator.  Just as the requirements for

a valid petition signature provide for the individual to include both the signer's printed name and signature, the space in the oath where the name would typically be printed permits the person to be identified if the signature is illegible.   *See* Tex. Elec. Code Ann. § 277.002(a)(1)(A).

Without a legible circulator's name, the City Secretary is unable to verify the circulator's identity or evaluate the authenticity of the affidavit.   Indeed, the Texas Municipal Clerks' Handbook contemplates this possibility and authorizes the City Secretary to exclude pages where signatures are illegible:

> Printed name - no court decision has been found on failure to include the signer's name in printed form. The purpose of the requirement is to assist the verifying officer in deciphering the signer's name in signature form.  If a petition does not include any printed names, the city secretary would be warranted in treating the petition as fatally defective without examination of individual signatures. The city secretary would be warranted in disallowing a particular signature that is not clearly legible where the printed form is missing.

Texas Municipal Clerks' Handbook § 8.2(i)(2); *see also Lee v. Smith*, 927 F. Supp. 205, 209 (E.D. Tex. 1996) (finding no likelihood of success with a petition that included "such incomplete information that verification of the individual was not possible").

The petition organizers themselves acknowledged the importance of writing legibly. Their own instructions (*see* X-3) stated:



2.  **The petition must be completed and signed according to the specific instructions on it:**
    a.  Please request that signers PRINT or WRITE LEGIBLY. Any name that cannot be read will likely be invalidated. Signatures can of course be cursive.

This Court should rule as a matter of law that a circulator's name must be legible.

D.      Circulator Did Not Sign the Required Oath

As noted above, § 3, Article VII-a, of the City Charter expressly provides that the circulator's oath must be sworn to and subscribed before a notary.  Although some oaths may be taken orally (e.g., a witness in court or deposition), an oath must be signed in order to be subscribed as the City Charter requires.  *See Wasson v. Clarendon Coll. & Univ. Training Sch.,* 131 S.W. 852, 852-53 (Tex. Civ. App.—Austin 1910, no writ) ("'Subscribe' means to sign one's own name beneath at the end of an instrument"); *Wade v. State,* 2 S.W. 594 (Tex. Ct. App. 1886) (equating sign with subscribe).

Section 3 of Article VII-a of the City Charter provides:

Each signature to said petition shall be proved or acknowledged . . . as follows:

STATE OF TEXAS        §
COUNTY OF HARRIS   §

        I, _____, being first duly sworn on oath depose and say that I am one of the signers of the above petition, that the statements made therein are true, and that each signature appearing thereto was made in my presence on the day and date it purports to have been made, and I solemnly swear that the same is a genuine signature of the person whose name it purports to be:

                                        _____

Sworn to and subscribed before me the ____day of _____, 2_____.

                                Notary Public, State of Texas

The petition organizers created a serious defect by not properly reproducing this verification form on their petition.  They failed to include a line for the circulator's signature, which apparently caused many circulators not to sign the oath.  The example below shows that the circulator printed his name in the oath, but did *not* sign – instead the notary signed, but there is no signed oath by the circulator as required:

> § STATE OF TEXAS
> § COUNTY OF HARRIS
> I, NEAL F. KRENZKE, being first duly sworn on oath depose and say: that I am one of the signers of the above petition, that the statements made therein are true, and that each signature appearing thereto was made in my presence on the day and date it purports to have been made, and I solemnly swear that the same is a genuine signature of the person whose name it purports to be.
>
> Sworn to and subscribed before me this 15th day of June, 2014. Notary Public, State of Texas    Debra Lea Bell
>
> www.NoUNequalrights.com
>
> DEBRA LEA BELL

*See* X-6 (sample petition page).

"[T]he omission of any statutorily required information on a petition renders signatures on that petition invalid." *In re Francis*, 186 S.W.3d at 539. Echoing this requirement, the Texas Municipal Clerks Handbook explains that "if an affidavit is required… by a charter provision…, failure of a particular part of the petition to include the affidavit is critical to the validity of each signature on that part of the petition, as is also true of a candidates petition." § 8.2(i)(2)(D). Even the petition organizers have acknowledged the importance of signing the notary form at the bottom:



3. **The completed petition\*** must then be taken BY THE PERSON WHO COLLECTED THE SIGNATURES to any church or business that has a **Notary Public** available (list of designated churches\* will be posted on this website) as follows:
   a. Sign the affidavit line at the bottom in the presence of the Notary Public; they will then complete the date and stamp the petition.

*See* X-3.

The failure to have a circulator actually sign the required oath renders those pages legally insufficient under § 3, Article VII-a, of the City Charter. This Court should rule that pages where the circulator did not sign his or her oath are legally invalid.

E.    <u>Circulator Did Not Validly Subscribe the Oath</u>

As stated previously, in order to validly subscribe an oath, the person taking such oath or signing an affidavit must sign *at the end* of the instrument.  *See Wasson,* 131 S.W. at 852-53 ("'Subscribe' means to sign one's own name beneath at the end of an instrument").  Again, perhaps caused by the failure of the petition organizers to provide a signature line below the affidavit, many circulators signed in the body of the oath ("I, _____, being first duly sworn . . . ) and failed to sign below the affidavit.  *See* X-5 (sample petition page).  Again, petition organizers knew this was a critical requirement, and provided instruction on the back of the petitions that the circulator must "[s]ign the affidavit line at the bottom. . . ."  *See* X-3.  Even so, many circulators signed where they should have printed their name, instead of at the bottom of the oath.  Those pages without circulator signatures below the oath should be disqualified as a matter of law.

F.    <u>Circulator Did Not Validly Sign Petition</u>

The affidavit provided for under the City Charter requires the circulator to certify that he or she is "one of the signers of the above petition."   § 3, Article VII-a.  In many cases here, however, the circulator's name did not appear as a signer of the petition or had been crossed out before submission.  *See* Tex. Elec. Code. Ann. § 277.0022(a) ("The withdrawal of a signature [before submission] nullifies the signature on the petition and places the signer in the same position as if the signer had not signed the petition.").  This Court should rule that pages signed by circulators who were not "one of the signers of the petition" do not comply with the "Form of Petition" requirements in § 3, Article VII-a and, hence, are legally insufficient.

IV.

Categories of Legally Invalid Signatures

In addition to the categories of legally insufficient petition pages detailed above in Part III, this Court should also rule that certain categories of signatures are legally invalid and cannot properly be counted as a matter of law.  Defendants move for partial summary judgment to establish the legal invalidity of four discrete categories of petition signatures:

- All signatures that were crossed-out or withdrawn before the petition was submitted cannot be counted as legally valid signatures under § 277.0022(a) of the Texas Election Code.

- Signatures that pre-date June 3, 2014, the first day people lawfully could sign the petition under the City Charter.

- Signatures added after the circulator signed the verification.

- Signatures of the same person that appear more than once.

A.     Signatures Crossed Out and Withdrawn

Plaintiffs' referendum petition had nearly 24,000 signatures crossed out or withdrawn when it was submitted to the City for review.  *See, e.g.*, X-7 (sample petition pages).  As a matter of law, all signatures that were crossed out or withdrawn are legally invalid and cannot be counted.

Under § 277.022(a) of the Texas Election Code, a signer "may withdraw the signature by deleting the signature from the petition" before it "is received by the authority with whom it is required to be filed."  But § 277.0022(c) plainly provides that "***The withdrawal of a signature nullifies the signature on the petition and places the signer in the same position as if the signer had not signed the petition***."  *See also* Tex. Attorney Gen. Op. GA-0209 (2004) ("The effect of a signature being timely withdrawn was that the signature was treated as if it had never appeared on the petition….  Once a signature had been withdrawn there was no signature over which an election official could exercise any discretion.").

Exhibit E

In accordance with § 277.0022(c), this Court should rule as a matter of law that signatures that were crossed out when the petition was submitted to the City are legally invalid and cannot be counted as a matter of law.

B.      Signatures Before June 3, 2014

All petition signatures dated before June 3, 2014 are invalid as a matter of law. Under City Charter § 3(a) of Article VII-b, a petition must be submitted "within thirty days after the publication" of an ordinance. Under City Charter § 3(a) of Article VII-a, "*no signature to such petition shall remain effective or be counted which was placed thereon <u>more than thirty days prior to the filing of such petition</u> or petitions with the City Secretary*."

There is no dispute that HERO was published on June 3, 2014. *See* X-1, at 4. June 3, therefore, is the first possible day that any signatures lawfully could be placed on the petition under the City Charter. There is also no dispute that plaintiffs filed their petition with the City Secretary "within thirty days after publication," on July 3, 2014. *See* X-8 (July 3, 2014 letter of coalition organizers); X-2 (August 1, 2014 letter of Anna Russell). Hence, under § 3(a) of Article VII-a, no signature "shall remain effective or be counted which was placed thereon more than thirty days prior to the filing of such petition or petitions with the City Secretary," which, again, means no signatures before June 3, 2014 are valid as a matter of law.

This Court should rule that signatures before June 3, 2014 are not effective and cannot be counted under the express terms of City Charter § 3(a), Article VII-a.

C.      Signatures Added After the Circulator Signed the Verification

Under the "Form of Petition" requirements in City Charter § 3(a), Article VII-a, the circulator must swear before a notary with respect to each page that "each signature appearing thereto was made in my presence on the day and date it purports to have been made." Contrary

Exhibit E

to § 3(a), however, there are various pages of the petition where signatures were added after the date on which the circulator had the page notarized.  *See, e.g.*, X-9 (sample petition pages).  All signatures that post-date a circulator's affidavit violate § 3(a) and must be excluded.

D.      Duplicate Signatures

Defendants have identified 137 instances with 281 signatures in which a person's name is signed on the petition more than once.  *See* X-10 (chart, along with copies of three examples of sets of duplicate signatures).  As a matter of law, a person can lawfully sign a petition only once.  *See, e.g.*, *In re Holcomb*, 186 S.W.3d 553, 555 (Tex. 2006) ("we hold a petition containing duplicate signatures is invalid").

Defendants are not asking this Court to determine that the signatures reflected on X-10 are, in fact, all duplicates – although they are indeed.  Rather, this Court should rule as a matter of law that a person's signature, if valid, may count only once, and that if there are duplicates, the last-in-time duplicate signature (or, in some cases, signatures) should be excluded.

Conclusion

This Court should grant Defendants' motion for partial summary judgment.


Respectfully submitted,

By:*/s/ Geoffrey L. Harrison*
Geoffrey L. Harrison
gharrison@susmangodfrey.com
State Bar No. 00785947
Alex Kaplan
akaplan@susmangodfrey.com
State Bar No. 24046185
Kristen Schlemmer
kschlemmer@susmangodfrey.com
State Bar No. 24075029
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100

21

Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

*Lead Counsel for City of Houston*

*Of Counsel:*

CITY OF HOUSTON LEGAL DEPARTMENT
David Feldman
David.Feldman@houstontx.gov
State Bar No. 06886700
Lynette Fons
Lynette.Fons@houstontx.gov
State Bar No. 13268100
Judith L. Ramsey
Judith.Ramsey@houstontx.gov
State Bar No. 16519550
900 Bagby, 4th Floor
Houston, Texas  77002
Telephone:  (832) 393-6412
Facsimile:  (832) 393-6259
*Attorneys for Annise D. Parker, Mayor*

FULBRIGHT & JAWORSKI LLP
Edward B. "Teddy" Adams, Jr.
Teddy.Adams@nortonrosefulbright.com
State Bar No. 00790200
Andrew Price
Andrew.Price@nortonrosefulbright.com
State Bar No. 24002791
Seth Isgur
Seth.Isgur@nortonrosefulbright.com
State Bar No. 24054498
Geraldine W. Young
Geraldine.Young@nortonrosefulbright.com
State Bar No. 24084134
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
*Attorneys for Anna Russell, City Secretary*

HAYNES AND BOONE, LLP
Lynne Liberato
Lynne.Liberato@haynesboone.com
State Bar No. 00000075

Exhibit E

Kent Rutter
Kent.Rutter@haynesboone.com
State Bar No. 00797364
William Feldman
William.Feldman@haynesboone.com
State Bar No. 24081715
Katie Dolan-Galaviz
Katie.Dolan-Galaviz@haynesboone.com
State Bar No. 24069620
1221 McKinney, Suite 2100
Houston, Texas  77010-2007
Telephone:  (713) 547-2000
Facsimile:  (713) 547-2600
*Appellate Attorneys for All Defendants*

## Certificate of Service

I certify that on November 26, 2014 a true and correct copy of this document properly was served on the following counsel of record in accordance with the TRCP via electronic efiling and email by agreement with the parties.

/s/ *Geoffrey L. Harrison*
Geoffrey L. Harrison