UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE RICHARD "TREY" POOL, III, TRENTON DONN "TRENT" POOL, and ACCELEVATE2020, LLC, | § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Case No. 4:19-cv-02236 |
| CITY OF HOUSTON, and, ANNA RUSSELL, in her official capacity as the City Secretary of the City of Houston, | § § § § § | |
| Defendants. | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF
## OPPOSED MOTION TO ALTER OR AMEND JUDGMENT

Plaintiffs' motion argues that their claims remain justiciable for several reasons and, therefore, the dismissal order is manifestly erroneous. Plaintiffs' claim for nominal damages (for their past chilled speech) *alone* precludes mootness under binding Fifth Circuit precedent. Defendants' failure to address this point suggests they have no response. Even aside from any claim for damages, Plaintiffs' claims for declaratory and injunctive relief remain justiciable because the offending provisions remain in the Charter, and the Defendants' attempt to demonstrate mootness by voluntary cessation (pointing to their purported intent not to enforce the Charter) are insufficient. Alternatively, even if Plaintiffs' claims for declaratory and injunctive relief were moot, they remain justiciable under the exception for disputes "capable of repetition, yet evading review." Plaintiffs reply further as follows.[1]

---

[1] Defendants' also object to Paragraphs 4 and 6 of the Second Supplemental Declaration of Trenton Donn "Trent" Pool (Doc. 26-1), stating that they contain hearsay. Plaintiffs assert that while this is entire irrelevant to the instant

**ARGUMENT**

**I.        Plaintiffs' Claims are not Moot.**

   *a. Standing and mootness.*

As a preliminary matter, Plaintiffs must clarify certain imprecise statements in Defendants' response regarding the relationship between standing and mootness. *See* Resp. at 5 (Doc. 29). While it is often stated that "[m]ootness is 'the doctrine of standing in a time frame,'" this is imprecise. *Id* (citing *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). Stated more precisely, standing is determined at the commencement of the lawsuit, and once established, standing cannot be lost. *Carr v. Alta Verde Indus., Inc*., 931 F.2d 1055, 1061 (5th Cir. 1991). Plaintiffs here have established standing, and the Defendants' post-suit representations that they will not enforce the Charter go only to mootness. *Id*. Establishing mootness is Defendants' burden, and they cannot meet it with respect to any of Plaintiffs' claims.

   *b. Plaintiffs' claim for nominal damages precludes mootness.*

Here, the court has already determined that Plaintiffs' have suffered an injury-in-fact. (Doc. 15 at 9) ("[W]ith respect to the currently proposed ordinance, Plaintiffs have demonstrated that their inability to act as circulators chills their political speech and constitutes an injury-in-fact."). Defendants' statements concerning standing and their arguments that their motion to dismiss "demonstrated that Plaintiffs did not suffer any injury in fact" and that "Plaintiffs based their lawsuit on speculative potential injury that never happened" have already been rejected by this Court. (Doc. 29 at 6). The Plaintiffs' speech was already chilled.  Based on these injuries, already determined by this court, Plaintiffs' claim for nominal damages alone precludes mootness. A fact noted by two cases cited in Defendants' response. *Spencer v. Kemna*, 523 U.S.

---

briefing, that this is incorrect to the extent that these statements are not offered to prove the truth of the matter asserted.

1, 7 (1998); *Williams v. Lara*, 52 S.W.3d 171, 185 (Tex. 2001); (Doc. 29 at 8-10). Therefore, the Defendants cannot escape the Court's jurisdiction to determine the legality of the charter provisions.

> c. *Defendants have not established mootness of Plaintiffs' prospective claims based on purported voluntary cessation of the illegal activity, because the Charter has not been amended.*

The "defendant's mere voluntary cessation of allegedly illegal conduct, however, does not make the case moot." *Id*. (internal quotations and citations omitted). "In seeking to have a case dismissed as moot, ... the defendant's burden 'is a heavy one.' The defendant must demonstrate that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' *Id*. (quoting *Gwaltney*, 484 U.S. at 66). So long as the challenged provisions remain on the books and are not enjoined, this or a future City administration will be free to enforce it. *Seals v. McBee*, 898 F.3d 587, 593 (5th Cir. 2018), as revised (Aug. 9, 2018). *See also, e.g., Hispanic Leadership Foundation, Inc. v. Walsh*, 42 F. Supp. 3d 365, 374-75 (S.D.N.Y. 2014). While abandonment through voluntary cessation may be "an important factor bearing on the question whether a court should exercise its power to *enjoin* the defendant from renewing the practice, … that is a matter relating to the *exercise* rather than the *existence* of judicial power." *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982) (emphasis added).

The Supreme Court has recognized that authoritative constructions of a state or local law may save it from a First Amendment attack, but that such constructions must come from the state or local authorities. *Gooding v. Wilson*, 405 U.S. 518, 520 (1972) ("Only the Georgia courts can supply the requisite construction, since of course 'we lack jurisdiction authoritatively to construe state legislation.'") (quoting *United States v. Thirtyseven (37) Photographs*, 402 U.S. 363, 369 (1971)). An authoritative construction might be shown by "well established practice," *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 (1988), but that requires "a well-

understood and uniformly applied practice…that has virtually the force of a judicial construction." 486 U.S. at 770 n.11. Other cases illustrate the type of evidence that can satisfy this standard. *See e.g. Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131, 131 n.9 (1992) (recognizing that "the county has made clear how it interprets and implements the ordinance" based on an official vote of the county commissioners to amend a particular form).

Thus, even if Plaintiffs had no claim for damages in this case, their claims for declaratory and injunctive relief would remain justiciable anyway. These claims are not mooted by the Defendants' promises not to enforce the City Charter, as such promises are not binding on even current, much less future, City Councils and city officials, and the unconstitutional provision is still in full force. Defendants reassert that they are not defending the constitutionality of the charter provision *during this litigation*. (Doc. 29 at 6). Defendants also represent that they have now placed a form on the City Secretary's website providing a non-resident circulator's affidavit and put an "Editor's Note" on a private website, which serves as a repository for city codes, noting the additional form. (Doc. 29 at 10). However, none of these actions are binding upon the city nor do they invalidate a law that the Defendants' have—for the time being at least—conceded is unconstitutional. The Defendants' have not proffered a "well established practice" let alone one that "virtually has the force of a judicial construction." As clearly and repeatedly articulated by the Supreme Court and the Fifth Circuit, mere litigation posturing by a defendant in an attempt to show voluntary cessation does not moot a lawsuit against that defendant. *Seals*, 898 F.3d at 593. Defendants have made no attempt to create a binding precedent preventing them from enforcing the still validly passed charter provision. Without the force a judicial decree, there is nothing preventing Defendants' from returning to their old ways of enforcing a law currently on the books.

    *a. Whether the Underlying Anti-Pay-to-Play Petition was Successful is Irrelevant to Plaintiffs' Claims*

The success or lack thereof of the underlying petition does not determine whether Plaintiffs' suffered injuries. Defendants' assert that due to the fact that the organizers of the petition determined that it had failed and ultimately determined not to turn in a number of signatures that would have been short means that Plaintiffs' injuries are and were "speculative." (Doc. 29 at 7-8). However, this misunderstands what constitutes an injury under the First Amendment. Preventing circulators from operating is a constitutional injury, regardless of whether their petition efforts are ultimately successful. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 391, n. 5 (5th Cir. 2013). In fact, for standing purposes, the Fifth Circuit has found that injury-in-fact existed even when plaintiffs could not identify a specific initiative they would support in the future. *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014) (noting that, given plaintiffs' "past enthusiastic participation in the political process," "it is likely" that they "would speak out about other ballot initiatives if given the opportunity"). Plaintiffs made clear in their complaint that they intended to circulate and support additional initiative and referendum petitions in Houston in the future. *See e.g.* Doc. 7 at ¶¶ 9 (Trey Pool), 14 (Trent Pool), 16 (Accelevate2020), 27, 31, 35, 55 (facial challenge), 63 (as-applied challenge); Compl. at 1 (introduction); id. at ¶ 52, 55 (facial challenge).

Additionally, the residents of Houston were injured as well. "[T]he Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557 (1969). "This right is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution." *Board of Educ., Island Trees Union Free School Dist, No. 26 v. Pico*, 457 U.S. 853, 867 (1982). Depriving Houston residents of speech by would-be circulators burdens voters and potential voters' First Amendment rights by limiting the messages that they hear and,

sometimes, their choice on the ballot. "By limiting the choices available to voters, the State impairs the voters' ability to express their political preference." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979).

## II. Defendants Fail to Rebut Plaintiffs' Alternative Argument That Their Injuries are Capable of Repetition yet Evading Review

### a. Case law cited for the proposition that Plaintiffs' and the public have no expectation of future injury is inapposite

The case law Defendants' cite for their assertion that an alternative form and a note on a private website is adequate assurance that they will not enforce the offending provisions—without their actual amendment or invalidation—is completely inapposite. Five of the cases relied upon by the Defendants directly rely on the law, regulation, or judicial order in question actually being invalidated by the body with authority to do so. *See e.g. Burke v. Barnes*, 479 U.S. 361 (1987) (expiration of bill on its own terms mooted case when plaintiff only sought declaratory judgment that the law was unconstitutional); *Trulock v. City of Duncanville*, 277 S.W.3d 920, 925 (Tex. App.—Dallas 2009, no pet.) (repeal of challenged ordinance mooted case); *Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990) (Plaintiff's non-suit in trial court dissolving preliminary injunction mooted Defendant's appeal of injunction); *Princeton Univ. v. Schmid,* 455 U.S. 100, 103 (1982) (finding suit moot when University substantially amended regulations in question during the pendency of appeal); *Get Outdoors II, LLC v. City of Chula Vista*, 407 F. Supp. 2d 1172, 1178 (S.D. Cal. 2005), aff'd, 254 Fed. Appx. 571 (9th Cir. 2007) (passage of entirely new sign code mooted case concerning older version of sign code).  Two of the cases relied on a presumption that released prisoners will not be incarcerated as they are required to avoid future recidivism. *Williams*, 52 S.W.3d at 185 (prisoner plaintiffs were not entitled to injunctive or declaratory relief concerning internal prison

religious education program following their full release as they were "required by law to prevent their own recidivism," making their chance of recidivism too speculative); *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (prisoner conceded that his total release from supervision mooted suit concerning North Carolina Parole Board procedures and suit did not meet the capable of repetition yet evading review exception as there was no indication he would be under their jurisdiction in the future). Finally, the last case relied upon a similar context, but was actually a relaxing of this rule for habeas petitions. *Spencer*, 523 U.S. at 7. Notably, both the *Williams* and *Spencer* courts noted that mootness to declaratory and injunctive relief did not moot a claim for damages. 52 S.W.3d at 194; 523 U.S. at 19.

> b. Plaintiffs' do not argue that their claims are simultaneously not moot and within the capable of repetition exception

Defendants additionally assert that "Plaintiffs cannot have it both ways; they cannot simultaneously argue that they fit within an exception to mootness, while also arguing that their claims are not yet moot." (Doc. 29 at 3). This is a mischaracterization of Plaintiffs argument. Plaintiffs assert that there claims are not moot, but even if they had no claims for nominal damages arising from past harms *and* their claims were moot, *then* they would fall into the capable of repetition yet evading review exception. (Doc. 26 at 6-9).

Assuming the Court determined that Plaintiffs' claims were moot, the court should find that their claims are capable of repetition, yet evading review.

### CONCLUSION AND PRAYER

Plaintiffs only need one claim that remains justiciable to require vacating the dismissal order and disposing of the merits, but here all their claims remain justiciable.   The Fifth Circuit has recognized that Rule 59(e) can further judicial economy, because denying the opportunity to

"correct[] errors in a motion for reconsideration might actually prolong the process of litigation[,] since plenary consideration of a question of law on appeal ordinarily consumes more time than disposition of a petition for rehearing." *Simmons v. Reliance Std. Life Ins. Co. of Texas*, 310 F.3d 865, 869 (5th Cir. 2002) (some internal punctuation omitted). Proceeding to the merits of these claims is not only required by governing law, but serves the interests of judicial and party economy because, if the merits are not reached in this case now, Plaintiffs will have no choice but to appeal or file another lawsuit in this division, which they will do, because the Charter provision remains on the books and can be enforced at any time, by the City or by a political opponent in a mandamus action.

**Respectfully submitted,**

/s/ Austin Whatley
**AUSTIN M. B. WHATLEY**
Texas Bar No. 24104681
Southern District No. 3348472
2180 N. Loop W., Ste. 255
Houston, TX 77018
Tel.: 281.404.4696
Fax: 281.582.4138
austin@najvarlaw.com
*Of Counsel*

**JERAD NAJVAR**
Texas Bar No. 24068079
Southern District No. 1155651
jerad@najvarlaw.com
*Attorney-in-Charge*

**PAUL A. ROSSI**
Pennsylvania Bar. No. 84947
Pennsylvania Middle District Bar No. 84947
IMPG Advocates, Inc.
Paul-Rossi@comcast.net
*Of Counsel*

Najvar Law Firm, PLLC
2180 N. Loop W.,
Suite 255
Houston, TX 77018
*Of Counsel*

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 9, 2019, the foregoing document, and any accompanying exhibits, was served by CM/ECF as follows:

Suzanne R. Chauvin
Senior Assistant City Attorney
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
Suzanne.Chauvin@houstontx.gov
832.393.6219 (O)
832.393.6259 (F)
*Counsel for Defendants*

                                                               /s/ Austin Whatley
                                                                   Austin Whatley