IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | | |
|---|---|---|
| JOE RICHARD "TREY" POOL, III, | § | |
| TRENTON DONN "TRENT" POOL, | § | |
| ACCELEVATE2020, LLC, LIBERTY | § | |
| INITIATIVE FUND, and PAUL | § | |
| JACOB, | § | CIVIL ACTION |
| | § | |
| *Plaintiffs,* | § | No. 19-CV-2236 |
| | § | |
| v. | § | |
| | § | |
| CITY OF HOUSTON and PAT J. | § | |
| DANIEL, in her official capacity as | § | |
| Secretary of the City of Houston | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS
AMENDED MOTION TO DISMISS OR, ALTERNATIVELY, MOTION
FOR SUMMARY JUDGMENT, DIRECTED TO
<u>PLAINTIFFS' SECOND AMENDED PETITION</u>**

Defendants, the City of Houston ("Houston"), and Pat J. Daniel, Houston's City Secretary sued in her official capacity (collectively "the City"), file this Memorandum in Support of the City's Amended Motion to Dismiss or, Alternatively, Motion for Summary Judgment, Directed to Plaintiffs' Second Amended Petition, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(c), and 56. In support of its alternative Motions, the City states the following:

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iv

NATURE OF THE CASE AND STAGE OF THE PROCEEDINGS ............................ xiii

ISSUES TO BE DECIDED ............................................................................ xv

ARGUMENT SUMMARY ............................................................................... 1

ARGUMENT AND AUTHORITIES ................................................................... 3

I.    Applicable Standards ................................................................................ 3

II.   Plaintiffs' Claims Seeking Declaratory and Injunctive Relief from Houston's Charter's Verification Form Are Moot [Counts I & II] ........................................... 5

III.  Plaintiffs Lack Standing to Assert a Nominal Damages Claim ............................... 9

     A.    Plaintiffs Admit that Nominal Damages Will Not Redress Their Alleged Injuries ........................................................................................ 9

     B.    Nominal Damages Satisfy Redressability Requirements Only When There is Actual Enforcement of the Challenged Law ................................. 11

     C.    Alternatively, Nominal Damages Become Moot When Actual Declaratory Relief Claims Become Moot Because They Cannot Redress Any Alleged Injury ...................................................................... 13

IV.  Plaintiffs have Failed to State Any Viable Claim Challenging Houston's Substitute Petition Circulator Verification Form, if They Have Standing to Assert Such Claims at All ......................................................................... 16

     A.    Alternatively, Plaintiffs Have Failed to State A Viable Claim that Houston's Substitute Is an *Ex Post Facto* Law or an Unconstitutional Condition, Even if Plaintiffs Had Standing to Assert Such Claims [Count IX] ...................................................................... 20

     B.    Alternatively, Plaintiffs Have Failed to State a Viable Claim that Houston's Substitute Violates the Equal Protection Clause [Counts III, IV, VII, VIII] ................................................................................. 23

     C.    Alternatively, Plaintiffs Have Failed to State a Viable Claim that Houston's Substitute Violates the Due Process Clause [Counts V & VI] ........................................................................................... 28

D.    Alternatively, Plaintiffs Have Failed to State a Viable Claim that Houston's Substitute Violates the First Amendment [Counts VII &VIII] ........................................................................................................ 30

V.    Plaintiff Liberty Initiative Fund Has Failed to State a Viable Claim for Compensatory Damages, Even if It Had Standing to Assert One ......................... 32

VI.    This Court Lacks Pendent Jurisdiction over Plaintiffs' State-Law Claims or, Alternatively, Plaintiffs Have Failed to State a Viable State-Law Claim [Count X] ........................................................................................................ 36

VII.    Plaintiffs Have Failed to State a Viable Claim for Injunctive Relief .................... 39

CONCLUSION AND PRAYER FOR RELIEF ................................................................. 40

CERTIFICATE OF SERVICE .......................................................................................... 42

APPENDIX

    EXH. A – Ordinance No. 2020-1033

    EXH. B – Editor's Notes to the City Charter

    EXH. C – *Pool v. City of Houston*, 978 F.3d 307

    EXH. D – July 1, 2019 hearing transcript excerpts

    EXH. E – Excerpts from the Pool Plaintiffs' Fifth Circuit Brief in
         *Pool v. City of Houston*

    EXH. F – Texas Voter Registration Application

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerson v. Bean Dredging, LLC*,
    589 F.3d 196 (5th Cir. 2009) ...................................................................... 5

*Alexander Arsenault, Trenton Pool, & Roque De La Fuente v. Tahesha Way*,
    3:16-CV-01854, 2021 WL 1986667 (D.N.J. May 17, 2021) ......................... 19

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) .................................................................................... 39

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) .................................................................................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 4, 26

*Avitia v. Metro. Club of Chicago, Inc.*,
    49 F.3d 1219 (7th Cir. 1995) ...................................................................... 33

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
    140 S. Ct. 2335 (2020) ............................................................................... 19

*Barrera–Montenegro v. United States*,
    74 F.3d 657 (5th Cir. 1996) .......................................................................... 4

*Baxstrom v. Herald*,
    383 U.S. 107 (1966) .................................................................................... 24

*Beare v. Smith*,
    321 F. Supp. 1100 (S.D. Tex. 1971), *aff'd sub nom. Beare v. Briscoe*, 498 F.2d
    244 (5th Cir. 1974) ..................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 4

*Benezet Consulting, LLC v. Boockvar*,
    1:16-CV-00074, 2020 WL 5095887 (M.D. Pa. Aug. 28, 2020) .................. 18

*Brim v. ExxonMobil Pipeline Co.*,
    213 Fed. App'x 303 (5th Cir. 2007) .......................................................... 36

*Brinsdon v. McAllen Indep. Sch. Dist.*,
    863 F.3d 338 (5th Cir. 2017) ................................................................... 12

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*,
    313 F.3d 899 (5th Cir. 2002) ..................................................................... 5

*Buckley v. Am. Constitutional Law Found., Inc.*,
    525 U.S. 182 (1999) ................................................................................. 31

*Burdick v. Takushi*,
    504 U.S. 428 (1992) .............................................................. 25, 28, 31, 32

*Burson v. Freeman*,
    504 U.S. 191 (1992) ................................................................................. 18

*Carnegie–Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ................................................................................. 36

*Catholic Leadership Coal. of Tex. v. Reisman*,
    764 F.3d 409 (5th Cir. 2014) ................................................................... 17

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ..................................................................... 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................... 5

*Chandler v. City of Arvada, Colo.*,
    292 F.3d 1236 (10th Cir. 2002) ........................................................ 19, 23

*Chicago, Ind. & L. Ry. Co. v. Hackett*,
    228 U.S. 559 (1913) ................................................................................. 38

*City of Chicago v. Int'l Coll. of Surgeons*,
    522 U.S. 156 (1997) ................................................................................. 36

*City of Los Angeles v. Alameda Books, Inc.*,
    535 U.S. 425 (2002) ................................................................................. 18

*Clingman v. Beaver*,
    544 U.S. 581 (2005) .......................................................................... 26, 31

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ................................................................... 4

*Cummings v. Missouri*,
   4 Wall. 277, 18 L. Ed. 356 (1867) .............................................................. 21

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) ...................................................................... 8

*Doe v. Reed*,
   561 U.S. 186 , 130 S. Ct. at 2817 (2010) ................................................... 17

*Dresser–Rand, Co. v. Virtual Automation, Inc.*,
   361 F.3d 831 (5th Cir.2004) ...................................................................... 39

*Duarte ex rel. Duarte v. City of Lewisville, Tex.*,
   759 F.3d 514 (5th Cir. 2014) ..................................................................... 13

*Eccles v. Peoples Bank*,
   333 U.S. 426 (1948) ..................................................................................... 8

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ................................................................................... 15

*Elsensohn v. St. Tammany Par. Sheriff's Office*,
   530 F.3d 368 (5th Cir. 2008) ...................................................................... 4

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989) ................................................................................... 17

*Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*,
   832 F.3d 469 (3d Cir. 2016) ................................................................. 14, 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................. 6, 7

*Geraci v. Treuchtlinger*,
   487 F.2d 590 (2d Cir. 1973) ................................................................. 12, 14

*Gibson v. Tex. Dep't of Ins.–Div. of Workers Comp.*,
   700 F.3d 227 (5th Cir. 2012) ..................................................................... 24

*Goodall v. Williams*,
   324 F.Supp.3d 1184 (D. Colo. 2018) ................................................... 22, 23

*Henschen v. City of Houston*,
   959 F.2d 584 (5th Cir. 1992) ....................................................................... 8

*Hernandez v. European Auto Collision, Inc.*,
   487 F.2d 378 (2d Cir. 1973) ........................................................................ 12, 14, 15

*Hill v. Colorado*,
   530 U.S. 703 (2000) ................................................................................................ 30

*In re Coastal Plains, Inc.*,
   179 F.3d 197 (5th Cir. 1999) ................................................................................. 19

*Initiative & Referendum Inst. v. Jaeger*,
   241 F.3d 614 (8th Cir. 2001) ................................................................................. 31

*Johnson v. State*,
   271 Md. 189, 315 A.2d 524 (1974) ....................................................................... 38

*Joint Heirs Fellowship Church v. Ashley*,
   45 F. Supp. 3d 597 (S.D. Tex. 2014), *aff'd sub nom. Joint Heirs Fellowship*
   *Church v. Akin*, 629 Fed. App'x 627 (5th Cir. 2015) ...................................... 17

*Kerrigan v. Boucher*,
   450 F.2d 487 (2d Cir. 1971) .............................................................................. 14, 15

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) ................................................................................................ 21

*Krislov v. Rednour*,
   226 F.3d 851 (7th Cir. 2000) ................................................................................. 23

*Littell v. Houston Indep. Sch. Dist.*,
   894 F.3d 616 (5th Cir. 2018) ................................................................................. 34

*Love v. Tyson Foods, Inc.*,
   677 F.3d 258 (5th Cir. 2012) ................................................................................. 19

*MA LEG Partners 1 v. City of Dallas*,
   442 F. Supp. 3d 958 (N.D. Tex. 2020) ................................................................. 21

*Machete Prods., L.L.C. v. Page*,
   809 F.3d 281 (5th Cir. 2015) ................................................................................... 8

*Marbury v. Madison*,
   5 U.S. 137 (1803) ................................................................................................... 37

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................................. 5, 8

*Mayfield v. Currie*,
    976 F.3d 482 (5th Cir. 2020) ............................................................................ 8

*McCorvey v. Hill*,
    385 F.3d 846 (5th Cir. 2004) ............................................................................ 38

*Meyer v. Brown & Root Constr. Co.*,
    661 F.2d 369 (5th Cir. 1981) ............................................................................ 34

*Montez v. Dep't of Navy*,
    392 F.3d 147 (5th Cir. 2004) .............................................................................. 4

*Montgomery v. La.*,
    —— U.S. ——, 136 S. Ct. 718 (2016) .............................................................. 38

*Morrison v. Bd. of Educ. of Boyd Cty.*,
    521 F.3d 602 (6th Cir. 2008) ................................................................ 12, 13, 14

*Moser v. Omnitrition Int'l Inc.*,
    3:16-CV-2558-L, 2018 WL 1368789 (N.D. Tex. Mar. 16, 2018) .............................. 34

*Nader v. Brewer*,
    531 F.3d 1028 (9th Cir. 2008) ...................................................................... 19, 23

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................................ 19

*Norton v. Shelby County*,
    118 U.S. 425 (1886) ........................................................................................ 38

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
    972 F.2d 580 (5th Cir. 1992) ............................................................................ 36

*Patel v. Tex. Dep't of Licensing & Regulation*,
    469 S.W.3d 69 (Tex. 2015) ................................................................................ 16

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) .............................................. 4

*Perry v. Schwarzenegger*,
    C 09-2292 VRW, 2010 WL 11469749 (N.D. Cal. Aug. 4, 2010), *aff'd*, 630
    F.3d 898 (9th Cir. 2011) .................................................................................. 38

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ............................................................................................ 17

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ................................................................ 4

*Reed v. City of Arlington*,
   650 F.3d 571 (5th Cir. 2011) (en banc) ................................................ 19

*Republican Party of Pa. v. Degraffenreid*,
   141 S. Ct. 732 (2021) ........................................................................... 17

*Reynoldsville Casket Co. v. Hyde*,
   514 U.S. 749 (1995) .............................................................................. 38

*Richardson v. Tex. Sec'y of State*,
   978 F.3d 220 (5th Cir. 2020) ................................................................ 25

*Romer v. Evans*,
   517 U.S. 620 (1996) .............................................................................. 38

*Shelby County, Ala. v. Holder*,
   570 U.S. 529 (2013) .............................................................................. 17

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277
   (2011) ..................................................................................................... 8

*Soules v. Kauaians for Nukolii Campaign Comm.*,
   849 F.2d 1176 (9th Cir. 1988) .............................................................. 35

*Sounding Co., Inc. v. Steward*,
   CIVA 5:08CV307DCBJMR, 2009 WL 1375699 (S.D. Miss. May 15, 2009) ........... 33

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................ 9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................. 9, 10

*Storer v. Brown*,
   415 U.S. 724 (1974) ........................................................................ 26, 32

*Tex. Mun. Power Agency v. Pub. Util. Comm'n*,
   253 S.W.3d 184 (Tex. 2007) ................................................................. 16

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ........................................................................ 26, 31

*U.S. for Use of Am. Bank v. C.I.T. Constr. Inc. of Tex.*,
  944 F.2d 253 (5th Cir. 1991) .................................................................... 19

*United States v. Hammond*,
  2:10-CR-0007-JMS-CMM, 2011 WL 201497 (S.D. Ind. Jan. 18, 2011)..................... 8

*United States v. Moreland*,
  703 F.3d 976 (7th Cir. 2012) .................................................................... 8

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000).............................................................................. 18

*United States v. Raines*,
  362 U.S. 17 (1960)................................................................................ 30

*United States v. Salerno*,
  481 U.S. 739 (1987)............................................................................... 17

*United States v. Williams*,
  553 U.S. 285 (2008)............................................................................... 30

*Utah Animal Rights Coal. v. Salt Lake City Corp.*,
  371 F.3d 1248 (10th Cir. 2004) .......................................................... 12, 14

*Uzuegbunam v. Preczewski*,
  No. 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021)................................ 9, 10, 11, 13

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982).............................................................................. 30

*VRC LLC v. City of Dallas*,
  460 F.3d 607 (5th Cir. 2006) .................................................................. 39

*Ward v. Utah*,
  398 F.3d 1239 (10th Cir. 2005) .............................................................. 30

*Warth v. Seldin*,
  422 U.S. 490 (1975).............................................................................. 9

*Wash. Mkt. Co. v. District of Columbia*,
  137 U.S. 62 (1890)................................................................................ 15

*Weaver v. Graham*,
  450 U.S. 24 (1981)................................................................................ 20

*Williams v. Rhodes*,
   393 U.S. 23 (1968) ................................................................................. 32

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) .............................................................................. 18

*Wilmoth v. Sec'y of N.J.*,
   731 Fed. App'x 97 (3d Cir. 2018) ................................................ 18, 19, 31

*Wise v. Lipscomb*,
   437 U.S. 535 (1978) .............................................................................. 39

*Wyatt v. McGregor*,
   855 S.W.2d 5 (Tex. App.—Corpus Christi 1993, writ denied) ................. 27

*Yarls v. Bunton*,
   905 F.3d 905 (5th Cir. 2018) .................................................................. 8

*Yes on Term Limits, Inc. v. Savage*,
   550 F.3d 1023 (10th Cir. 2008) ............................................................ 23

*Young v. Hosemann*,
   598 F.3d 184 (5th Cir. 2010) ................................................................ 29

**Constitutions and Statutes**

Miss. Const., § 241 ...................................................................................... 29

Tex. Civ. Prac. & Rem. Code § 22.002 .......................................................... 22

Tex. Elec. Code § 11.002 ............................................................................. 34

Tex. Elec. Code § 31.032 ............................................................................. 35

**Other Authorities**

1 Texas Legal Practice Forms § 4A:36 .......................................................... 27

13C CHARLES A. WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND
   PROCEDURE §3533.3 (3d ed. 2013) ......................................................... 13

City of Houston, Tex., *Charter*, art. VII-a, § 3.............................................. 6

City of Houston, Tex., *Code of Ordinances*, No. 2020-1033 (Dec. 2, 2020) ..................... 6

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 4

Fed. R. Civ. P. 45(b)(2) ........................................................................................ 22

Fed. R. Civ. P. 56(e)(2) .......................................................................................... 5

Fed. R. Civ. P. 65(d) ............................................................................................ 34

Saikrishna Bangalore Prakash, The Executive's Duty to Disregard
    Unconstitutional Law, 96 Geo. L.J. 1613 (2008) ....................................... 38

Tex. R. Civ. P. 176.3(a) ........................................................................................ 22

## NATURE OF THE CASE AND STAGE OF THE PROCEEDINGS

This lawsuit challenges "zombie" provisions of Houston's Charter which had already been rendered unconstitutional and unenforceable by the U.S. Supreme Court and which Houston has not, at any relevant time, attempted to enforce against any plaintiff. It also challenges Houston's substitute petition circulator form (the "substitute" or "Houston's substitute") and the Ordinance that adopted it. *See* Exhibits A & B (true and correct copies of Ordinance No. 2020-1033, and the Editor's Note appended to the challenged charter provisions, respectively).

Plaintiffs Joe Richard Pool, III's, Trenton Donn Pool, and ACCELEVATE2020, LLC, Liberty Initiative Fund ("LIF"), and Paul Jacob (collectively "Plaintiffs") allege that articles VII-b, sections 2(a) and 3, and VII-a, section 3 of Houston's Charter (collectively "the challenged provisions") and Houston's substitute are unconstitutional, based upon *Buckley*, violate their First and Fourteenth Amendment rights, and that the substitute is also an *ex post facto* law and imposes unconstitutional conditions.  Plaintiffs also seek nominal damages, compensatory damages (LIF only), and declaratory and temporary and permanent injunctive relief.

The City moved to dismiss on June 27, 2019, challenging standing and ripeness, and arguing that Appellants had not suffered injury-in-fact. The City did not defend the constitutionality of the challenged provisions, and stated that it would and could not

enforce the provisions, and had so advised Plaintiffs' counsel, as Plaintiffs have conceded.[1] Plaintiffs also concede that, at all relevant times, the City offered to accept modified verification language for petition circulators that would balance protecting City elections from fraud, while affording them their constitutional rights.[2] *See* Exh. D, at 4-5; 8-13. Indeed, at this Court's hearing, the Court and the parties fashioned a mutually-agreeable substitute verification form. *Id.* at 13, ln. 1–14, ln. 13; 32, ln. 4– 34, ln. 25.

On June 9, 2019—the date on which the 30-day window for collecting signatures ended—Plaintiffs' TRO expired and their claims concerning the 2019 election cycle became moot because no signatures were to be submitted to the City Secretary and, therefore, none could ever be rejected on any challenged ground. Consequently, on August 15, this Court entered an order dismissing their claims and denying pending motions. *See* Order, dated Aug. 15, 2019, on file with this Court.

Plaintiffs moved to alter or amend that judgment. The City responded. Without a hearing, this Court denied Plaintiffs' motion on November 4, 2019. *See* Order, dated Nov. 4, 2019, on file with this Court at Dkt. #33.

On December 3, Plaintiffs appealed from both the order of dismissal and denial of their motion to alter the judgment. The Fifth Circuit rendered its decisions reversing and remanding the case on October 23, 2020. *Pool v. City of Houston*, 978 F.3d 307 (5th Cir.

---

[1] *See Transcript of Hearing on Motions,* July 1, 2019, at 4, lns. 4, 5, 8, 9, 25; 9, ln.8; 20, lns.2-5. The complete transcript of this hearing is on file in the records of this case at Dkt. #24. True and correct copies of relevant excerpts of this transcript are also attached as Exhibit "D."

[2] *See* Exh. D, at 4, ln. 17; 5, ln. 20; 8, ln. 25 — 9, ln. 13, 11, ln. 5— 14, ln. 2.

2020). A true and correct copy of the opinion is attached as Exhibit "C." The details of that decision are set forth in the text where relevant.

Thereafter, Plaintiffs moved to amend and filed their Second Amended Petition, which the Court allowed, to add new claims, directed to Houston's substitute verification form, and new plaintiffs. The City now moves to dismiss/ for summary judgment on all of Plaintiffs' claims.

## ISSUES TO BE DECIDED

1.  Whether Plaintiffs' claims seeking declaratory and injunctive relief from Houston's City Charter's verification form are moot?

2.  Whether Plaintiffs have standing to assert any nominal damages claim and, if so, whether that nominal damages claim, allegedly flowing from Houston's City Charter's verification form, is moot?

3.  Whether Plaintiffs have stated viable claims challenging Houston's substitute petition circulator verification form, if they have standing to assert them at all?

4.  Whether Plaintiff Liberty Initiative Fund states a viable claim for compensatory damages, if it has standing to assert such claims at all?

5.  Whether Plaintiffs have stated a viable claim for injunctive relief?

6.  Whether this Court has pendent jurisdiction over Plaintiffs' state-law claim and, if so, whether Plaintiffs have stated a viable state-law claim?

## ARGUMENT SUMMARY

Plaintiffs now assert eleven claims [having added eight by amending their pleadings], seeking four kinds of relief. To the Plaintiffs' remaining future claims and purported claim for nominal damages based upon the originally-challenged provisions,[3] Plaintiffs added separate facial and "as applied" challenges to Houston's substitute under the First and Fourteenth Amendments, and Due Process and Equal Protection Clauses. They also allege that the substitute constitutes an *ex post facto* law, imposes an unreasonable condition on the exercise of their constitutional rights, and, for good measure, throw in a state-law claim to complete their kitchen-sink pleading. Plaintiffs seek declaratory and injunctive relief, compensatory (LIF only) and nominal damages for these alleged violations. Yet, when this Court strips Plaintiffs' over-heated, interminable, but ultimately empty, rhetoric from their Second Amended Petition, it will find that none of these claims has any merit, if Plaintiffs have standing to assert them at all. Consequently, Plaintiffs' claims should be dismissed or, alternatively, Houston should have a take-nothing judgment in its favor on each claim.

First, Plaintiffs' claims directed to the challenged provisions are moot. Plaintiffs' nominal damages claim allegedly flowing from the challenged provisions and the substitute should, therefore, also be dismissed or the City should have a take-nothing judgment on

---

[3] Plaintiffs did *not* appeal this Court's dismissal of their 2019 injunctive claims, which they admitted in open court were moot, but did appeal the Court's dismissal of their purported nominal damages claim. The Fifth Circuit, however, did not decide the nominal damages issue because of its ruling on Plaintiffs' other claims. Instead, in a footnote, it expressed considerable doubt that such a claim was even properly asserted on these facts. *Pool*, 978 F.3d at 314, n.10.

them. First, Plaintiffs have no standing to assert a nominal damages claim because Plaintiffs admit that nominal damages will not redress their alleged injuries. Moreover, the Supreme Court has recently held that nominal damages satisfy redressability requirements only when there is a completed enforcement of the challenged law, which all parties concede *did not* occur here. Alternatively, nominal damages become moot when, as here, declaratory become moot because they cannot redress the alleged injury.

Plaintiffs have also failed to state a viable claim challenging Houston's substitute, if they have standing to assert such claims at all. First, Plaintiffs are judicially estopped from arguing that Houston's substitute is not the least restrictive means to achieve Houston's compelling interest in election integrity because Plaintiffs have successfully argued in other courts that these requirements are not only constitutional, but are the least restrictive means to achieve a compelling state interest in election integrity. In addition, their counsel has agreed in open court that the three-day notice period in the substitute is reasonable and constitutional. Thus, Plaintiffs' only remaining challenge is to a disclosure requirement less broad than those imposed on virtually everyone making affidavits or registering to vote in Texas. Plaintiffs' claims directed to the substitute are thus frivolous.

In particular, Houston's substitute is not, by definition, an *ex post facto* law because it does not add punishment to any crime after the fact. Moreover, Plaintiffs have no standing to assert such a claim or one alleging unconstitutional condition because they have not pleaded or demonstrated that they have the relevant, prior criminal convictions. Consequently, no signatures would ever be rejected under the substitute on that basis.

Alternatively, Plaintiffs have failed to state a viable claim that Houston's substitute violates the Fourteenth Amendment's Equal Protection Clause or First Amendment, which Plaintiffs plead as identical violations. Plaintiffs do not assert that they are members of a protected class nor can they establish that the substitute imposes a severe restriction on their speech activities. Because the Supreme Court has long held that governmental entities like Houston have a compelling interest in election integrity, Plaintiffs cannot meet the applicable *Anderson/Burdick* test for the constitutionality of election restrictions. Alternatively, Plaintiffs failed to state a viable claim that the substitute violates the Due Process Clause because the few provisions they have left to challenge are not unconstitutionally vague or overbroad even if Plaintiffs adequately pleaded that they were.

Plaintiffs have also failed to adequately plead or state a viable claim for the various remaining kinds of relief they seek.  LIF seeks compensatory damages but lacks standing to do so. Plaintiffs have also not pleaded and cannot establish the requirements for injunctive relief.

Finally, this court lacks pendent jurisdiction over Plaintiffs' state-law claims because it must dismiss Plaintiffs' federal claim and their state claim is legally without merit.

## ARGUMENT AND AUTHORITIES

### I.   APPLICABLE STANDARDS

Plaintiffs asserting jurisdiction bear the burden of proof for a 12(b)(1) motion to dismiss. The plaintiff must prove by a preponderance of the evidence that the court has

jurisdiction based on the complaint and jurisdictional evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). Moreover, no presumptive truthfulness attaches to Plaintiffs' allegations, and courts can decide disputed material fact issues to determine whether they have jurisdiction. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Rule 12(b)(6) dismissal can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a Rule 12(b)(6) motion is. *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). A court considers only the pleadings in deciding motions for judgment, *see Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002); however, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the Plaintiffs' complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

When, as here, the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, however, the moving party may meet its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has carried this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party also may not rest upon mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(e)(2).

## II.   PLAINTIFFS' CLAIMS SEEKING DECLARATORY AND INJUNCTIVE RELIEF FROM HOUSTON'S CHARTER'S VERIFICATION FORM ARE MOOT [COUNTS I & II]

In order to find Plaintiffs' declaratory and injunctive claims directed to the challenged provisions moot, the Fifth Circuit panel shifted the burden to the City to show that "[s]ubsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior *could not reasonably be expected to recur*." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

*Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cited in *Pool*, 978 F.3d at 314) (emphasis

supplied). The panel advised this Court that, "in ruling on the request for a permanent

injunction, the district court may consider whether to allow *additional evidence concerning

the legal authority behind the new [circulator] form and the extent to which it is binding*."[4]

During the pendency of this case, Houston has taken additional steps to provide just

such additional evidence that it *still* has no intention of enforcing unenforceable charter

provisions. This Court, for example, may take judicial notice that an Editor's Note has been

appended to those sections containing "qualified voter" requirements for circulators. They

appear on the City's website following the text of the relevant provision.

> Editor's note—In light of court decisions addressing the constitutionality and
> enforceability of circulator requirements, the City will accept petitions
> circulated by individuals that are not residents of the City or are not registered
> to vote in the City, provided the circulators complete the City's alternate
> affidavit form. In lieu of the affidavit provided in Article VII-a, section 3 of
> the City Charter, circulators who: (a) are residents of the City of Houston but
> are not registered to vote in the City or (b) are not residents of the City must
> use the 'Non-Resident/Non-Registered Circulator Affidavit,' available in the
> City Secretary's Office and at the City Secretary's Office Homepage here:
> http://www.houstontx.gov/citysec/.[5]

In addition, this Court may also take judicial notice that, on December 2, 2020 (after

the Fifth Circuit ruled), Houston City Council passed Ordinance No. 2020-1033,[6] which

---

[4] *Pool*, 978 F.3d at 314 (emphasis supplied). For example, the panel observed: "There is no evidence that
the City Council approved the nonresident petition form published on the City's website, so we do not know
how permanent—or legally effective—the new form and editor's note are." *Id.*

[5]    *See*    Houston,    Tex.,    *Charter*,    art.    VII-a,    §    3,    *available
at https://library.municode.com/tx/houston/codes/code_of_ordinances?nodeId=CH_ARTVII-
AREOF_S3FOPE*, a true and correct copy of which is attached as Exhibit "B."

[6] *See* Houston, Tex., *Code of Ordinances*, No. 2020-1033 (Dec. 2, 2020), a true and correct copy of which
is attached as Exhibit "A."  *See also* Houston, Tex., *Charter*, art. IX, § 7, (printed ordinances as evidence).

acknowledges the *Buckley* decision and its effect on the City Charter, explains the new circulator procedure, and states that the City Secretary will accept circulator petitions in the form set forth in the ordinance and in the Editor's Note to the City Charter that is already in place.[7] This is exactly the kind of evidence the Fifth Circuit described.[8] This action by Houston City Council thus "ma[kes] it absolutely clear that the allegedly wrongful behavior could not *reasonably* be expected to recur." *Pool*, 978 F.3d at 314 (quoting *Friends of the Earth*, 528 U.S. at 189) (emphasis supplied). Nothing in the Fifth Circuit's decision nor any by the Supreme Court or the Fifth or any other Circuit requires that any governmental entity negate any possibility of future enforcement, particularly where, as here, it would make absolutely no sense for the City to do so and Houston cannot repeal or remove the challenged provisions from its charter.

Conversely, the City's attempting to enforce unenforceable laws would require that it act irrationally, even maliciously or in bad faith, risk paying opponents' attorney's fees and/or court sanctions, and waste its own credibility and limited resources. This Court may not simply assume such bad faith, as Plaintiffs urge. Instead, "government officials 'in their

---

[7] *See* Exhs. A & B. It also contains a severance clause that would prevent the whole ordinance from being declared invalid if only a small provision or word was. Consequently, Plaintiffs here would have to satisfy that provision to invalidate the entire ordinance.

[8] On rehearing in the Fifth Circuit, Plaintiffs attempted to mischaracterize their claims as challenging primarily the residency—as opposed to voter registration—requirement of the City Charter. As this Court and Houston have acknowledged, however, Texas law subsumes a residency requirement in its voter registration requirement. Consequently, when *Buckley* held the voter registration requirement unconstitutional, it also likely rendered the *Texas* residency requirement unconstitutional even though the residency issue was not before that Court. That is why Houston judicially admitted that it would not enforce such a requirement. The new form and City Council's embrace of it, however, cure whatever remains, if anything, of *both* alleged constitutional problems. Consequently, this Court may consider dismissal of all of Plaintiffs' claims concerning the Charter requirements together.

sovereign capacity and in the exercise of their official duties are accorded a *presumption of good faith* because they are public servants, not self-interested private parties.'"[9] So, "[w]ithout evidence to the contrary, *we assume that formally announced changes to official governmental policy are not mere litigation posturing*." *Sossamon*, 560 F.3d at 325 (emphasis supplied).   Consequently, this Court should require Plaintiffs to produce evidence showing some sort of focused animus or other bad faith reason why Houston would seriously consider engaging in such futile, wasteful acts to overcome presumption of good faith. *See Mayfield v. Currie*, 976 F.3d 482, 485–86 (5th Cir. 2020). "'[E]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote, or speculative.'"[10] Unsupported and unwarranted paranoia concerning government overreach or past beefs about other petition drives cannot suffice. Plaintiffs have provided nothing else here.

Alternatively, this Court should also require that Plaintiffs overcome a presumption that governments act rationally, such as the one the Seventh Circuit utilizes. "In the absence of any claim of bad faith—as opposed to mere insufficient action, as is incorrectly claimed here—the Court presumes that the Government acts rationally."[11] They cannot do so here.

---

[9] *Yarls v. Bunton*, 905 F.3d 905, 910–11 (5th Cir. 2018) (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)).

[10] *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (quoting *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)) (emphasis supplied).

[11] *United States v. Hammond*, 2:10-CR-0007-JMS-CMM, 2011 WL 201497, at *6 (S.D. Ind. Jan. 18, 2011), *aff'd sub nom. United States v. Moreland*, 703 F.3d 976 (7th Cir. 2012) (emphasis supplied); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("one who believes that another has behaved irrationally has to make a strong case") (citing *Matsushita*, 475 U.S. at 587 (courts won't infer conspiracies in anti-trust cases)).

Because the City has done all it can do, formally and informally, to demonstrate that there can be no reasonable expectation that it will attempt to enforce the unenforceable charter provisions it has also judicially admitted it will not enforce, Plaintiffs' claims directed to the challenged provisions are moot and should be dismissed or, alternatively, the City should have a take-nothing judgment on them.

## III.   PLAINTIFFS LACK STANDING TO ASSERT A NOMINAL DAMAGES CLAIM

### A.   Plaintiffs Admit that Nominal Damages Will Not Redress Their Alleged Injuries

To satisfy the "'irreducible constitutional minimum'" of Article III standing, a plaintiff must establish (1) an injury in fact; (2) that is fairly traceable to the challenged conduct; and (3) *a remedy that is likely to redress that injury. Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106, at *3 (U.S. Mar. 8, 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (emphasis supplied). Although an often-overlooked but still-essential element of standing, the redressability inquiry essentially asks: would the plaintiff "'personally ... benefit in a tangible way from the court's intervention'"?[12] In *Steel Co. v. Citizens for a Better Environment*, the Supreme Court declared that proof of this element requires something more than a Plaintiffs' happiness that "a wrongdoer gets his just deserts, *or that the Nation's laws are faithfully enforced*." *Id*. at 107 (emphasis supplied). "[P]sychic satisfaction is not an acceptable Article III remedy because it does not redress

---

[12] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)).

a cognizable Article III injury." *Id*. The relief sought to be awarded must actually remedy the injury suffered.

In this case, Plaintiffs' claim for nominal damages would not actually redress their alleged past "chill." In the joint filing this Court required, Plaintiffs repeatedly declared their position that "*only an Order of this Court enjoining and/or declaring the challenged provisions unconstitutional under the First and Fourteenth Amendments will provide full and permanent relief short of an amendment to the Houston City Charter*."[13] Plaintiffs persist in the mistaken belief that some order from this Court will allow Houston formally to amend its charter to remove the offending provisions. Indeed, in the next sentence of the Joint Discovery/Case Management Plan, they mistakenly state: "Plaintiffs' requested relief will permit the City of Houston to lawfully amend the jurat to comply with First Amendment requirements and to prevent any subsequent challenge to signatures filed thereunder." This Court, however, cannot order the City to do something the City is legally barred from doing without a public vote. Moreover, such unwarranted absolutism should cost Plaintiffs their nominal damages claim because it amounts to a judicial admission that nominal damages cannot redress their alleged injuries.[14]

---

[13] *See* Joint Discovery/Case Management Plan Under Rule 26(F) Federal Rules of Civil Procedure, Doc. 47, filed March 15, 2021 at 9, ¶ 16 (emphasis supplied).

[14] While the Supreme Court has recently addressed the redressability of nominal damages, it did so only in the context of "completed" violations where there had been actual enforcement of the challenged law. *See Uzuegbunam*, 2021 WL 850106, at *7. Here, all parties and courts agree that the City has not actually threatened or attempted to enforce the challenged provisions or substitute against Plaintiffs at any relevant time. There is, therefore, no completed violation that would invoke *Uzuegbunam* here. Equally important, in that case, there was no formal declaration to a court that only injunctive or declaratory relief could redress the plaintiffs' alleged injuries.

Plaintiffs have also admitted that nominal damages will not redress their alleged injuries in both their past pleadings and purported evidence here. For example, they pleaded that their speech is chilled by the presence of the challenged provisions, and, so long as those provisions are not enjoined or declared unconstitutional, their speech will allegedly remain chilled.[15] In particular, Pool verified under oath that "the harm will continue unless [the challenged provisions are] declared unlawful and enjoined by this Court." *See* First Amended Verified Complaint for Declaratory and Injunctive Relief ("First Amended Complaint"), dated June 26, 2019, at 16, ¶ 50.[16] An award of nominal damages, therefore, would *not* redress Plaintiffs' alleged injury. Such claims should be dismissed.

### B.   Nominal Damages Satisfy Redressability Requirements Only When There is Actual Enforcement of the Challenged Law

The U.S. Supreme Court recently held that claims for nominal damages meet the redressability requirements for standing only when there is a *completed* violation of the Plaintiffs' rights, that is, when there has been *actual enforcement* of the challenged law.[17]

---

[15] *See* First Amended Complaint at 11-12, ¶¶ 27,31; Appellants' Brief on the Merits, *see Pool v. City of Houston*, No. 19-20828, 2020 WL 995526, at *35, 48, 58 (5th Cir. Feb. 28, 2020) (Br), a true and correct copy of which excerpts are attached as Exhibit "E."

[16] Although Plaintiffs have now amended their pleadings, they have not contradicted or retracted these statements.

[17] *See Uzuegbunam*, 2021 WL 850106, at *7 ("we hold only that, for the purpose of Article III standing, nominal damages provide the necessary redress *for a completed violation of a legal right*"). The Supreme Court clearly expressed the limitations of its ruling:

> This is not to say that a request for nominal damages guarantees entry to court. Our holding concerns only redressability. It remains for the plaintiff to establish the other elements of standing (such as a particularized injury); plead a cognizable cause of action … and meet all other relevant requirements. We hold only that, for the purpose of Article III standing, nominal damages provide the necessary redress *for a completed violation of a legal right*.

*Id.* (emphasis supplied).

The Fifth Circuit seemed to anticipate this ruling when it observed that "it is far from clear that the Pools have such a claim for [nominal] damages when the law was not actually enforced against them in 2019. They instead brought this case to prevent their speech from being chilled."[18] Other circuits reinforce the Supreme Court's distinction. As the Sixth Circuit explained in a similar case involving a "zombie" rule:

> No readily apparent theory emerges as to how nominal damages might redress past chill ... In the situation before us, Morrison seeks nominal damages based on a regime no longer in existence. To confer nominal damages here would have no effect on the parties' legal rights ... *Because nominal damages will not provide Morrison any redress, his suit fails to satisfy the second requirement for standing.*[19]

Here, all parties and courts agree that there is and can be no jurisdictional evidence that Houston ever threatened or attempted to enforce the challenged provisions or Houston's substitute against the Plaintiffs at any relevant time, let alone that there was any completed violation that would invoke *Uzuegbunam*.[20] Plaintiffs, therefore, have failed to state a viable claim for nominal damages flowing *either* from the challenged provisions or Houston's substitute.

---

[18] *Pool*, 978 F.3d at 314, n.10 (citing *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 343–46 (5th Cir. 2017) (allowing a plaintiff's claim for nominal damages, based on a sanction she actually incurred, to survive after her claims for equitable relief were mooted).

[19] *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 610-11 (6th Cir. 2008) (quoting *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1267–68 (10th Cir. 2004) (McConnell, J., concurring) ("where ... the challenged past conduct did not give rise to a compensable injury and there is no realistic possibility of a recurrence, nominal damages have no more legal effect than would injunctive or declaratory relief in the same case"). This holding was reaffirmed two years later in *Hernandez v. European Auto Collision, Inc.*, 487 F.2d 378, 387 (2d Cir. 1973) (Timbers, J., concurring) (quoting *Kerrigan*, 450 F.2d at 489–90). *See also Geraci v. Treuchtlinger*, 487 F.2d 590, 592 (2d Cir. 1973).

[20] Equally important, in *Uzuegbunam*, there was no formal declaration to a court by the plaintiff that only injunctive or declaratory relief could redress the plaintiffs' alleged injuries.

### C.   Alternatively, Nominal Damages Become Moot When Actual Declaratory Relief Claims Become Moot Because They Cannot Redress Any Alleged Injury

Ordinarily, "'claims for damages or other monetary relief automatically avoid mootness, *so long as the claim remains viable.*'"[21] Here, Plaintiffs' claim for nominal damages flowing from the challenged provisions is not viable. Consequently, it cannot survive. The Sixth Circuit in *Morrison*, 521 F.3d at 610-11, explained:

> In *Uzuegbunam,* the Court decided whether nominal damages could redress a completed injury. The question was left open because claims for nominal damages had traditionally performed a declarative, prospective function. "Both sides agree that nominal damages historically could provide prospective relief. The award of nominal damages was one way for plaintiffs at common law to 'obtain a form of declaratory relief in a legal system with no general declaratory judgment act.'" *Uzuegbunam*, 2021 WL 850106, at *4 (quoting D. Laycock & R. Hasen, Modern American Remedies 636 (5th ed. 2019)). With the advent of the federal declaratory judgments, that function became largely unnecessary.
>
> *Where, as here, a claim for nominal damages would perform only such a prospective function, however, it would be improper and unfair for such a claim to survive when an actual claim for declaratory relief could not.* Although the Fifth Circuit has not spoken on this issue, many other circuits have and have held that, in this narrow instance*, a claim for nominal damages goes down with the declaratory-judgment ship*.[22]

---

[21] *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 521 (5th Cir. 2014) (quoting 13C CHARLES A. WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE §3533.3 (3d ed. 2013)). *See Uzuegbunam,* 2021 WL 850106, at *7.

[22] The Sixth Circuit explained:

> As Morrison's own counsel acknowledged at oral argument, nominal damages are a vehicle for a declaratory judgment. As such, nominal damages have 'only declaratory effect and do not otherwise alter the legal rights or obligations of the parties.... [T]hey can sometimes constitute effectual relief, but only with respect to future dealings between the parties.' *While we may have allowed a nominal-damages claim to go forward in an otherwise-moot case, we are not required to relax the basic standing requirement that the relief sought must redress an actual injury*… To confer nominal damages here would have no effect on the parties' legal rights … Because nominal damages will not provide Morrison any redress, his suit fails to satisfy the second requirement for standing.

The Second Circuit, in *Kerrigan v. Boucher*, 450 F.2d 487, 489–90 (2d Cir. 1971), also found that standing to assert incidental claims for nominal damages, that were merely declaratory judgment claims in disguise, was extinguished when the declaratory and injunctive claims were dismissed as moot. It explained:

> The basic proposition which plaintiff is seeking to establish is the unconstitutionality of the Connecticut statute. Not having found a justiciable controversy permitting a declaration, the claim for nominal damages, which is clearly incident to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists.

The Third Circuit has also spoken favorably on this issue. In a lengthy and detailed concurrence in *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 488–89 (3d Cir. 2016) (Smith, J., concurring), Judge Smith discussed the holding in *Morrison* in detail and cited *Steel* for the notion that incidental benefits and psychic satisfaction do not meet the test for Article III standing.[23]

---

*Morrison*, 521 F.3d at 610–11 (quoting *Utah Animal Rights Coal.*, 371 F.3d at 1267–68 (McConnell, J., concurring). This holding was reaffirmed two years later in *Hernandez v. European Auto Collision, Inc.*, 487 F.2d 378, 387 (2d Cir. 1973) (Timbers, J., concurring) (quoting *Kerrigan*, 450 F.2d at 489–90); *Geraci v. Treuchtlinger*, 487 F.2d 590, 592 (2d Cir. 1973).

[23] *Freedom from Religion,* 832 F.3d at 484. Turning to the case before that court, he observed:

> Here Schaub does not seek compensatory damages, but instead seeks only nominal damages, where 'the dollar is not the real objective of the litigation.' As with the request for civil penalties to be paid to the United States Treasury in *Steel Co.*, Schaub seems to be seeking a remedy that does not provide her with any tangible benefit. Instead, *she appears to be seeking an "authoritative judicial determination of the parties' legal rights." That is prospective relief, not something that nominal damages can redress.*

> Standing alone, with the claims for injunctive and declaratory relief analyzed separately, I am doubtful that this 'psychic satisfaction [can be] an acceptable Article III remedy because it does not redress a cognizable Article III injury.' If this nominal damages claim is really one for prospective relief, then this analysis has already been conducted in the panel opinion.

After discussing how nominal damages were originally envisioned as a way to seek

a declaration of rights before declaratory relief was authorized, Judge Smith suggested that

> Instead of allowing such a claim to proceed in federal court, if we agreed
> with the District Court that the claims for injunctive and declaratory relief
> were moot, a proper result would be to hold that the [nominal damages] claim
> is non-justiciable … *to hold otherwise would allow litigants to avoid
> mootness of claims for injunctive relief by simply 'appending a claim for
> nominal damages' to the complaint*.[24]

Finally, Supreme Court justices have also weighed in favorably on this issue.[25]

Where, as here, the plaintiffs still seek exorbitant fees (this Court having already

held they were not entitled to any), the notion that a nominal damages claim essentially

seeking declaratory relief is not moot when the latter claims are dismissed as moot could

also lead to problematic results. If a claim for nominal damages cannot become moot, and

is eligible for fees under § 1988, plaintiffs may be inclined to waste legal and judicial

---

*Id*. at 484–86; *Kerrigan*, 450 F.2d at 489–90 (stating that the claim for nominal damages "is clearly incidental to the [declaratory] relief sought [and] cannot properly be the basis upon which a court should find a case or controversy").

[24] *Freedom from Religion,* 832 F.3d at 484 (citation omitted) (emphasis supplied). He concluded by asking:

> what if we agreed with the District Court that Plaintiffs' claim for injunctive relief *was*
> moot? This appears to be the only reason why Plaintiffs raise the argument that nominal
> damages would nonetheless preserve their claim, as they never argued that they had
> standing separate from their claim for injunctive relief in the District Court. Would we
> instruct the District Court to rule on the Establishment Clause claim because of the
> presence of nominal damages? I seriously question whether a 'case or controversy' would
> remain.

*Id.* at 490.

[25] In *Edgar v. MITE Corp.*, 457 U.S. 624, 658 (1982) (Marshall, J., dissenting), for example, Justice Marshall addressed the issue (which had not been raised in the majority opinion). He observed that, "where there is no other basis for challenging the validity of an injunction, the possibility of such recovery [of nominal damages] is not sufficient to keep a case alive. If it were, then almost no case challenging an injunction could become moot." *Id.* (citing *Wash. Mkt. Co. v. District of Columbia*, 137 U.S. 62 (1890) (court costs); *Hernandez*, 487 F.2d at 387 (nominal damages); *Kerrigan*, 450 F.2d 487 (nominal damages).

resources by continuing litigation when there is no longer any reason to pursue it, precisely what has occurred in this case.

A claim for nominal damages is, therefore, like a claim seeking declaratory relief that duplicates one seeking injunctive relief. The Texas courts in addressing its Uniform Declaratory Judgments Act have consistently refused to allow such a claim to be asserted or fees to be awarded where such a claim duplicates the primary claim and is tacked on to the primary claim as a means to obtain fees.[26] This Court should apply the same logic where, as here, the nominal damages claim will not redress the alleged wrong Plaintiffs themselves have identified.

## IV. PLAINTIFFS HAVE FAILED TO STATE ANY VIABLE CLAIM CHALLENGING HOUSTON'S SUBSTITUTE PETITION CIRCULATOR VERIFICATION FORM, IF THEY HAVE STANDING TO ASSERT SUCH CLAIMS AT ALL

Plaintiffs challenge Houston's substitute as violative of state law, the Equal Protection and Due Process Clauses, First Amendment, as an *ex post facto* law, and an unconstitutional condition. They assert both facial and purported "as applied" challenges. None of these overblown, vague claims, however, has any legal merit. Indeed, most of these challenges have been repeatedly *rejected* by the Supreme Court and the Fifth Circuit.

As an initial matter, this Court should recall that *this Court* essentially drafted the substitute based its own review of on governing case law. *See* Exh. D, at 13, ln.3–14, ln.13; 26, ln.20–34, ln.25; 26, ln.25. Moreover, the substitute is also one to which Plaintiffs' counsel essentially agreed in open court. *See id.* at 13, ln.1–14, ln.13; 32, ln.4– 34, ln.25.

---

[26] *See, e.g.*, *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69,79 (Tex. 2015); *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 200 (Tex. 2007).

Second, Plaintiffs' "facial challenge to a legislative Act … is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Shelby County, Ala. v. Holder*, 570 U.S. 529, 581 (2013) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This high standard should be applied to all of Plaintiffs' claims here even though they mischaracterize some of their challenges as "as applied." The Supreme Court explained: "[t]o categorize a challenge as facial or as-applied [*the court*] look[s] to see whether the 'claim and the relief that would follow *reach beyond the particular circumstances of the [] plaintiffs*.'"[27] If so, then the claim must "'satisfy [the] standards for a facial challenge to the extent of that reach.'"[28] Here, the prospective relief sought for Plaintiffs' purported facial and as applied challenges is *identical* and *broad*. Plaintiffs have made no meaningful distinction between their alleged circumstances and those of other circulators. Consequently, they should be required to meet the higher, facial challenge standards as to all their claims for prospective relief.

Third, the Supreme Court has long held that governmental entities have a compelling interest in preventing election fraud.[29] This is important because, even if this

---

[27] *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 425 (5th Cir. 2014) (quoting *Doe v. Reed*, 561 U.S. 186 , 130 S. Ct. at 2817 (2010)) (emphasis supplied).

[28] *Id.* (quoting *Reed*, 130 S. Ct. at 2817); *Joint Heirs Fellowship Church v. Ashley*, 45 F. Supp. 3d 597, 607 (S.D. Tex. 2014), *aff'd sub nom. Joint Heirs Fellowship Church v. Akin*, 629 Fed. App'x 627 (5th Cir. 2015)).

[29] *See, e.g.*, *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 736 (2021) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Beare v. Smith*, 321 F. Supp. 1100, 1107 (S.D. Tex. 1971), *aff'd sub nom. Beare v. Briscoe*, 498 F.2d 244 (5th Cir. 1974) ("another compelling state interest … is that of preventing election fraud. We do not question that this is a legitimate state interest and that it is compelling").

Court *incorrectly* applies strict scrutiny[30] to its assessment of the constitutionality of Houston's substitute, the Supreme Court's determination that Houston's interest in election integrity is compelling already satisfies the second prong of the strict scrutiny test.[31]

Fourth, Plaintiffs are judicially estopped from arguing that Houston's substitute is not the least restrictive means to achieve Houston's compelling interest in preventing election fraud. Some of the plaintiffs here have challenged circulator residency requirements (like the one embedded in Texas' registered voter requirement) in several other jurisdictions. In doing so, they frequently argued that such provisions could not satisfy the strict scrutiny standard because there were less restrictive alternatives, especially circulators' submitting to the jurisdiction of the local courts and agreeing to show up if there were protests to their petitions.[32] Having successfully argued in these courts that the

---

[30] *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 452 (2015) (citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000)) (under strict scrutiny a law must be narrowly tailored to advance the State's compelling interest through the least restrictive means"). The First Amendment, however, only requires that a challenged provision "[b]e narrowly tailored, not that it be "perfectly tailored." *Id.* at 454 (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992)). "The impossibility of perfect tailoring is especially apparent when the State's compelling interest is as intangible as public confidence in the integrity of the judiciary." *Id*.

[31] Houston's requirement that Plaintiffs submit to the jurisdiction of the local courts and appear if there are protests is *not* subject to strict scrutiny. Instead, at best, "[a]n ordinance warrants *intermediate scrutiny* … if it is a time, place, and manner regulation and not a ban*." City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 443 (2002). Houston's substitute is a time, place, and manner restriction only: it does not bar non-resident circulators. *But see infra* Section IV.B (discussion of *Anderson/Burdick* standard for evaluating constitutionality of voting restrictions).

[32] *See Wilmoth v. Sec'y of N.J.*, 731 Fed. App'x 97, 104 (3d Cir. 2018) ("Wilmoth and Pool each 'have agreed to submit to the jurisdiction of [New Jersey] for purposes of any investigation and/or prosecution of petition fraud....'"); *Benezet Consulting, LLC v. Boockvar*, 1:16-CV-00074, 2020 WL 5095887, at *2 (M.D. Pa. Aug. 28, 2020) ("it bears noting that Pool 'has expressly agreed to consent to the jurisdiction of the Commonwealth ... for any investigation and/or prosecutorial action related to the circulation of election petitions in the Commonwealth' … especially in light of the case law in which "[f]ederal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes

requirements Plaintiffs now challenge as unconstitutional here are not only constitutional, but are the least restrictive means to achieve a compelling state interest,[33] Plaintiffs are judicially estopped from taking the contrary position here.[34]

Finally, at their core, Plaintiffs' claims challenge the fact that non-resident petition circulators have to make *any* accommodation to conduct business in jurisdictions in which they do not reside. The Supreme Court, however, has long recognized that content-neutral restrictions on the time, place, and manner of even political speech are permissible. *See, e.g.*, *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020). Consequently, Plaintiffs' underlying premise—that their circulation activities should not be regulated at all – is incorrect. For these reasons, Plaintiffs' claims challenging Houston's substitute should be dismissed or, alternatively, the City should have a take-nothing judgment on them.

---

of subpoena enforcement, and ... have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result." *Id.* (citing *Brewer*, *Chandler*, and *Wilmoth*).

[33] *See supra* note 32; *Alexander Arsenault, Trenton Pool, & Roque De La Fuente v. Tahesha Way*, 3:16-CV-01854, 2021 WL 1986667, at *11 (D.N.J. May 17, 2021) (final ruling).

[34] The doctrine of judicial estoppel is equitable in nature and can be invoked to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding. *Love v. Tyson Foods, Inc*., 677 F.3d 258, 261 (5th Cir. 2012) (citing *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc)). The aim of the doctrine is to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999) (citation omitted). In determining whether to apply judicial estoppel, courts primarily look for the presence of the following criteria: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love*, 677 F.3d at 261 (quoting *Reed*, 650 F.3d at 574). Judicial estoppel is an appropriate basis for dismissal under Rule 12(b). *See, e.g., U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Tex*., 944 F.2d 253, 258 (5th Cir. 1991).

A.     **Alternatively, Plaintiffs Have Failed to State A Viable Claim that Houston's Substitute Is an *Ex Post Facto* Law or an Unconstitutional Condition, Even if Plaintiffs Had Standing to Assert Such Claims [Count IX]**

Plaintiffs assert that requiring that they attest that they have not been "convicted of the crimes of fraud or misrepresentation" somehow makes Houston's substitute an *ex post facto* law if it applies to any conviction prior to December 2, 2020, the date City Council passed an ordinance formally adopting the substitute. They also claim that it and the requirement that Plaintiffs submit to the Harris County courts' jurisdiction and appear in the event of protest also imposes an unconstitutional condition on the exercise of their Free Speech rights. Plaintiffs' arguments make no sense, have no legal basis, contradict their own in-court admissions, and are apparently made in bad faith. This assumes, of course, that Plaintiffs even have standing to assert such arguments. They do not.

First, no plaintiff has pleaded or demonstrated that he has any prior conviction for fraud or misrepresentation. Consequently, there is no possibility that any petition signatures they gather will be rejected because they cannot swear that they have no such convictions. Any relief granted by this Court would, therefore, not redress their injuries (because there cannot be any). *See supra* Section III.A. Plaintiffs, therefore, have no standing to challenge this disclosure requirement in the substitute, particularly not as it is applied to them.

Second and alternatively, "the *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277,

325–326, 18 L. Ed. 356 (1867)). The substitute's *disclosure* requirement imposes no additional punishment for fraud or misrepresentation. Requiring *disclosure* of past convictions is not tantamount to adding punishment to those convictions. Consequently, the substitute cannot, by definition, be an *ex post facto* law.

Third, such a provision does not violate the Constitution's unconstitutional conditions doctrine (there is no specific constitutional provision) even if Plaintiffs had standing to assert such a facial or as applied claim. The doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.[30] *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). Consequently, Plaintiffs had to plead and prove that Houston somehow conditioned Plaintiffs' desired petitioning activity on Plaintiffs' waiving some enumerated constitutional right. They did not and cannot do so. In *MA LEG Partners 1 v. City of Dallas*, 442 F. Supp. 3d 958, 968 (N.D. Tex. 2020), plaintiff, like the Plaintiffs here, contended that an application requirement, affidavit, and other forms like those utilized in Houston's substitute violated the unconstitutional conditions doctrine by requiring that the owner to submit the required information to lease private property. The court found MA LEG lacked standing to assert such a claim because the challenged requirements did not suffice to make such a showing. *Id.* The same result should ensue here.

Fourth, there is no unconstitutional condition in the substitute's requirement that Plaintiffs submit to the jurisdiction of the Harris County courts. Cynically, Plaintiffs make a big show of agreeing to submit to the jurisdiction of these courts "for purposes of any subsequent investigation and/or prosecution," *see, e.g.,* Plaintiffs' Second Amended

Petition at 16, ¶ 42 (emphasis supplied). Yet, in the very next section, Plaintiffs claim a constitutional violation in the substitute's actually requiring them to do what they agreed to do by appearing on three-day's notice. Worse, *Plaintiffs' counsel specifically agreed that 72-hour's notice was reasonable* at the Court's hearing even though Plaintiffs now allege that that requirement too is unconstitutional.[35] Worse still, Plaintiffs now claim that requiring them actually to submit to the Harris County courts' jurisdiction without receiving a subpoena and formal service of process is also unconstitutional. *Id.* at 24, ¶ 78. The whole reason Houston sought to have *non-resident* circulators submit to the Court's jurisdiction, however, *is because they would reside outside the range of the Harris County courts' subpoena power*.[36] Consequently, Plaintiffs' argument is not only meritless but is also made in bad faith.  Plaintiff cannot voluntarily waive their rights then claim that the same rights were violated because the City will not be required to take steps the Federal and Texas rules do not permit it to take.

In *Goodall v. Williams*, 324 F.Supp.3d 1184 (D. Colo. 2018), the court approved exactly the kind of compromise between Houston's need to protect the integrity of its referendum process and Plaintiffs' exercise of constitutional rights reached here. The court found that having circulators submit to the jurisdiction of the court and agree to return in

---

[35] *Compare* Exh. D., at 13, ln. 3 – 14, ln. 13; 32, ln. 4 – 34, ln. 25 *with* Plaintiff's Second Amended Petition at 24, ¶ 77.

[36] *See, e.g.,* Tex. Civ. Prac. & Rem. Code § 22.002 (150-mile subpoena range); Tex. R. Civ. P. 176.3(a) (same); *see also* Fed. R. Civ. P. 45(b)(2) (defining federal court subpoena range); 4(k)(1)(B) (100-mile limit on service on non-resident *parties*).

the event of a protest would have been a constitutional, less restrictive means to protect the compelling state interest in election integrity.

> Courts have routinely found that requiring circulators to *sign affidavits* or *enter into agreements* in which they 'provide their relevant contact information and agree to return in the event of a protest' is a more narrowly tailored means of ensuring a state's ability to locate circulators than is a residency requirement.[37]

Numerous other courts have agreed and granted governmental entities great latitude in crafting less restrictive means than residency requirements to protect election integrity.[38]

Houston's substitute is, therefore, constitutionally sound and does not, as a matter of law, impose any improper condition on the Plaintiffs' exercise of enumerated rights. Instead, it is exactly the type of remedy courts, including this one, have repeatedly approved to protect Houston's compelling interest in maintaining election integrity.

### B.    Alternatively, Plaintiffs Have Failed to State a Viable Claim that Houston's Substitute Violates the Equal Protection Clause [Counts III, IV, VII, VIII]

Plaintiffs next assert that having to declare whether they have been convicted of fraud or misrepresentation, agreeing to submit to the local court's jurisdiction and to show up if there is a protest to their petitions somehow constitutes an Equal Protection violation because resident circulators allegedly do not have to do the same. The mere existence of

---

[37] *Id.* at 1199 (citing *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030 (10th Cir. 2008); *Chandler v. City of Arvada, Colo.*, 292 F.3d 1236, 1244 (10th Cir. 2002) (emphasis supplied).

[38] *See, e.g.*, *Nader v. Brewer*, 531 F.3d 1028, 1036 (9th Cir. 2008); *Krislov v. Rednour*, 226 F.3d 851, 863 (7th Cir. 2000) ("[W]e must take into account . . . other, less restrictive means [the state] could reasonably employ[, though it] *need not use the least restrictive means* available, as long as its present method does not burden more speech than is necessary to serve its compelling interests.") (emphasis supplied).

different requirements, if any, however, does not state an Equal Protection violation, even if Plaintiffs had standing to assert one.

As an initial matter, "[e]qual protection *does not* require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made."[39] Consequently, to state a claim under the Equal Protection Clause of the Fourteenth Amendment, the plaintiff "must either allege that (a) a state actor intentionally discriminated against [him] because of membership in a protected class or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[40]

Plaintiffs do not allege membership in any protected class and the Supreme Court has already held that Houston has a compelling state interest in preventing election fraud. Consequently, Plaintiffs must show that they were intentionally treated different than "others similarly situated." Local circulators, however, are not "similarly-situated" to non-resident ones and Plaintiffs have not demonstrated why they should be. Moreover, Plaintiffs cannot even show disparate treatment. This court may take judicial notice that *resident* circulators are already subject to the Harris County courts' jurisdictions, can ordinarily appear on short notice because they are residents, and their prior convictions, if any, can be determined by consulting local criminal and voter registration records,[41] which

---

[39] *Baxstrom v. Herald*, 383 U.S. 107, 111 (1966) (emphasis supplied).

[40] *Gibson v. Tex. Dep't of Ins.–Div. of Workers Comp.*, 700 F.3d 227, 238 (5th Cir. 2012).

[41] This Court may take judicial notice that, in Texas, prospective voters must attest to a far more extensive criminal history in attempting register to vote than Houston's substitute requires. *See* Exhibit "F," a true

include disclosures of past convictions. That is not the case with non-residents who may reside thousands of miles away or merely outside the jurisdiction of the Harris County courts. These facts negate any claim of disparate treatment and thus doom Plaintiffs' Equal Protection claim.

Plaintiffs nevertheless try to increase the constitutional standard Houston must meet here by making conclusory allegations that Houston's substitute somehow constitutes a "severe" infringement of their core political speech. It doesn't. *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), arguably announce the test to address "[c]onstitutional challenges to specific provisions of a State's election laws" under "the First and Fourteenth Amendments."[42] Under *Anderson/Burdick*, if a court deems an election law to be a "severe" burden on the rights of voters, "the regulation must be narrowly drawn to advance a state interest of compelling importance." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 233 n.26 (5th Cir. 2020) (quoting *Burdick*, 504 U.S. at 434). Put another way, it will be subject to strict scrutiny. Conversely, if a court deems such a law to be a "reasonable, nondiscriminatory restriction[]" on the rights of voters, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick*, 504 U.S. at 434. The Supreme Court has already held that Houston would easily meet the latter prong of that test here. *See supra* note 29.

---

and correct copy of Texas' voter registration application, *available at* https://www.sos.state.tx.us/elections/forms/vr-with-receipt.pdf (accessed 5/24/22).

[42] *Anderson*, 460 U.S. at 789. This is arguably also the test for procedural due process claims. *Richardson*, 978 F.3d at 233. Houston, however, does not concede that *Anderson/Burdick* is always test for either but discusses it because the issue was raised in Plaintiffs' pleadings.

The Supreme Court has repeatedly reaffirmed the primacy of this two-track approach. *See, e.g., Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Clingman v. Beaver*, 544 U.S. 581, 586–87 (2005). Under *Anderson/Burdick*, ordinary and widespread burdens, such as those requiring the "nominal effort" of everyone, are not considered severe. *See Clingman*, 544 U.S. at 591, 593–597. Burdens are severe only if they go beyond the merely inconvenient. *See Storer v. Brown*, 415 U.S. 724, 728–29 (1974) (characterizing the law in *Williams v. Rhodes*, 393 U.S. 23 (1968), as "severe" because it was "so burdensome" as to be "'virtually impossible'" to satisfy).

As an initial matter, Plaintiffs are judicially estopped from arguing that requirements they have successfully contended are the least restrictive alternative in other lawsuits—submitting to the jurisdiction of local courts and agreeing to return in the event of protests—somehow impose severe and unconstitutional restrictions on core political speech here. *See supra* notes 32, 33. Second, under *Iqbal* and *Twombly*, Plaintiffs' conclusory allegations regarding the alleged severity of the remaining substitute restrictions, if any, are woefully insufficient satisfy *Anderson/Burdick*. *See Iqbal*, 556 U.S. at 678.

Alternatively, if Plaintiffs can raise this issue at all, their having agreed to submit themselves to local court jurisdiction here and return for protests, the only remaining restrictions over which Plaintiffs could fight here are the type of notice required and length of the notice period before they must appear, and whether they can be required to disclose certain past convictions. In particular, Plaintiffs claim that the substitute unduly burdens their First Amendment associational rights, by forcing them to forego the ability to require

*an unavailable* subpoena for notice and alleged opportunity to formally object to formal process. *See* Plaintiffs' Second Amended Petition at 31-32. As discussed above, however, subpoenas and service of process are not available where, as here, Plaintiffs reside outside the relevant court's jurisdictional range. Moreover, there is nothing in the substitute that prevents Plaintiffs from seeking or obtaining an accommodation on local appearance from a court or the City itself should the need arise.

As further demonstrated above, Plaintiffs have also claimed that exactly such requirements are the least restrictive means to accomplish a governmental entities' demonstrated interest in election integrity. *See supra* note 32. In any event, these are not severe restrictions on speech that would trigger strict scrutiny. Moreover, as discussed, Plaintiffs' counsel has already judicially admitted that the three-day time period was reasonable and constitutional. *See* Exh. D at 13, ln. 1–14, ln. 13; 32, ln. 4– 34, ln. 25.

Finally, this Court may also take judicial notice that requiring that an affiant be free of past convictions is a staple of virtually every garden-variety affidavit's statement of competency and unquestionably constitutional.[43] Indeed, Houston's substitute's requirements are *narrower* than those in tens of millions of other affidavits and in Texas' voter registration attestations because they are limited to convictions for fraud and misrepresentation.

---

[43] *See, e.g.*, 1 Texas Legal Practice Forms § 4A:36 ("My name is [name of affiant]. I have never been convicted of a crime…"); *Wyatt v. McGregor*, 855 S.W.2d 5, 17 (Tex. App.—Corpus Christi 1993, writ denied) (affidavit defective because its statement of competency was conclusory and did not specifically include statement that affiant had never been convicted of a crime).

Houston's substitute also cannot be said to contain "severe" restrictions on Plaintiffs' speech by *not requiring* plaintiffs to complete a verification they claim is unconstitutional, that is, the challenged provision in Houston's Charter. *See* Plaintiffs' Second Amended Petition at 31. In this regard, they also claim that it severely burdens their speech to have to complete a substitute verification that allegedly violates state law, allegedly subjecting them to additional challenges. *Id.* Aside from the speculative nature of that alleged harm, it is baseless and grounded in the false assumption that Houston is somehow compelled to enforce laws that have already been rendered unconstitutional. It isn't. *See infra* Section VII.

None of these alleged constitutional violations, however, amount to "severe" restrictions on speech. Consequently, *Anderson/Burdick's* more relaxed standard applies. Under *Anderson/Burdick*, if a court deems a law to be a "reasonable, nondiscriminatory restriction[]" on the rights of voters, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick*, 504 U.S. at 434. As a matter of law, Houston easily meets the latter prong of that test here based upon the Supreme Court's determination that Houston has a compelling interest in election security satisfies that test as a matter of law. Plaintiffs' Equal Protection claims should, therefore, be dismissed or, alternatively, Houston should have a take nothing judgment on them.

### C. Alternatively, Plaintiffs Have Failed to State a Viable Claim that Houston's Substitute Violates the Due Process Clause [Counts V & VI]

Plaintiffs contend, almost as a throwaway, that Houston's substitute requirement that non-resident circulators state that they have not been convicted of fraud or

misrepresentation is vague and somehow overbroad. *See* Plaintiffs' Second Amended Petition at 22-23. Although their pleading is improperly skeletal and conclusory on this issue, violating *Twombly* and *Iqbal*, Plaintiffs apparently claim not to understand the terms "conviction," "fraud," and "misrepresentation." They never explain how those terms are actually overbroad nor do Plaintiffs suggest how they might be narrowed. It is very clear that the terms "fraud" and "misrepresentation" address crimes of dishonesty, properly avoided where election fraud is at issue. Consequently, Plaintiffs' conclusory overbreadth challenge in Counts V and VI should be summarily dismissed under *Iqbal* and *Twombly*.

Plaintiffs here do not claim that Ordinance No. 2020-1033 itself is vague. Instead, they claim that the recitations the substitute requires in the circulator verification include vague language.  Consequently, the Due Process clause does not appear even to apply to the substitute or ordinance here. That alone is grounds for dismissal. Yet even if the Due Process Clause does apply to both, Plaintiffs cannot plausibly allege that such language is unconstitutionally vague. First, as demonstrated above, such language is already included *as boilerplate* in virtually every ordinary affidavit. Second, this Court may take judicial notice that all persons *registering to vote* in Texas must attest that they have not been "finally convicted of a felony, or if a felon, I have completed all of my punishment… or I have been pardoned…" *See* Exh. F. Third, the Fifth Circuit has routinely held virtually identical language to be "perfectly clear." *Young v. Hosemann*, 598 F.3d 184, 191 (5th Cir. 2010). In *Young*, for example, it rejected a constitutional challenge to a constitutional provision that *prevented from voting* those "'[c]onvicted of murder, rape, bribery, theft…'" 598 F.3d at 187 (quoting Miss. Const., § 241).

A law is unconstitutionally vague under the Due Process Clause only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."[44] Moreover, because "[f]acial challenges are strong medicine.,"[45] "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.' *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). Because all of Plaintiffs' Due Process attacks on the substitute here as vague and overbroad are conclusory and hypothetical (considering that no Plaintiff admits to having been convicted of fraud or misrepresentation),[46] but not plausible, they should be dismissed or the City should have a take-nothing judgment on them.

### D.   Alternatively, Plaintiffs Have Failed to State a Viable Claim that Houston's Substitute Violates the First Amendment [Counts VII &VIII]

Plaintiffs' First Amendment facial and "as applied" challenges to the substitute are identical to its Equal Protection challenges and virtually identical to each other. Consequently, they fail for the same reasons that Plaintiffs' equal protection claims fail.

---

[44] *United States v. Williams*, 553 U.S. 285, 304 (2008). Plaintiffs do not allege that the substitute "authorizes or encourages seriously discriminatory enforcement."

[45] *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005). There can be no "as applied" Due Process claims where, as here, the assertion is that the language of the challenged provision is vague and there are no special consideration involving Plaintiffs. Count VI, should, therefore, be summarily dismissed or evaluated as a facial challenge.

[46] A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 494–95 (1982).

*See supra* Section IV.B. *These arguments, asserted at pages 23-29, are adopted and reasserted here.* Second, because there is no actual difference between Plaintiffs' facial and "as applied" First Amendment claims, as discussed above, Plaintiffs must meet the higher standards for facial challenges by showing that there are no circumstances in which the substitute can comply with the First Amendment. *See supra* at p. 17. They cannot do so here.

In the context of election-related constitutional challenges, "[s]tates allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally."[47] "[I]n reviewing a First Amendment challenge to a state's election law, the Supreme Court has emphasized that '[n]o bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms.'" *Wilmoth*, 731 F. App'x at 101-02 (quoting *Timmons*, 520 U.S. at 359 (1997)). Instead, "[u]nder what has come to be known as the *Anderson-Burdick* balancing test, 'the rigorousness of [a court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens' the Plaintiffs' First Amendment rights." *Id*. at 102 (quoting *Burdick*, 504 U.S. at 434).

As discussed in Section IV.B, under *Anderson/Burdick*, ordinary and widespread burdens, such as those requiring "nominal effort" of everyone, are not considered severe burdens. *See Clingman*, 544 U.S. at 591, 593–97. Making truthful attestations, the same one thousands of affiants make every day, requires, at best, nominal effort and amounts, at

---

[47] *See Buckley v. Am. Constitutional Law Found., Inc*., 525 U.S. 182, 191-92 (1999); *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001) (quoting *Buckley*, 525 U.S. at 192)).

worst, to an inconvenience. They can hardly be said to be "'virtually impossible'" to satisfy. *See Storer*, 415 U.S. at 728–29 (citing *Williams v. Rhodes*, 393 U.S. 23, 25 (1968)). This conclusion describes all of Plaintiffs' alleged First Amendment and Equal Protection violations.

As with Plaintiffs' identical Equal Protection claims, none of Plaintiffs' alleged First Amendment violations amount to "severe" restrictions on speech. Consequently, *Anderson/Burdick's* more relaxed standard applies. Under *Anderson/Burdick*, if a court deems a law to be a "reasonable, nondiscriminatory restriction[]" on the rights of voters, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick*, 504 U.S. at 434. Houston easily meets the latter prong of that test as a matter of law here based upon the Supreme Court's determination that Houston has a compelling interest in election security. Plaintiffs' First Amendment claim should, therefore, be dismissed or, alternatively, the City should have a take-nothing judgment.

## V. PLAINTIFF LIBERTY INITIATIVE FUND HAS FAILED TO STATE A VIABLE CLAIM FOR COMPENSATORY DAMAGES, EVEN IF IT HAD STANDING TO ASSERT ONE

Plaintiff LIF claims that it will somehow suffer in the next year $10,000.00 in some kind of damages because LIF will allegedly have to pay more to its co-Plaintiff ACCELEVATE2020 to acquire signatures in late 2021 and 2022 than it would pay in early 2021. LIF does not state a viable or plausible claim for future damages.[48] As an initial

---

[48] LIF asserts that it "*intends* to support an initiative petition to amend the Houston Code of Ordinances to prohibit non-citizen voting in Houston for either the 2021 or 2022 Houston general election ballot." Plaintiffs' Second Amended Petition at 10 (emphasis supplied). It claims that it intends to hire their fellow plaintiff ACCELEVATE2020 to collect signatures. *Id*. at 10-11. It then claims that Houston's substitute will subject the signatures they collect to a state-court challenge because they did not execute the unconstitutional and unenforceable verification present in the

matter, LIF cannot recover damages when, as here, there is no basis for liability. Plaintiffs' failure to state any viable claim, demonstrated above, dooms its damages claims because, without liability, there can be no damages. *See, e.g., Sounding Co., Inc. v. Steward*, CIVA 5:08CV307DCBJMR, 2009 WL 1375699, at *2 (S.D. Miss. May 15, 2009).

Second, even if LIF had stated a viable claim under some legal theory, it has not stated a viable claim for *compensatory* damages. There is no indication in Plaintiffs' petition that LIF has taken any actual steps to accomplish its alleged intention to collect signatures, using local circulators. LIF does not allege that the potential petition Plaintiffs discuss is actually drafted or that it is even possible for Plaintiffs to begin collecting signatures on such a petition before August 2021. LIF concedes that it could not have incurred any damages yet because the price quoted does not increase until August 2021. Consequently, what Plaintiffs seek here are not compensatory damages for past injury. Instead, they seek only *special,* future damages.

Special damages are those that "'are unusual for the type of claim in question'" or that "'are not the natural damages associated with … a claim.'" *Avitia v. Metro. Club of Chicago, Inc*., 49 F.3d 1219, 1226 (7th Cir. 1995). First and Fourteenth Amendment cases are ordinarily not concerned with surge pricing differentials, particularly self-inflicted ones. Consequently, Federal Rule of Civil Procedure 9(g) requires that the complaint specifically state the ground for "special damage." In particular, "proof of special damages

---

Houston charter. As demonstrated below, there is no merit to this assertion and it is based on a false premise.

... requires that plaintiff *establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales*." *Moser v. Omnitrition Int'l Inc.*, 3:16-CV-2558-L, 2018 WL 1368789, at *4 (N.D. Tex. Mar. 16, 2018) (internal citations omitted) (emphasis supplied). LIF has failed to meet even the requirements of Rule 9(g). By contrast, Plaintiffs apparently just picked a multiple from the air.

There is no explanation in the pleadings why LIF could not hire other professional circulators at a cheaper rate, either local ones or those outside Houston, or why ACCELEVATE2020 insists upon profiting off its co-plaintiff and customer after a certain date. Instead, there is very good reason to believe that Plaintiffs' assertions about there being some upcoming petition are a sham to try to fabricate standing and damages to stay in court here. This Court may take judicial notice that voter qualifications are set by *state law* in Texas. *See, e.g.*, Tex. Elec. Code § 11.002 (defining "qualified voter"). This Court may take judicial notice that voter registration applications require a statement of citizenship. *See* Exh. F. These statutory requirements already prevent non-citizens from voting in Texas elections. Consequently, Plaintiffs, at best, seek an improper and unconstitutionally vague charter provision requiring people to obey the law.[49] Moreover, this Court may also take judicial notice that elections in Houston are administered by

---

[49] Fed. R. Civ. P. 65(d) prohibits such orders. *See, e.g.*, *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 630–31 (5th Cir. 2018) ("what Plaintiffs appear to be asking for is an 'obey-the-law' injunction" … Under Rule 65(d), "'[a] general injunction which in essence orders a defendant to obey the law is not permitted.'" *Id.* (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981)).

*Harris County*, not by the City of Houston, even for municipal elections.[50] Consequently, *the purported charter amendment Plaintiffs say they intend to seek would be a legal nullity that would not require the City to do anything.* It is hard to imagine that anyone who claims to be in the business of securing elections would be so ignorant of the local laws they claim they are attempting to change. In any event, LIF's purported claim for damages in seeking to put a legal nullity on the ballot is implausible under *Iqbal* and *Twombly* and legally insufficient under Rule 9(b). It should be dismissed on these grounds.

Aside from the impropriety and futility, if not unconstitutionality of their alleged charter amendment, as demonstrated above, Plaintiffs plead future, special damages because *one plaintiff* is allegedly going to charge *another plaintiff* a higher price to collect signature after August 21, 2021.[51] A plaintiff, however, can recover from a defendant only for injuries caused *by that defendant*. Admitted self-inflicted damages, particularly created in the litigation context, cannot be borne by a defendant. *See, e.g.*, *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1182 (9th Cir. 1988). Here, the purported damages *did not* occur because Houston somehow prevented LIF from hiring circulators: it is because LIF apparently insists upon using only ACCELEVATE2020 for their circulating activities. Moreover, Houston City Council has taken all steps it can to ensure that Houston's unenforceable charter provisions will not be enforced, including providing

---

[50] *See, e.g.*, Tex. Elec. Code § 31.032 (appointing county elections administrators).

[51] *See* Plaintiffs' Second Amended Petition at 25-26. There is no indication that Plaintiff ACCELEVATE will similarly increase its alleged charges for any of its other customers or if this is something Plaintiffs simply concocted together to try to manufacture damages where there are none. Nor is there any indication that other circulators LIF could hire would impose a similar increase.

a substitute form. Consequently, there can be no liability for damages flowing from those provisions. Any "chill" LIF would feel from the challenged provisions merely remaining in the charter would be improperly subjective and not provide a basis for standing.

Likewise, there can be no claim for damages flowing from the substitute. As demonstrated below, because the challenged provisions are unenforceable and have been rendered unconstitutional by the U.S Supreme Court, the City is not bound to enforce them. Consequently, there is no state court action that legitimately could be instituted to do so. The risk that some improper lawsuit would nevertheless be brought is too speculative and hypothetical to provide a basis for any award of damages.

## VI.   THIS COURT LACKS PENDENT JURISDICTION OVER PLAINTIFFS' STATE-LAW CLAIMS OR, ALTERNATIVELY, PLAINTIFFS HAVE FAILED TO STATE A VIABLE STATE-LAW CLAIM [COUNT X]

As a general rule, federal courts should decline to exercise jurisdiction over pendent state claims when, as here, all federal claims will be disposed of prior to trial.[52] To make this determination, the district court should consider the statutory provisions of 28 U.S.C. § 1367(c) and the relevant factors of judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Under § 1367(c), a district court may *decline* to exercise supplemental jurisdiction if

> (1) a claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; and (3) *the district court has dismissed all*

---

[52] *Brim v. ExxonMobil Pipeline Co.*, 213 Fed. App'x 303, 305 (5th Cir. 2007); *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

*claims over which it has original jurisdiction*; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id*. (emphasis supplied). Consequently, because this Court must dismiss or enter a take-nothing judgment on all of Plaintiffs' federal claims, it should decline to exercise supplemental jurisdiction over Plaintiffs' purported state-law claim.

Alternatively, Plaintiffs have failed to state a viable state-law claim. Plaintiffs claim that Houston has somehow violated Section 9.004 of the Texas Local Government Code by adopting its substitute here. That provision requires cities to hold elections to amend their charters. This court may take judicial notice, however, that Houston has not amended or purported to amend its charter in approving its substitute circulator form.

Plaintiffs' lawsuit is based upon two contradictory assumptions: 1) that Houston cannot enforce the challenged provisions because they are unconstitutional; but 2) Houston is nevertheless duty-bound to enforce such provisions. Plaintiffs' unsustainable contradiction and fundamental misunderstanding of basic principles of government and constitutional law is what has kept this case alive long after it should have been e-filed in heaven.

In *Marbury v. Madison*, 5 U.S. 137, 177 (1803), the Court declared that "[a]n act of the legislature, repugnant to the constitution, *is void*." *Id.* (emphasis supplied). Another court explained: "an unconstitutional act is not a law for any purpose, cannot confer any right, cannot be relied upon as a manifestation of legislative intent, and '*is, in legal*

*contemplation, as inoperative as though it had never been passed.*"'[53] As Justice Scalia once explained, "[w]hat a court does with regard to an unconstitutional law *is simply to ignore it*. It decides the case 'disregarding the [unconstitutional] law,' because a law repugnant to the Constitution 'is void, and is as no law' ..." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) (emphasis supplied). Government officials, therefore, have no duty or obligation to enforce unconstitutional laws and, according to some legal scholars, may have an affirmative obligation *not* to do so.[54] Moreover, because laws or portions of laws that are unconstitutional are considered legal nullities, they cannot be revived so long as the court decision that overturned such laws remains good law[55] and they would likely remain unrevivable even in that event.[56] Consequently, the City was perfectly free to fill in the gaps *Buckley* created in its City charter. Indeed, the U.S. Supreme Court held that, when a Dallas city charter provision governing apportionment was declared unconstitutional, the provision became "null and void," and freed the City Council to enact a new redistricting plan even though it was still

---

[53] *Johnson v. State*, 271 Md. 189, 315 A.2d 524, 528 (1974) (quoting *Norton v. Shelby County*, 118 U.S. 425, 442 (1886)) (citing *Chicago, Ind. & L. Ry. Co. v. Hackett*, 228 U.S. 559, 566-67 (1913)) (emphasis supplied); *Montgomery v. La.*, —— U.S. ——, 136 S. Ct. 718 (2016).

[54] *See Perry v. Schwarzenegger*, C 09-2292 VRW, 2010 WL 11469749, at *3 (N.D. Cal. Aug. 4, 2010), *aff'd*, 630 F.3d 898 (9th Cir. 2011) (citing *Romer v. Evans*, 517 U.S. 620, 623 (1996)); Saikrishna Bangalore Prakash, The Executive's Duty to Disregard Unconstitutional Law, 96 Geo. L.J. 1613, 1616 (2008).

[55] Appellants have never suggested that *Buckley* is somehow no longer good law.

[56] In *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004), this Court recognized that, even if a law declared unconstitutional remains on the books, it is unenforceable and can be considered repealed by implication.

in that city's charter.[57]  That is precisely what Houston did in approving a substitute form. Plaintiffs have not, therefore, stated any viable state-law claim.  Theirs should be dismissed or, alternatively, if this Court somehow takes jurisdiction, the City should have a take-nothing judgment on that claim.

## VII.   PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM FOR INJUNCTIVE RELIEF

A party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that such injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.[58] Plaintiff have not pleaded each requirement and cannot satisfy any of them.

First, as demonstrated, Plaintiffs cannot be successful on the merits here. Second, having agreed to submit to the jurisdiction of the Harris County Courts and to three-day's notice to appear, they have failed to show any irreparable injury in having to meet criminal disclosure requirements less onerous than those millions of affiants and those applying to vote must satisfy. Likewise, Plaintiffs have failed to assert or demonstrate that any alleged inconvenience in doing so somehow outweighs Houston's recognized, compelling governmental interest in protecting election integrity. Finally, Plaintiffs have not pleaded and cannot show how this Court's effectively allowing them to escape any scrutiny for the

---

[57] *Wise v. Lipscomb*, 437 U.S. 535, 544 (1978).

[58] *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (citing *Dresser–Rand, Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847–48 (5th Cir.2004); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

circulating activity they undertake for pay in Houston (by granting them the relief they seek) serves the public interest. It does not. For these reasons, Plaintiffs are not entitled to any temporary or permanent injunctive relief here. Such claims should be dismissed or, alternatively, the City should have a take-nothing judgment on such claims.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated, the City respectfully requests that this Court grant Defendants' Amended Motion to Dismiss or, Alternatively, Motion for Summary Judgment Directed to Plaintiffs' Second Amended Petition, and dismiss Plaintiffs' claims or alternatively, enter a take-nothing judgment in the City's favor, and award to the City such relief as to which the Court finds it entitled.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney

SUZANNE R. CHAUVIN
Chief, General Litigation Section

By:     /s/ *Suzanne R. Chauvin*
       Suzanne R. Chauvin
       Senior Assistant City Attorney
       Southern District Bar No. 14512
       Texas State Bar No. 04160600
       City of Houston Legal Department
       P.O. Box 368
       Houston, Texas 77001-368
       900 Bagby, 4th Floor
       Houston, Texas 77002
       Telephone: 832.393.6219
       Fax: 832.393.6259
       suzanne.chauvin@houstontx.gov

       *Attorney in Charge*

Of Counsel:

Collyn A. Peddie
Senior Assistant City Attorney
Southern District Bar No. 843
Texas State Bar No.: 15707300
832.393.6463 - Telephone
collyn.peddie@houstontx.gov

Lydia S. Zinkhan
Senior Assistant City Attorney
Southern District Bar No. 11882
Texas State Bar No.: 22277600
832.393.6467 - Telephone
lydia.zinkhan@houstontx.gov

*Attorneys for Defendants,*
*City of Houston and Pat J. Daniel*

**CERTIFICATE OF SERVICE**

I certify that on May 25, 2021, a copy of the foregoing Memorandum in Support of the City's Amended Motion to Dismiss or, Alternatively, Motion for Summary Judgment Directed to Plaintiffs' Second Amended Petition was served electronically on the CM/ECF system which will automatically serve an electronic notice on the following counsel of record for Plaintiffs:

Jerad Najvar
Austin M.B. Whatley
NAVJAR LAW FIRM, PLLC
2180 North Loop West, Suite 255
Houston, TX 77018
jerad@najvarlaw.com
austin@najvarlaw.com

IMPG ADVOCATES, INC.
Paul A. Rossi
316 Hill Street
Mountville, PA 17554
Paul-Rossi@comcast.net

*/s/ Suzanne R. Chauvin*
Suzanne R. Chauvin