UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE RICHARD "TREY" POOL, *et al.*, | § § § § | |
| Plaintiffs | § | |
| v. | § | Civil Case No. 4:19-cv-02236 |
| CITY OF HOUSTON, *et al.*, | § § § § | |
| Defendants. | § | |

# PLAINTIFFS' RESPONSE TO DEFENDANTS' "MOTION TO STAY DISCOVERY AND FOR PROTECTIVE ORDER"

Jerad Najvar (Attorney In Charge)
Texas Bar No. 24068079
Southern District No. 1155651
jerad@najvarlaw.com
Austin M. B. Whatley (Of Counsel)
Texas Bar No. 24104681
Southern District No. 3348472
austin@najvarlaw.com
2180 N. Loop W., Ste. 255
Houston, TX 77018
Tel.: 281.404.4696
Fax: 281.582.4138
*Additional counsel listed in full signature block below.*

1

Plaintiffs respond to the Defendants' ("City") motion as follows.

## BACKGROUND

Following remand and Plaintiffs' amendment of their complaint, the City filed its Amended Motion to Dismiss on May 25, 2021. Doc. 65. Plaintiffs responded (Doc. 76), and the City filed its Reply (Doc. 77).

Pursuant to the Court's scheduling order entered after remand, October 1 was the end of the discovery period. Doc. 50. Plaintiffs timely propounded their first and only set of discovery requests, and the City's responses were due October 1. *Id.* These discovery requests (attached as Exhibit A to Defendants' Motion to Stay) are minimal and straightforward, consisting of only two interrogatories and five requests for production. Rather than producing the requested documents, the City is adopting dilatory tactics wrapped in incoherent arguments and misstatements concerning the law of the case.

## ARGUMENT

**I. The City is not Entitled to a Stay of Discovery, and a Stay is not Warranted, Particularly Given the Minimal Discovery Requests and the Posture of this Case**

As the City asserts, it is true that "a trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). However, this discretion requires a showing of "good cause" by a movant. Fed. R. Civ. P. 26(c). Good cause can be "annoyance, embarrassment, oppression or under burden or expense" absent the stay. *Id.*

The City has not met its burden of showing good cause. In response to the first discovery requests after over two years of litigation and not seeking to stay discovery before now, the City finds itself unable to afford the time to respond to two interrogatories and five requests for

production. Doc. 82-1. The propounded discovery is minimal[1] and seeks documents that should be, under any normal course of business, compiled in a case file and already subjected to privilege checks. Plaintiffs' discovery is targeted in scope to directly admissible evidence that strikes at arguments being raised by the City—even if some of those arguments are foreclosed by the law of the case.[2] The City has not proffered any substantive rationale or explanation on how these minimal requests are burdensome beyond conclusory statements. Perhaps due to its concern over missing its discovery deadline, the City now relies upon further dilatory tactics during the pendency of its third motion to dismiss.

While examples of motions for stay in response to comparably minimalistic discovery requests are few and far between, one such case has arisen in the Western District of Texas. *Clark v. Camber Corp.*, SA-14-CV-470-DAE, 2014 WL 12580451, at *1 (W.D. Tex. Aug. 26, 2014). Faced with a similar motion for stay during the pendency of a motion to dismiss, the *Clark* court determined that exclusively because of the "minimal" nature of the discovery, the defendant had failed to show good cause for the stay. The Court is faced with a comparable set of facts here.

While Plaintiffs do not require the propounded discovery for their forthcoming motion for summary judgment, it is required if the Court does not grant Plaintiffs' motion. Nonetheless, because the City has not met its burden of showing good cause to stay these minimal requests, the court should deny its motion.

---

[1] One of the two interrogatories only requests for the City to update its initial disclosures. *See* Doc. 82-1 (Mot. to Stay, Exhibit A).
[2] As discussed herein, while Plaintiffs assert the City is foreclosed from asserting these arguments, its repeated refusal to follow the law of the case requires further disclosure of the extent of any enforcement. Additionally, even without such refusal, the extent of the City's prior enforcement is relevant to its voluntary cessation defense.

## II. The City is not Entitled to Protection from Plaintiffs' Minimal Requests for Information

### a. The requested discovery is directly relevant to Plaintiffs' claims

"The scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Hawkins v. AT & T*, 812 Fed. Appx. 215, 218 (5th Cir. 2020) (overturning district court's denial of discovery requests). The Federal Rules of Civil Procedure allow parties to:

> [O]btain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). To be relevant, information need only potentially lead to the discovery of admissible evidence. *Id*. A party resisting discovery has a high burden to show information is irrelevant. The City has not even begun to meet such a burden and, in reality, beyond conclusory statements it has not even attempted to do so.

### i. The history of charter amendments submitted for a vote is directly relevant to the City's arguments concerning the difficulty of amending the City Charter.

In its motion, the City objects to the relevancy of Interrogatory No. 2 and Request for Production No. 5. In full, these requests state:

> INTERROGATORY NO. 2: Identify all proposed amendments to the City Charter that have been submitted to the electorate for a public vote since January 1, 2001 to the present. For all such proposed amendments, identify if each amendment was proposed on City Council's own motion or as a result of a voters' petition for a charter amendment.

> REQUEST FOR PRODUCTION NO. 5: With respect to any proposed Charter amendments identified in response to Request No. 2, a copy of the official order for the election on such amendment reflecting the associated proposition and legal language of the amendment, and the canvassed election results.

4

These discovery requests seek information and documents concerning incidents where the City Charter has been amended, particularly when it has been amended by the City Council's own motion. This is directly relevant to the City's argument concerning its voluntary cessation.[3]

Throughout this lawsuit, the City has argued that it has "done all it can do, formally and informally, to demonstrate that there can be no reasonable expectation that it will attempt to enforce" the charter provisions. Doc. 68, at 9 (Mem. in Supp. of Amend. Mot. to Dismiss). However, the fact remains that in the twenty years since *Buckley* was decided, the City has had a mechanism for amending the charter to remove the offending provisions. This fact was already deemed relevant by the Fifth Circuit in this case. *See Pool v. City of Houston*, 978 F.3d 307, 312 (5th Cir. 2020). Whether the City Council has utilized this mechanism to alter other provisions of the City Charter while ignoring those at issue (which it has already enforced once in the post-*Buckley* landscape) strikes at the very heart of their arguments.

Because Interrogatory No. 5 and Request for Production No. 5 seek information and documents that would be admissible and address the City's arguments concerning mootness and voluntary cessation, its objections are without merit.

> **ii. Discovery from the *Woodfill* litigation has already been deemed relevant by the Fifth Circuit because it is admissible evidence of the City's past enforcement of the charter provisions**

In response to a request for discovery documents, including deposition and trial transcripts, pertaining to *Woodfill v. Parker*, No. 2014-44974, the City perplexingly argues that, because *Woodfill* concerned a separate proposed ordinance, it is not relevant. The City misconstrues the relevancy analysis here. *Woodfill* is relevant. Indeed, the Fifth Circuit already

---

[3] While the City delicately attempts to avoid its burdens in regards to voluntary cessation, it is what the City attempts to argue in its motion to dismiss. See Doc. 76, at 9 (Resp. to Mot. to Dismiss).

has considered it so, because it is direct evidence of the City's continued enforcement of the charter provisions years after *Buckley* was decided.

> [T]here is an objective basis for believing that the City has attempted to enforce the unconstitutional Charter provision since Buckley. In 2014, the last time that an initiative or referendum petition made it onto the ballot, the City deposed petition organizers—including Trent Pool—about the validity of signatures they collected in view of the Charter's petition-form requirements. Although concerns about the qualified-voter requirement were not the focus of the litigation that arose out of the HERO referendum, there are some indications that it was an issue. During the HERO litigation, the City argued that "[b]ecause the circulator's affidavit is an express requirement of the City Charter, if a page does not contain a proper circulator's affidavit then, as a matter of law, the signatures on that page are invalid and may not be counted." It stressed that petitions must "be signed and verified 'in the manner and form' set out in the City Charter." And, of course, the qualified-voter requirement was listed on those petitions. Most on point, the City questioned Trent about whether he, as someone not eligible to vote in Houston, had "sign[ed] any [affidavits] on petition pages" and had gathered signatures alone or "arm in arm" with other circulators. Why would Trent's proximity to circulators who were qualified Houston voters matter if the City were not concerned about that requirement? Given the concerns the City raised during the immediate predecessor to the anti-pay-to-play petition, the Pools had reason to believe the City would be "seriously intent" on continuing to enforce the qualified-voter requirement.

*Pool v. City of Houston*, 978 F.3d 307, 312–13 (5th Cir. 2020) (citation omitted).

The City cannot attempt to make the purported past and present non-enforcement of the charter provisions central to its argument while objecting to discovery requests concerning a case, which has already provided significant evidence of post-*Buckley* enforcement. *See e.g.* Doc. 68, at 7 (Mem. in Supp. of Amend. Mot. to Dismiss) ("Conversely, the City's attempting to enforce unenforceable laws would require that it act irrationally, even maliciously or in bad faith, risk paying opponents' attorney's fees and/or court sanctions, and waste its own credibility and limited resources."). The City has already acted "irrationally, [] maliciously [and] in bad faith" once; Plaintiffs' requests are to determine the full extent of the City's previous actions.

### b. Plaintiffs' requests are minimalistic and do not amount to a "burden," let alone an "undue burden"

The City further objects to relevant discovery by claiming the "voluminous" requests would amount to a burden and are not "proportional to the needs of the case." *Id.* at 8-9.[4] As support, the City relies upon its early arguments regarding relevancy, the "burden or expense," the amount in controversy, and the availability of "some" of the requested materials. *Id.* at 9. Because Plaintiffs have already shown that the relevancy of the requested documents is without question, they only discuss the City's additional arguments.[5]

After more than two years of litigation, which has involved an appeal and three motions to dismiss by the City, Plaintiffs propounded "voluminous" discovery—consisting of two interrogatories and five requests for production in total—that requires the City to review a paltry "hundreds" of pages. *Id.* at 6.[6] Beyond the low quantity of pages needing review and production, Plaintiffs' requests significantly concern documents that have already been disclosed in the *Woodfill* litigation. Presumably, these documents are compiled, sitting in a folder, and would have already undergone privilege checks.

In a last-ditch effort, the City argues that "some" of the requested information is available with the City Secretary and the Harris County Clerk's Office, while this is technically true, it is misleading. The Harris County District Clerk's Offices allows publically filed information to be accessed (much in the same way as PACER).[7] However, the information available on District Court's website is not the material sought by Plaintiffs. In addition to other information,

---

[4] Defendant relied on a recitation of the factors contained within Fed. R. Civ. P. 26, but cited to "Fed. R. Evid. 26(b)(1)." As there are no other citations, Plaintiffs address the City's arguments under the applicable Fed. R. Civ. P 26.

[5] The City misstates the amount in controversy. Plaintiffs request $10,000 in compensatory damages, nominal damages, costs of the action, and attorneys' fees.

[6] Tellingly, the City's own citations to "burdensome" discovery concern the review of "millions" of pages. *See e.g. Rio Grande Royalty Co., Inc. v. Energy Transfer Partners*, L.P., H-08-CV-0857, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008).

[7] Available at www.hcdistrictclerk.com.

Plaintiffs require access to the entire transcripts, which are not available. If the City desires to not produce the publicly available docket entries, it may cross-reference the filings posted on the Harris County District Clerk's website with those not available and in their possession. However, Plaintiffs believe this would substantially add to any alleged "burden" and undercut the City's arguments against production.

Revealingly, the factors the City fails to mention also compel discovery as they each favor the Plaintiffs. First, this lawsuit concerns fundamental rights under the U.S. Constitution; these rights are nothing less than Plaintiffs' "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988). Second, the City is in possession of the information requested and Plaintiffs do not have a reasonable alternative means of access it. Third, the resource disparity between a city with a 5.1 billion dollar budget and Plaintiffs (a non-profit organization and independent petition circulators) almost cannot be understated.

### c. To the extent that any discovery request seeks privileged information, such an objection should have been raised in the City's discovery response

Closing out the list of objections that should have been contained to the City's "Responses to Plaintiffs' Requests for Production," the City raises the privileged status of *some* responsive documents. Plaintiffs do not argue, and do not intend to argue, that they are entitled access to documents protected by attorney-client privilege. However, the fact that some responsive documents are privileged does not alleviate the City's duty to produce non-privileged responsive documents. The City may (and should) produce documents to the extent that they are not privileged. Failing to do so and arguing that they should not produce *any* documents suggests dilatory behavior.

### III. The City's Arguments Concerning the Underlying Case are Incorrect and Inappropriate to Raise in This Motion

Throughout its motion, the City raises arguments foreclosed by the law of the case, makes incorrect statements of fact, and proffers inappropriate argumentation that goes beyond the narrow scope of their motion. While Plaintiffs believe that the motion—in its entirety—is not an expedient use of judicial resources, they believe that they must address some of these inaccuracies here.

As Plaintiffs already have shown, the City cannot relitigate that it attempted to enforce the challenged provisions of the City Charter against Plaintiff Trent Pool (amongst others) during the course of the *Woodfill* lawsuit. *Pool*, 978 F.3d at 312–13. Both here and in its motion to dismiss, the City repeatedly attempts to relitigate this foreclosed issue. This is explicitly why Plaintiffs must have access to the requested discovery.

Contrary to City's assertions, Plaintiff Trent Pool collected signatures for the petition between July 6 and 7. Doc. 26-1 (Supplemental verification of Trent Pool); Doc. 68, at 1 (Mem. In Supp. of Amend. Mot. to Dismiss).

Again, the City attempts to broaden the scope of the Fifth Circuit's statements when it claims: "Thus, the City formally took the action suggested by the Fifth Circuit that would clearly demonstrate that the City had no intention of enforcing the constitutionally unenforceable charter provisions." Doc 82, at 2 (Mot. for Stay). Far from such a definitive statement, the Fifth Circuit merely stated that "the district court may consider whether to allow additional evidence concerning the legal authority behind the new form and the extent to which it is binding." *Pool*, 978 F.3d at 314. That is, this court *may* take into account the additional steps at voluntary cessation undertaken by the City to determine whether it has met its "heavy burden." *Id.* The particular citations and parentheticals chosen by the Fifth Circuit emphasize the weakness of the

9

City's obfuscation here.  *See e.g. Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed."). *Compare Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (holding that officials' representations through legal counsel that their behavior would change following a recent Supreme Court decision did not moot case when no official policy retraction had occurred), with 13C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3533.7 (3d ed. Oct. 2020 update) (noting that "a permanent policy change" can moot a dispute).

## CONCLUSION

Plaintiffs request that this Court deny the City's motion in its entirety and compel the requested disclosure pursuant to Fed. R. Civ. P. 26(c)(2). In the alternative, should the Court determine that a stay pending its ruling on the City's motion to dismiss is warranted, the Plaintiffs request that the Court limit its opinion to the issuance of a stay and otherwise deny the City's objections.

Respectfully submitted,

*/s/ Austin M. B. Whatley*
Austin M. B. Whatley
Texas Bar No. 24104681
Southern District No. 3348472
2180 N. Loop W., Ste. 255
Houston, TX 77018
Tel.: 281.404.4696
Fax: 281.582.4138
austin@najvarlaw.com
*Of Counsel*

Jerad Najvar
Texas Bar No. 24068079
Southern District No. 1155651

10

|  |  |
|---|---|
| | jerad@najvarlaw.com<br>*Attorney-in-Charge* |
| | Paul A. Rossi<br>Pennsylvania Bar. No. 84947<br>Pennsylvania Middle District Bar No. 84947<br>IMPG Advocates, Inc.<br>Paul-Rossi@comcast.net<br>*Of Counsel* |
| NAJVAR LAW FIRM, PLLC<br>2180 N. Loop W.,<br>Suite 255<br>Houston, TX 77018<br>*Of Counsel* | |
| | *Counsel for Plaintiffs* |

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 15, 2021, the foregoing document, and any accompanying exhibits, was served by CM/ECF as follows:

Lori J. Yount
Senior Assistant City Attorney
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone: 832.393.6459
Facsimile: 832.393.6259
lori.yount@houstontx.gov

Collyn A. Peddie
Senior Assistant City Attorney
832.393.6463 - Telephone
collyn.peddie@houstontx.gov

Lydia S. Zinkhan
Senior Assistant City Attorney
832.393.6467 – Telephone
lydia.zinkhan@houstontx.gov

                                              */s/ Austin M. B. Whatley*
                                              Austin M. B. Whatley