IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE RICHARD "TREY" POOL, III, *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-2236 |
| CITY OF HOUSTON, *et al.*, | § § | |
| Defendants. | § § § | |

## ORDER

In *Pool v. Houston*, 978 F.3d 307 (5th Cir. 2020), the Fifth Circuit reversed the dismissal of this recently transferred case, holding that the plaintiffs had standing to pursue permanent injunctive relief. The Fifth Circuit also addressed whether the "City's postsuit disavowal of the qualified-voter requirement moot[ed] the Pools' claim." *Id.* at 313. The court determined that, based on the record before it, "the City's addition of the 'Editor's note' on its website [did] not moot [the] case," because "[v]oluntarily stopping an unconstitutional practice renders a case moot only 'if subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior c[an] not reasonably be expected to recur.'" *Id.* at 314 (quoting *Friends of the Earth, Inc. v. Laidlaw Environ. Servs.*, 528 U.S. 167, 189 (2000)). While a court can "'assume that formally announced changes to official governmental policy are not mere litigation posturing,' it [was] not clear the City made a formal policy change." *Id.* (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). The court noted a lack of evidence "that the City Council approved the nonresident petition form published on the City's website," so the court could "not know how permanent—or legally effective—the new form and editor's note [were]." *Id.* Absent evidence of a "permanent policy change," the City had not met its "'heavy burden' of showing that the

Pools' challenges [were] moot." *Id.* at 314 (quoting *Friends of the Earth*, 528 at 189). The court remanded, stating that, "[i]n ruling on the request for a permanent injunction, the district court may consider whether to allow additional evidence concerning the legal authority behind the new form and the extent to which it is binding." *Id.*

Following the appeal and remand, the defendants moved to dismiss the Pools' amended complaint, providing the court with "additional evidence concerning the legal authority behind the new [circulator] form and the extent to which it is binding." (Docket Entry No. 49, at 11; *see also* Docket Entry No. 68). The defendants stated that, "[d]uring the pendency of this case, Houston has taken additional steps to provide additional evidence that it *still* really has no intention of attempting to enforce unenforceable charter provisions." (Docket Entry No. 49, at 11). The City relies on City Council's December 2020 enactment of Ordinance No. 2020-1033, which "approve[d] and incorporate[d] [the Editor's Note] language as an acceptable substitute for that called for in the charter." (*Id.*, at 12).

The Ordinance, signed by all City Council members and the Mayor of Houston, states that it was adopted because "the Fifth Circuit, in *Pool v. City of Houston* . . . opined that absent Houston City Council action, it is not clear that the City has changed its policy and will comply with *Buckley*." (Docket Entry No. 49-1, at 2). The Ordinance amends Article I of Chapter 2 of the Code of Ordinances, Houston, Texas, "by adding a new Section 2-3.1 that reads as follows:"

> **Sec. 2-3.1.    Petition circulator affidavits.**
>
> (a) It is the policy of the city to enforce the United States Constitutional requirements relating to petition circulator qualifications.
>
> (b) The city shall accept the 'Affidavit for Circulators Who Are Not Registered Voters of the City of Houston,' in the form set forth below.
>
> STATE OF TEXAS            §

  COUNTY OF HARRIS  §

  I, _____, being first duly sworn on oath depose and say:

  I am a circulator who is not registered to vote in the City of Houston. I hereby subject myself to the jurisdiction of the Courts of Texas in connection with any allegation of fraud or misrepresentation associated with the circulation of any initiative, referendum, or recall petition or the collection of signatures for any initiative, referendum, or recall petition circulated in the City of Houston by me. I am a citizen of the United States or a documented permanent resident; I have never been convicted of the crimes of fraud or misrepresentation; I agree to submit myself to the jurisdiction of the Harris County courts and waive any challenge to venue and personal jurisdiction in connection with the matters encompassed by this affidavit. Should the need for me to personally appear in Houston arise, I agree to make myself available in person in Houston, at my own expense, within 72 hours of a request by the City of Houston concerning matters encompassed by this affidavit. I further depose and say that each signature appearing on this petition was made in my presence on the day and date it purports to have been made, and I solemnly swear that the same is a genuine signature of the person whose name it purports to be.

(Docket Entry No. 49, at 3).

  The Ordinance would appear, at first glance, to satisfy the Fifth Circuit's concern that there was no evidence that "the City Council approved the nonresident petition form published on the City's website." 978 F.3d at 314. The Ordinance is another effort by the City to signal to the litigants and the public that it has no intent to enforce a Charter provision that it recognizes as unconstitutional. But the Charter is not amended; to do so requires a referendum and a majority vote by the voters of Harris County. The Ordinance can be as easily amended or nullified by City Council as it was enacted. A lingering issue is whether the Ordinance gives sufficient assurance that the City permanently eschews the Charter provision. Article IX, § 5 of the Houston City Charter provides that "[a]ll ordinances of the City of Houston, not inconsistent with the provisions of this Charter, shall remain in full force and effect, until altered, amended or repealed by the City

Council."  HOUSTON, TEX., CITY CHARTER, art. IV, §5.  It is unclear that a charter provision can be overruled, nullified, or repudiated by a city ordinance.  *Cf. Carruth v. Henderson*, 606 S.W.3d 917, 927 (Tex. App. 2020) ("A city's Charter functions as its organic law in the same nature as a constitution and it is therefore not capable of being repudiated by ordinance.").

Under the City Charter, only qualified voters may circulate petitions.  Under Ordinance 2020-1033, nonresidents and nonregistered voters may circulate petitions.  The two are inconsistent.  If the Ordinance cannot repudiate the Charter, the same concerns that foreclosed finding mootness in the appeal persist: "it is not clear the City made a formal policy change." *Pool*, 978 F.3d at 314.

The court orders the parties to file responses addressing the permanency and legal effectiveness of Ordinance 2020-1033, the Editor's note, and the nonresident petition form.  If the ordinance conflicts with the City Charter, but—as both parties agree—the City Charter conflicts with the U.S. Constitution, can the City Council enact a valid and legally enforceable ordinance that, in effect, invalidates the offending Charter provisions?  And is there any inference that the court can or should draw from the fact that the City, in the two years that this litigation has been pending, has not made efforts to remove the challenged provisions from its Charter by circulating a petition to place this issue on a City of Houston ballot?  The defendants' response of no more than 10 pages is due by **January 12, 2022.**   The plaintiffs may respond by **January 21, 2022**.  The hearing on all pending motions is reset for **January 24, 2022** at **2:00 P.M.**

SIGNED on January 3, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge