UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE RICHARD "TREY" POOL, III, et. al, | § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Case No. 4:19-cv-02236 |
| CITY OF HOUSTON, et al., | § § | |
| Defendants. | § § | |

**PLAINTIFFS' AMENDED OPPOSED MOTION
FOR ATTORNEYS' FEES AND EXPENSES**

TO THE HONORABLE JUDGE ROSENTHAL:

Pursuant to 42 U.S.C. § 1988(b), Plaintiffs respectfully move the Court for an award of reasonable and necessary attorneys' fees and expenses, for the reasons set forth below and for such other reasons as may appear at any hearing on this Motion.

**I.      History of the instant litigation**

    **a.   Initiation and TRO phase**

Plaintiffs filed their original Verified Complaint on June 21, 2019, and their First Amended Verified Complaint on June 26, 2019, incorporating minor edits and clarifications. (Doc. 7.)  The Complaint alleges that all Plaintiffs not only wished to engage in signature collection regarding the anti-corruption initiative petition that was circulating in Houston at the time, but also to circulate and support additional initiative and referendum petitions in Houston in the future. *See, e.g.*, Doc. 7 at ¶¶ 9 (Trey Pool), 14 (Trent Pool), 16 (Accelevate2020), 27, 31, 35, 55 (facial challenge), 63 (as-applied challenge).  The Complaint sought a preliminary injunction, permanent injunction, declaratory judgment, and nominal damages. (Doc. 7 at 19-20.)  Plaintiffs also moved

for a temporary restraining order seeking to clear the way to circulate the initiative petition that was then circulating in the City through July 9, 2021.

On June 26, the district court issued a notice that it would hold a hearing on the motion for TRO on July 1.   On June 27, Defendants filed a Motion to Dismiss.  ECF 9.  On the same date, Defendants filed a response and opposition to Plaintiff's Emergency Motion for TRO, which incorporated Defendants' brief in support of their motion to dismiss. ECF 10.  Plaintiffs filed their "Response to Defendants' Motion to Dismiss, and Reply in Support of Plaintiffs' Motion for Temporary Restraining Order" on June 30.  ECF 14.

After a contested hearing on July 1, Judge Gilmore entered a TRO enjoining the Houston charter requirement for the period of the petition then circulating.  As a result of the TRO, Trent Pool was able to circulate, gathering approximately forty signatures, although not enough signatures were gathered to garner ballot access.

In subsequent discussions between counsel for the Plaintiffs and Defendants, the parties agreed in principle to submitting an agreed proposed final judgment, and were beginning negotiations on such judgment.  See ECF 34 at 2.  The parties also discussed attorneys' fees issues. Id.

### b.  *Sua sponte* dismissal and Plaintiffs' Rule 59 motion

However, on August 15, 2019, the Court entered, *sua sponte*, an Order dismissing all claims. (ECF. 20.)  This Order is premised on the statement that, "[a]t the motion hearing, the parties agreed that Plaintiff's claims would be moot at the expiration of the circulation period.  The petition circulation period expired on July 9, 2019." *Id*.  Plaintiffs filed a Rule 59(e) motion on September 12, 2019, arguing that the order was manifestly erroneous as their claims were not moot. (ECF 26).  Although Defendants had, prior to the *sua sponte* dismissal, agreed in principle to negotiate an agreed judgment, Defendants seized the opportunity presented by the dismissal to

adopt the district court's rationale.  This was, of course, the City's right and prerogative, to attempt to avoid entry of a final judgment.  In their response to the Rule 59 motion, Defendants attached new evidence intended to show their voluntary cessation from enforcement of the Charter provisions. This new evidence consisted of a link to a PDF on the Office of the City Secretary's website entitled "Initiative/Referendum/Recall Petition Non-Resident/Non-Registered Circulator Affidavit Form," and two editor's notes appended under the relevant Charter provisions as displayed on the website "Municode."

The district court denied the Rule 59 motion, and Plaintiffs appealed.  Plaintiffs also filed a motion for attorneys' fees after the order denying the Rule 59 motion, seeking fees for securing the TRO.  ECF 34 (Nov. 12, 2019).  *See Black Heritage Soc. v. City of Houston*, No. CIVA H-07-0052, 2008 WL 2769790, at *5 (S.D. Tex. July 11, 2008) (finding that grant of TRO gave plaintiff prevailing party status that was not affected when defendant voluntarily ceased its actions by amending provision) (citing *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir.2008)).  The district court denied the TRO fee request on May 22, 2020, which Plaintiffs also then appealed. The time incurred on the TRO fee request is discussed separately below.

### c.   Merits appeal and the City's petition for rehearing en banc (No. 19-20828)

The appeal was flagged for the circuit mediation program, but did not progress beyond an initial conference call with the mediator.  Plaintiffs' brief was filed on February 28, 2020.  See Exhibit E (Merits Appeal docket sheet).[1]  It required Plaintiffs to research and set out the standard of review of a sua sponte dismissal, as well as the review of a denial of a Rule 59 motion where

---

[1] Due to their volume, Plaintiffs have not filed the appellate briefs and motions as exhibits to this request, but instead request that the court take judicial notice of the documents filed or issued in the merits and fee appeals as relevant to this fee request.  Plaintiffs will be happy to provide the court with copies of these documents if the court desires that they be filed here.

the opposing party presents new evidence after judgment but such evidence was not apparently relied upon by the district court. See Appellants' Br. at 36. Plaintiffs-Appellants' brief argued (1) that they had established standing, and (2) their claims for past and future/permanent relief were not moot, but (3) even if they were moot, they were justiciable under the exception for disputes "capable of repetition yet evading review." As to mootness, because the City's response to Plaintiffs' Rule 59 motion had referred to the purported new circulator affidavit posted to the City website, Plaintiffs recognized that certain mootness evidence may be presented for the first time on appeal, and thus explained that the new purported affidavit does not moot their claims, because, inter alia, it was not legally binding, and even if it were, it imposed new, unconstitutional burdens on Plaintiffs' petitioning. Appellants' Br. at 53-55.

The City's brief on appeal reflects that, following the *sua sponte* dismissal, the City embarked upon a vigorous effort to secure affirmance of the dismissal (thereby avoiding any further relief for Plaintiffs). The City's argument fundamentally confused the doctrines of standing and mootness, and the Fifth Circuit eventually agreed with Plaintiffs' argument. *Pool v. City of Houston*, 978 F.3d 307, 313 (explaining that "events that occur during the litigation," like "the City's post-suit disavowal of the qualified-voter requirement," pertain to mootness, not standing). But establishing the logical flaws in the City's argument required Plaintiffs to delve deeply into justiciability principles, as illustrated in Supreme Court and Circuit caselaw, and explain how they applied to the facts in this record. The City's brief on appeal effectively attempted to avoid grappling with the facts establishing standing at initiation of the suit, arguing that *standing* should be examined post-TRO, which Plaintiffs could not establish (by Defendants' estimation) because they had not identified a specific, future petition they wished to circulate. This allowed Defendants to argue, e.g., that "Appellants' alleged proof of future injury, if any and admissible, is insufficient

4

to satisfy *Babbitt*," and "Appellants could not demonstrate a live controversy or credible, imminent

threat of future injury under 'zombie' charter provisions."  Appellee's Br. at v (Table of Contents)

(capitalization modified).  Defendants also sought to place the burden on Plaintiffs of establishing

an exception to mootness.  See id.

> Plaintiffs' Reply brief confronted all of these arguments, explaining that the City
>
> errs in conflating injury-in-fact with mootness analysis, just as the district court did. Both the district court and the Defendants ignore the fundamental principle, illustrated in *Carr v. Alta Verde Industries, Inc.*, that standing is based on the facts at initiation of suit and, once established, *standing* cannot be lost. 931 F.2d 1055, 1061 (5th Cir. 1991). Standing having been established, the justiciability analysis turns wholly to mootness.

Reply Br. at 6 (Introduction).  Plaintiffs established that the record demonstrated their standing,

and that given that fact, the City's "post-suit disavowal" of enforcement raises a question of

mootness which the City has the burden of establishing.   On this point, notably, the City

affirmatively disavowed reliance on the new circulator affidavit on its website, despite having

highlighted that document for the district court in response to Plaintiffs' Rule 59 motion.  *See Pool*,

978 F.3d at 314 (noting that the City had called the new circulator form "irrelevant" for purposes

of appeal).  While this choice is notable, it's not inexplicable.  It appears the City deliberately

disclaimed reliance on that new document as part of its strategic decision to avoid assuming the

burden of proving mootness based on "voluntary cessation." The City wanted the focus to be on

its purported challenge to Plaintiffs' "standing," not on post-suit disavowals and documents that

implicate mootness.

The City's strenuous arguments garnered the Circuit Court's attention, which granted the

oral argument that the City declared was necessary if the Court found itself "enticed" by Plaintiffs'

analysis.  *See* Appellee's Br. at iv ("In seeking reversal and remand, Appellants … invoke but

address only superficially important constitutional doctrines that ultimately do not apply here.

Should the Court be inclined to reverse on any such ground, the City would ask for oral argument to ensure that these issues are fully and accurately illuminated for the Court."). Oral argument was held by Zoom on October 7, 2020. The Fifth Circuit issued its decision for Appellants on October 23, 2020.

After securing an extension of time to file, the City filed a petition for rehearing en banc on December 1, 2020. On December 23, the Court directed Plaintiffs to respond, which Plaintiffs did on January 11, 2020. See *Response to Petition for Reh'g En Banc*. Plaintiffs' response explained that, contrary to the City's suggestions, the claims here were not identical to the claims in *Buckley*, and again addressed the doctrines of standing and mootness. The City's petition was denied on February 1, 2021 without a poll of the judges (despite the fact that the request for a response suggests that, based on the City's petition, at least one chambers had questions).

### d. TRO fee appeal (No. 20-20328)

On June 22, 2020, Plaintiffs filed an appeal of the court's May 2020 order denying the TRO fee request (ECF 40). The order denying fees purported to reconsider the district court's own earlier analysis of standing, which was already on appeal as part of the merits appeal. See Invoice 1401 p.6. Counsel thus researched that issue as a ground for challenging the order denying fees. *Id.* However, recognizing that a favorable resolution of the merits appeal and remand of the merits would render the fee appeal premature, Plaintiffs conferred with the City regarding a stay of the fee appeal. Plaintiffs filed an unopposed motion to stay the fee appeal on July 30, 2020, which was granted. *See* Exhibit F (Fee Appeal docket sheet).

After the merits appeal was decided, the briefing schedule was reinstated by the Fifth Circuit. *Id.* Plaintiffs sought and received an extension of their briefing deadline (to April 21, 2021), noting to the Court that they were conferring with the City in hopes of agreeing to a further

6

stay.  No. 20-20328 (Mar. 15, 2021 extension request) ("The parties are in discussions regarding potential agreement as to, at a minimum, a motion to stay briefing in this appeal while the underlying case is being resolved in the district court. All of these efforts are directed at preserving party and judicial resources.").  Without notice, Defendants filed a motion to dismiss the fee appeal on April 5, 2021, which by operation of the rules would require Plaintiffs' response on April 15, 2021, six days before the deadline for their opening brief.  Plaintiffs thus filed their response due in this court to the Defendants' motion to dismiss the complaint on April 8, and then on April 10 moved in the circuit court for an extension of their deadline for a response to the motion to dismiss the fee appeal that aligned with the deadline for the fee appeal brief.  Thus, on April 21, 2021, Plaintiffs filed both a response to the City's motion to dismiss the appeal and their opening brief.  On June 15, 2021, the Fifth Circuit granted Houston's motion to dismiss, concluding that the Fifth Circuit's "remand of the merits case rendered the order denying attorney's fees interim," and therefore subject to reconsideration by the district court. *Pool v. City of Houston*, 858 Fed. Appx. 732 (5th Cir. 2021) (mem.).

    **e.  Proceedings on remand**

    Following the remand of the merits, the parties filed their joint Rule 26(f) report on March 15, 2021.  It was only during the Rule 26(f) conference that Defendants revealed to Plaintiffs that the City Council had purportedly approved an ordinance months earlier, in December 2020 (after the Fifth Circuit's panel decision but before the City's en banc petition was resolved).  Plaintiffs began preparation for their Second Amended Complaint, adding new plaintiffs and claims against the purported new ordinance.  On March 18, Defendants again moved to dismiss the complaint, even before Plaintiffs had taken any action or any discovery had been undertaken.  Plaintiffs moved for leave to file the Second Amended Complaint on April 2, 2021.  Between then and December

15, 2021, Plaintiffs responded to the City's March 18 motion to dismiss, as well as its Amended Motion to Dismiss (filed after the Second Amended Complaint was accepted), and filed Plaintiffs' own motion for summary judgment.

This case was reassigned to Judge Rosenthal in December 2021, and on January 3, 2022, the court ordered supplemental briefing on the dispositive motions regarding specific issues. Both sides complied, and after an oral hearing (and further response from the City), the court granted Plaintiffs' motion for summary judgment with respect to the declaratory judgment request, and denied their other requested relief against the December 2020 ordinance terms, while directing that the City must advise the court and Plaintiffs if it intended to amend or enact a new ordinance in light of the opinion by April 18, 2022. The Court also ordered that "Plaintiffs may amend their complaint within 21 days of the City Council's enactment of a new ordinance, if they so choose." ECF 100. The City did enact a new ordinance, No. 2022-455, which removed all of the substantive requirements that Plaintiffs had challenged in their Second Amended Complaint. In light of the removal of those burdens, Plaintiffs informed the court that they would not amend their complaint, and that final judgment should be entered. Judgment was entered on July 22, 2022.

## II.  Plaintiffs are prevailing parties entitled to fees.

In order "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (internal citations omitted); *see also Abner v. Kan. City S. R.R. Co.*, 541 F.3d 372, 379 (5th Cir. 2008) ("A prevailing party is a party who is successful "'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Securing a declaratory judgment alone, even without damages or injunctive relief, can confer prevailing party status. *See,*

*e.g.*, *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) (holding that plaintiff was prevailing party on account of declaratory judgment, even in absence of injunctive relief or actual damages). In this case, Plaintiffs secured a declaratory judgment, permanent relief rendering the charter provisions unenforceable, and are thus a prevailing parties for purposes of 42 U.S.C. § 1988.

## III.   Calculating the fee

### a.   Lodestar

The Fifth Circuit uses a two-step process to calculate attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.*   In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The plaintiff has the burden of showing the reasonableness of the hours billed and proving the exercise of billing judgment. *Id.* at 770.   The hourly rate should be the rate at the time the fee request is made, not when the work was performed. *See Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 773 (5th Cir. 1996).[2]

After calculating the lodestar, the court may increase or decrease it based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).   *Heidtman*, 171 F.3d at 1043. Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the

---

[2] This is to roughly compensate for the delay in payment, but applying the current market rate is not an enhancement to the lodestar.  *Walker*, 99 F.3d at 773.  Alternatively, the court may grant a delay enhancement after calculating the lodestar with the rate applicable when the work was performed, but it cannot do both.  Id.

preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed

or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount

involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the

undesirability of the case; (11) the nature and length of the professional relationship with the client;

and (12) the award in similar cases. *Id.* at 1043 n. 5 (citing *Johnson*, 488 F.2d at 717–19).  *See also*

*Hensley*, 461 U.S. at 434 n.9 (noting that many of the *Johnson* factors are "subsumed within the

initial calculation of hours reasonably expended at a reasonable hourly rate").

      **b.  Adjustments to the lodestar according to the "results obtained" factor in multiple-claim cases.**

Where a prevailing party was only partially successful, the court must consider two further

issues: first, the relationship between the claims on which the plaintiff succeeded and those on

which he did not, and second, whether the plaintiff achieved a level of success that makes the hours

expended a satisfactory basis for a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Specifically, in a suit where the plaintiff presents "distinctly different claims for relief that are

based on different facts and legal theories[,]...work on an unsuccessful claim cannot be deemed to

have been expended in pursuit of the ultimate result achieved"; thus, no fee award for that work is

permitted.  *Id.* at 434–35 (internal quotes omitted).  In contrast, where the suit "involve[d] a

common core of facts" or was "based on related legal theories," the court "should focus on the

significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

expended on the litigation."  *Id.* at 435.  *Hensley* advised that "[t]here is no precise rule or formula

for making these determinations.  The district court may attempt to identify specific hours that

should be eliminated, or it may simply reduce the award to account for the limited success."  *Id.*

at 436-37.

However the district court decides upon an appropriate reduction—if any—the Supreme Court has rejected a purely mathematical approach based on the number of issues in the case.  In *Hensley*, the Court noted the district court's statement that the defendant's "suggested method of calculating fees is based strictly on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Under this method no consideration is given for the relative importance of various issues, the interrelation of the issues, the difficulty in identifying issues, or the extent to which a party may prevail on various issues."  *Hensley*, 461 U.S. at 428. The Supreme Court "agree[d] with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" because "such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id*. at 435 n.11.  *Hensley* recognized that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."  461 U.S. at 435.

### c.  Compensable activities.

Compensable legal services include services performed before suit is formally commenced, such as drafting of the initial pleadings and the work associated with the development of the theory of the case.  *Webb v. Bd. of Educ.*, 471 U.S. 234, 243 (1985); *Dowell v. City of Apopka*, 698 F.2d 1181, 1188 (11th Cir. 1983)*; ee Ognibene v. Parkes*, 2014 WL 2610947, *3 (S.D.N.Y. Jul. 22, 2014) (awarding compensation for all 174.8 hours expended drafting complaint asserting twenty claims challenging constitutionality of city campaign finance scheme, even though plaintiffs only succeeded on two, because "a complaint is the starting point of any litigation and there is no contention that the claims were frivolous or entirely unrelated to the subject matter of the action").  Reasonable travel time should be compensable under section 1988.  *Henry v. Webermeir*, 738 F.2d 188, 194 (7th Cir. 1984).  Plaintiffs are also entitled to recovery of fees

incurred on appeal, *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 526 F.2d 865, 868 (5th Cir. 1976) (district court erred in denying fees from intervening appeal), and fees incurred preparing, litigating, and successfully appealing or defending on appeal the fee request itself. *Cruz v. Hauck*, 762 F.2d 1230, 1233-35 (5th Cir. 1985).

## IV.   Calculating the fee – application to the instant case.

### a.   Accounting for the multiple issues raised in the case.

Plaintiffs prevailed as to the challenged charter requirements, securing a declaratory judgment that rendered the challenged provisions unenforceable.   The challenge to the charter provisions prompted this suit and occupied the great majority of the time in litigation, including on the merits appeal, and even after the Second Amended Complaint was filed on remand.   While the Second Amended Complaint added substantive claims against the terms of the "Defective Circulator Affidavit," the time records reflect that those claims occupied a relatively small portion of counsel's time in litigation, even after the Second Amended Complaint was filed.   See Exhibit A, Invoice 1565.   The great majority of counsel's time—on both sides of the case—was dedicated to the continuing disputes over standing and mootness doctrines, even after the Fifth Circuit's decision.   Moreover, Plaintiffs' claims against the ordinance were closely related to the underlying facts and arguments regarding the burdens imposed on petitioning which animated the challenge to the charter provisions.   While it is sometimes appropriate to excise specific time that was dedicated to a discrete issue on which the Plaintiff did not prevail, the challenges to the defective ordinance were closely intertwined with the challenges to the charter provisions and therefore should be compensable.   Moreover, Plaintiffs' challenges to the terms of the new ordinance were ultimately successful as well, given that the City only amended the ordinance to remove them

entirely after the Court's summary judgment order suggesting that the City's defenses of those requirements may not hold up if they remain in the ordinance.[3]

b. **Calculation of hours requested.**

**Paul A. Rossi** is national litigation counsel for Trent Pool and Accelevate2020 LLC, and has represented Pool and his entities, along with many other clients, in petition-related litigation across the country. Rossi was initially to be lead counsel in this matter, and performed much of the initial work on the original complaint and motion for temporary restraining order. However, Rossi then allowed Najvar Law Firm to take the lead role after being satisfied that Najvar and Whatley were experienced and capable in these matters. Accordingly, the bulk of Rossi's time was incurred in preparation of the original complaint and memorandum in support of the motion for TRO, and then again with preparation of the Second Amended Complaint after remand. Rossi requests **$24,684.00 in fees (at $400/hour)** and **$1,622.19 in expenses** (travel for the TRO hearing),[4] totaling **$26,306.19**. This request already includes a deduction of 2.4 hours from his time for noncompensable activities in the exercise of billing judgment, which is also reflected in a 15% across-the-board reduction, which he normally offers his clients who pay hourly and make timely payments. See Exhibit D (Rossi declaration and exhibits).

Plaintiffs' lead counsel, **Jerad Najvar**, contemporaneously recorded a total of 356.4 hours for which Plaintiffs seek compensation from the filing stage (June 2019) through July 29, 2022 (this total after some excisions of specific time as shown in the margins of the invoices for billing

---

[3] In the event that the Court determines a reduction in time should be applied to account for the challenges to the ordinance which were dismissed, Counsel's very detailed time records will facilitate the identification of the research and drafting hours that were devoted exclusively to those issues.

[4] Rossi's presence at the TRO hearing was necessary because Najvar was traveling that day. While Whatley is a talented young attorney, he was not prepared to take the lead role at a substantive hearing of this nature in June 2019, less than a year out of law school, where it was necessary to have experienced counsel prepared to address the Court's questions.

Case 4:19-cv-02236   Document 114-2   Filed on 08/12/22 in TXSD   Page 14 of 18

judgment).  See Exhibit A (Najvar declaration and time sheets).  While Paul Rossi took the lead in drafting the complaint and TRO memorandum, Najvar made substantive revisions to these documents with a focus on anticipated justiciability issues that the City or court might raise.  This included revising the complaint to more precisely describe the relevant legal background of the charter provisions governing petitions; the operation of the challenged provisions in the context of state law; burnishing and discretely describing standing facts; and considering suggested specific language as a remedy for the unconstitutional requirements for purposes of the requested TRO order.[5]  Najvar also initiated communications with the City Attorney's office to provide notice prior to suit, conducted (unsuccessful) negotiations with the Defendants before the TRO hearing attempting to arrive at an agreed order, and devoted attention to other discrete issues and tasks through the TRO hearing.  In other words, time incurred during this phase by Najvar Law Firm was not duplicative of the time spent by Rossi, who, given his specific experience in petition litigation, had focused on the substantive law for the complaint and memorandum in support of the TRO.  After the TRO phase, Najvar Law Firm took over the litigation as stated in Rossi's declaration, with Rossi to return to devote time on the Second Amended Complaint.

At his normal federal court litigation rate of $400/hour, the total compensable time recorded by Najvar from June 2019 through July 29, 2022 (356.4 hours) yields a total of $142,573.36 for Najvar's time.  This covers all phases of the litigation (other than this fee request and any subsequent time, which Plaintiffs will seek in a supplemental request), and this time is specifically broken out in 21 phases in the attached detailed time records.  Exhibit B.  Rather than excising specific line items beyond those already excised, Plaintiffs suggest applying an across the

---

[5] *See* ECF 4 at 23-24 (concluding with a proposed precise remedy, citing specific Fifth Circuit authority, to redress the constitutional infirmity for purposes of the TRO).

board 15% reduction to account for any potentially excessive research time or other billing judgment reductions, as well as sufficient to account for any time dedicated to non-prevailing issues (which were limited, if any).  Plaintiffs suggest this in a good faith effort to make any appropriate reductions.  This results in a current request of **$121,187.36 in fees for J. Najvar**.[6] Najvar incurred no compensable expenses given that he is local.

Najvar Law Firm associate attorney **Austin M.B. Whatley** assisted with research and drafting of motions and briefs, both in the district court and appeal, as reflected in his detailed time records.  See Exhibit C.  Whatley's research and drafting contributed to the efficient litigation of the substantive issues in this case, given his lower hourly rate.  Whatley also appeared as second chair in the TRO hearing, and was tasked with and prepared to address certain specific standing and mootness arguments, and the relevant underlying facts, anticipating that such may be requested by the court or discussed in argument.

Najvar's and Whatley's time records reflect their deliberate efforts to delegate issues to litigate this matter as efficiently as possible.  An example is the division of work regarding Plaintiffs-Appellants' reply brief filed in the merits appeal in the Fifth Circuit in May 2020.  After initial strategy discussions with Najvar, Whatley took the lead in preparing the reply outline and drafted most of the reply brief, including sections discussing the *sua sponte* dismissal argument, and mootness issues.  Exhibit C (entries from 4/24/20 – 5/8/20).  Najvar's records reflect that he focused mostly on burnishing the argument to support Plaintiffs' standing, by intently reviewing relevant caselaw and revising the factual discussion of standing and standing argument section. Exhibit A (Invoice 1401 p. 4-5).

---

[6] However, in the event that the Court decides that specific reductions are more appropriate for this case, then the 15% across-the-board reduction should not be applied.

15

Another example is the delegation of work regarding Plaintiffs' response to the City's (third) motion to dismiss.  Najvar's entry from April 6, 2021 reflects that, after jointly preparing an outline of the response to organize necessary points of discussion, Najvar determined to focus personally on research and drafting arguments regarding the request for declaratory judgment, and assigned Whatley to focus on the argument that the City had not met its burden to establish mootness by voluntary cessation.  Exhibit A (Invoice 1565 p. 3).  Najvar's entry from April 8 reflects that he reviewed Whatley's research to that point on another issue (standard of review in the 12(b)(1) context regarding voluntary cessation issue) and directed further, narrowed research on the issue.  *Id.*  Throughout the period, Whatley again took the lead in drafting most sections of the response to the motion to dismiss, freeing Najvar to focus on select issues.  Najvar then drafted the section that he assumed responsibility for, and revised other sections as appropriate before filing.  This is the approach Najvar Law Firm took to the delegation of tasks throughout the litigation, as documented in the time records.

From June 2019 through February 2022, Whatley recorded a total of 283.8 hours, but 52.3 hours have already been excised in the exercise of billing judgment, yielding a request of 231 hours for Whatley's time, at $250/hour (his billing rate as of February 2022).[7]  This totals $57,750.  Applying an additional, across-the-board 15% reduction (despite having already excised specific hours), Plaintiffs request $49,087.50 for Whatley's time.

This results in a total of **<u>$196,581.05 in attorneys' fees and expenses requested.</u>**  All of this time was both reasonable and necessary in order to obtain the relief requested and granted, and the hourly rates are reasonable rates well within the prevailing rates for attorneys of

---

[7] As reflected in Najvar's time records (2/21/20 – 2/28/20), Whatley also worked on the opening brief in the merits appeal, but counsel could not locate the time entries for this period.  Therefore, Plaintiffs are not requesting any compensation for this period of Whatley's work.

comparable skill and experience in the Southern District of Texas.  *See* Declarations of Najvar and Rossi.

Plaintiffs' request is more than reasonable for a First Amendment case such as this, both in terms of hours expended and total fees.  *See Johnson*, 488 F.2d at 719 ("The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit.").  In terms of total fees and costs, plaintiffs in *Free Market Foundation v. Reisman*, No. 1:08-cv-116-SS (W.D. Tex. 2008), were awarded a total of $218,000 after successfully challenging a provision of the Texas Election Code that prevented speech related to elections for Speaker of the Texas House.  *See* Doc. 68, "Stipulation to agreed judgment."  Like *Free Market Foundation*, this case involved substantive briefing on plaintiffs' motion for preliminary injunction, and cross-motions for summary judgment.  However, *Free Market Foundation* involved no appeals.  Plaintiffs here successfully appealed a dismissal, secured remand, and prevailed after significant opposition and briefing in the district court.

## Conclusion

For the reasons shown, Plaintiffs request an award of attorneys' fees and costs as discussed above.  Plaintiffs will supplement this fee request to include a request for time expended on this motion, and on any additional briefing or appeal regarding this motion or otherwise in relation to the issue of attorneys' fees and costs in this case.

Respectfully submitted,

*/s/ Jerad Najvar*
**JERAD NAJVAR**
Texas Bar No. 24068079
Southern District No. 1155651
2180 N. Loop W., Ste. 255
Houston, TX 77018

17

Tel.: 281.404.4696
Fax: 281.582.4138
jerad@najvarlaw.com
*Attorney-in-Charge for Plaintiffs*

Najvar Law Firm, PLLC
2180 N. Loop W.,
Suite 255
Houston, TX 77018
*Of Counsel*

**PAUL A. ROSSI**
Pennsylvania Bar. No. 84947
Pennsylvania Middle District Bar No. 84947
IMPG Advocates, Inc.
Paul-Rossi@comcast.net
*Of Counsel (admitted pro hac vice)*

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 12, 2022, the foregoing document, and any accompanying exhibits, was served by CM/ECF as follows:

Suzanne R. Chauvin
Senior Assistant City Attorney
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
Suzanne.Chauvin@houstontx.gov
832.393.6219 (O)
832.393.6259 (F)
*Counsel for Defendants*

*/s/ Jerad Najvar*
Jerad Najvar