IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE RICHARD "TREY" POOL, III, TRENTON DONN "TRENT" POOL, and ACCELEVATE2020, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HOUSTON and ANNA RUSSELL, in her official capacity as Secretary of the City of Houston <br><br> Defendants. | § § § § § § § § § § § § § § § § § § CIVIL ACTION <br><br> No. 19-CV-2236 |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR ATTORNEYS' FEES & EXPENSES

Defendants City of Houston ("Houston" or the "City") and Pat J. Daniel, in her official capacity as Secretary of the City of Houston (the "City Secretary") (collectively, the "Defendants"), file this Response to Plaintiffs' Opposed Motion for Attorneys' Fees & Expenses, and would respectfully show the Court the following:

**I.   NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiffs filed this lawsuit on June 21, 2019, alleging violations of the First and Fourteenth Amendments to the United States Constitution in connection with a superseded Houston City Charter provision. On July 1, 2019, the Court entered a temporary restraining order (DKT 15) temporarily enjoining the Defendants from enforcing the charter provision's residency and voter registration requirements with respect to a petition to be circulated by Plaintiffs from July 1, 2019 to July 9, 2019. On August 14, 2019, the Court dismissed the lawsuit as moot (DKT 20) based on the parties' representations in the TRO hearing. Plaintiffs moved to alter or amend the judgment (DKT 26), and on November 1, 2019, the Court denied the Plaintiffs' Motion to Alter or Amend

the Judgment, denied Plaintiffs' Protective Motion for Attorney's Fees as moot, and instructed Plaintiffs to submit any motion for attorneys' fees within five days.  (*See* DKT 33, p. 5).

Plaintiffs filed an Opposed Motion for Attorney Fees on November 12, 2019 (DKT 34). The City responded on December 3, 2019 (DKT 36) and that same day, Plaintiffs filed their Notice of Appeal (DKT 35).  On May 22, 2020, the Court denied Plaintiffs' Motion for Attorneys' Fees (DKT 40).  The parties filed briefs in the Court of Appeals, and on October 23, 2020, the Fifth Circuit entered an opinion reversing and remanding the case for further proceedings.  *Pool v. City of Houston,* 978 F.3d 307, 314 (5th Cir. 2020).  The opinion acknowledged that " … perhaps the City's postsuit disavowal of the qualified-voter requirement moots the Pools' claim." *Id.* at 313. The court stated, however, that "it is not clear the City made a formal policy change [not to enforce the charter provisions]." *Id.* at 314.  The mandate issued on February 9, 2021 (*See* DKT 44 and 45).

On March 18, 2021, the City filed another Motion to Dismiss and Memorandum in Support of its motion.  (DKT 48 and 49). In that Motion and Memorandum, the City discussed steps it had taken to, again, confirm that it had no intention of enforcing the unconstitutional and unenforceable charter provisions relating to petition circulators.  In particular, the City discussed the editorial notes it had added to the online City Charter and to the City Secretary's website (DKT 49 at 6-7), and the ordinance the City had enacted in response to the Fifth Circuit opinion in *Pool,* in order to leave no possible doubt that it is City policy to follow United States Supreme Court case law and comply with the requirements of *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 193-97 (1999)*.* (DKT 49 at 6-7).

On April 2, 2021, Plaintiffs moved for leave to file a Second Amended Complaint (DKT 52), in part seeking to add two *new* plaintiffs, arguing that the offending charter provisions—which

the City had repeatedly and unmistakably stated it would not enforce—violated the constitutional rights of the *new Plaintiffs* to circulate *future petitions* for some unspecified *future election.*

On May 10, 2021, the Court granted leave to file the Second Amended Complaint (DKT 64), and on May 25 and 26, 2021, the City filed its Amended Motion to Dismiss the Second Amended Complaint and Memorandum in Support, together with a motion for leave to file excess pages (DKT 65, 66, 67, and 68). The Court granted leave to file excess pages on June 15, 2021 (DKT 69).

On July 6, 2021, Plaintiffs filed a so-called "Notice Regarding Status of Defendants Proposed Amended Motion to Dismiss" (DKT 70), in which they argued that the City's Memorandum in Support of its motion to dismiss was not on file with the Court, because the City had not filed the document *again* after the Court granted the City's motion to exceed the page limit. The City filed a letter in response (DKT 73), and on July 21, 2021,the Plaintiffs filed a response to the City's letter (DKT 74). On July 27, 2021, the Court struck Plaintiffs' "Notice" stating, in part,

> This letter presents false information on the record of this case. The motion docket date for Instrument 65 is June 15, 2021. The matter is ripe for consideration. Plaintiff mistakenly believes the Motion to Dismiss is not on file with the Court, but it is. Plaintiff may have five (5) days from the date of this Order to respond to the motion.

(DKT 75, p. 2, ¶ 10). On November 1, 2021, the Plaintiffs filed a Motion for Summary Judgment (DKT 85), and on December 8, 2021, the City responded (DKT 88).

The case was reassigned to this Court on December 9, 2021 (DKT 89), and a hearing on the pending motions was held on January 25, 2022. On February 22, 2022, the Court entered a Memorandum and Opinion (DKT 100) granting in part and denying in part the City's Motion to Dismiss, and granting in part and denying in part the Plaintiffs' Motion for Summary Judgment.

3

The Court granted the City's motion to dismiss the Plaintiffs' claims for preliminary and permanent injunctive relief, nominal damages, and Liberty Initiative Fund's claim for compensatory damages, and dismissed Plaintiff's state law claim as to Ordinance 2020-1033. (DKT 100, p. 48).  The Court granted the Plaintiffs' claim for a declaratory judgment that the challenged Houston Charter provisions are unconstitutional (which the City never disputed).  *Id.* The Plaintiffs' constitutional challenges to Ordinance 2020-1033 were dismissed without prejudice, and the Court ordered the City to inform the Court and the plaintiffs if it intended to amend or enact a new ordinance in light of the opinion.  *Id.*

As required by the Court, on April 15, 2022, the City notified the Court and Plaintiffs' counsel that the City intended to amend or enact a new ordinance in light of the Court's opinion. (DKT 104). On June 14, 2022, the City notified the Court and Plaintiffs' counsel that on June 8, 2022, the City had passed and adopted Ordinance No. 2022-455, and provided a copy of the ordinance.  (DKT 108).

On July 20, 2022, Plaintiffs submitted an opposed proposed order of final judgment. (DKT 110).  On July 22, 2022, the Court entered final judgment referencing the declaratory judgment, the City's passing of Ordinance No. 2022-455 and the Plaintiffs' notification that they would not amend their complaint, as well as dismissing this case with prejudice.  (DKT 111).

On August 5, 2022, the Plaintiffs submitted an Opposed Bill of Costs and an Opposed Motion for Attorney Fees. (DKT 112 and 113).  On August 12, 2022, the Plaintiffs filed an Opposed Motion to Amend their Opposed Motion for Attorney Fees (DKT 114).  On August 19, 2022, Plaintiffs moved to alter the judgment (DKT 115), and that motion was denied on August 22, 2022 (DKT 116).   This Responses addresses only Plaintiffs' original Opposed Motion for Attorneys' Fees and Expenses (DKT 113).

4

## II.     ISSUES TO BE RULED UPON BY THE COURT

1. Are the Plaintiffs entitled to recover attorneys' fees under 42 U.S.C. § 1988(b)?

2. Are the attorneys' fees sought by Plaintiffs excessive under the lodestar method?

**Standard of Review:**  The district court has broad discretion to award attorneys' fees under 42 U.S.C. § 1988(b).  *See Hopwood v. Texas*, 236. F.3d 256, 277 (5th Cir. 2000).

## III.     SUMMARY OF THE ARGUMENT

Plaintiffs should not recover attorneys' fees in this case because this lawsuit was unnecessary.  When Plaintiffs filed this lawsuit and throughout these proceedings, Defendants have never attempted to defend the constitutionality of the superseded charter provisions, but instead attempted to reach an agreement with Plaintiffs that essentially placed the parties in the same or similar position as the TRO and subsequent judgments entered by this Court.  Accordingly, Plaintiffs do not meet the standard for a prevailing party, which would entitle them to recovery of attorneys' fees.  Even if Plaintiffs could be considered prevailing parties, special circumstances preclude—or warrant the reduction of—attorney's fees because the litigation was superfluous.

Furthermore, Plaintiffs' request for attorneys' fees is excessive under the lodestar method used to calculate a reasonable attorneys' fees award under 42 U.S.C. § 1988(b).  Defendants do not challenge the hourly rates sought by Plaintiffs.  However, the billable hours claimed for work on this case and their fee application are excessive in light of the relief sought and granted.  Throughout this lawsuit, the City has *never* defended the constitutionality of its charter provisions and has repeatedly stated in open court and in its pleadings and briefing that it had no intention of enforcing the offending charter provisions.  Furthermore, the City has enacted *two* ordinances in its efforts to confirm and reinforce that it has no intention of enforcing the charter provisions.  Nevertheless, the Plaintiffs have repeatedly engaged in unnecessary motion and appellate practice

purely in an effort to gin up attorneys' fees. Those efforts should not be rewarded, and Plaintiffs' should not be awarded their excessive attorneys' fees.

## IV. ARGUMENT

### A. Plaintiffs should not recover attorneys' fees in this case.

1. **Plaintiffs' claim for attorneys' fees is unwarranted. The Plaintiffs never faced a credible threat of enforcement of the City's Charter provision, and the City has gone to extraordinary lengths to satisfy Plaintiffs' demands for confirmation that the City did not intend, now or in the future, to require compliance with an unconstitutional circulator requirement.**

This lawsuit was an unnecessary waste of the Court's resources, as well of those of the parties and the taxpayers. In their lawsuit, Plaintiffs claimed they were afraid to circulate petitions for signature because of a superseded 1913 Houston City Charter provision that required petition circulators to be registered voters in the City of Houston. In their various Motions to Dismiss, appellate briefing, and at the hearings on July 1, 2019 and January 25, 2022, Defendants *never* defended the constitutionality of the charter provision, but urged that they did not intend to enforce the provision, and had so advised Plaintiffs' counsel, as Plaintiffs have conceded. *See* Transcript of Hearing held July 1, 2019, **Exhibit 1**, at p. 4, l. 4—p. 5, l. 9; p. 8, l. 25—p. 9, l. 8; p. 20, ll. 2—5. Plaintiffs' counsel also conceded that they did not intend to collect signatures after July 9, 2019, because that was their deadline to submit petition signatures. *See* **Exhibit 1**, at p. 14, ll. 14—19; pp. 19, ll. 13-24. For that reason, Plaintiffs agreed that any TRO would expire by its terms after July 9, 2019, and that no further injunctive relief would be necessary as it would be moot. **Exhibit 1**, at p. 14, ll. 14—19.

As Plaintiffs have also conceded, the City repeatedly offered to accept modified verification language for prospective petition circulators that would balance protecting City

6

elections from fraud and affording Plaintiffs their constitutional rights. *See* **Exhibit 1**, at p. 4, l. 17—p. 5, l. 20; p. 8, l. 25—p. 9, l. 13; p. 11, l. 5—p. 14, l. 2.

Nevertheless, despite Defendants' efforts to finalize an agreement on acceptable verification language, Plaintiffs persisted in seeking allegedly "emergency" relief. There was never any credible threat of enforcement, and certainly never any threat of prosecution for perjury.

The City was repeatedly forced to file Motions to Dismiss and briefs in this case even though there has never been a credible threat of enforcement (*See* DKT 9, 10, 48, 49, 65, 66, 67, and 68). Plaintiffs, however, admit that after entry of the TRO, they collected petition signatures, but those signatures were never submitted to the City Secretary for verification, and thus, were not and could not have been rejected by the City Secretary. (*See* DKT 23, at p. 3). Plaintiffs based their lawsuit on speculative potential injury that ***never happened***.

To the extent Plaintiffs sought relief in their original and amended complaints for possible ***future*** petitions on nebulous, unidentified issues that they might want to prepare and file in some future election, they cannot show an injury in fact by mere "[a]llegations of possible future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

**2. Plaintiffs have not satisfied the standard for a prevailing plaintiff.**

42 U.S.C. § 1988(b) provides, in part, that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). The United States Supreme Court has held that a plaintiff "'prevails' when actual relief on the merits of his claim ***materially alters the legal relationship*** between the parties by *modifying the defendant's behavior* in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-112(1992) (emphasis added); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of*

*Health & Human Res.,* 532 U.S. 600, 605 (2001) ("Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties."). Here, the City did not modify its behavior, but instead advised Plaintiffs from the very beginning that it did not intend to enforce the charter provisions. However, Plaintiffs have never been satisfied with the City's verbal and written assurances, *even when made in open court and in publicly filed pleadings, in notes to the online charter provisions, and in an ordinance confirming that the City intended to follow Buckley.*

Although it is correct that a preliminary injunction may form the basis for a claim that the plaintiff is a prevailing party, in this case, the Defendants *never* defended the constitutionality of a clearly superseded charter provision, and repeatedly attempted, to no avail, to reach agreement with Plaintiffs' counsel as to substitute affidavit language that would satisfy the Plaintiffs. *See Lefemine v. Wideman*, 568 U.S.1, 4 (2012). Here, rather than accepting a substitute affidavit and proceeding with the collection of petition signatures, Plaintiffs chose instead to delay their collection of signatures by unnecessarily litigating this matter. *See Boyd v. Texas*, 301 Fed. Appx. 363, 366 (5th Cir. 2008) ("We agree that counsel . . . should at least consider a pragmatic approach to resolving the issues—as was ultimately done here—before either side spends unnecessary time or money.").

Further, the Supreme Court has found that a declaratory judgment alone does not necessarily confer prevailing party status pursuant to Section 1988. *Rhodes v. Stewart*, 488 U.S. 1 (1988). A declaratory judgment "will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff." *Id.* at 4. In this Court's Memorandum Opinion and Order (DKT 100), the Court dismissed the plaintiffs' claims for preliminary and permanent injunctive relief, nominal damages, and Liberty Initiative Fund's claim for

8

compensatory damages, as well as Plaintiffs' state-law claim as to Ordinance 2020-1033. The only relief the Court granted Plaintiff was a declaration that the City's challenged Charter provisions were unconstitutional – *which the City has judicially admitted throughout the entirety of these proceedings.*[1]

### 3. Even if Plaintiffs could be considered prevailing parties, special circumstances, such as superfluous litigation, preclude attorneys' fees.

Even if Plaintiffs could be considered prevailing parties pursuant to Section 1988, there are special circumstances that should preclude—or at the very least reduce—an attorneys' fee award because of the superfluousness of most—if not all—of the litigation. Under Section 1988, this Court has the discretion to deny attorneys' fees to a prevailing party in "special circumstances [that] would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 403 (1968). These "special circumstances" include when the attorneys' fees are for litigation that is "completely superfluous to achieving the improvements undertaken by the defendants on plaintiff's behalf." *Greenside v. Ariyoshi*, 526 F. Supp. 1194, 1197 (D. Haw. 1981).

Federal courts have consistently found that plaintiffs cannot use Section 1988 to "make mountains out of molehills"—and then get paid for it. *See, e.g.*, *Naprstek v. City of Norwich*, 433 F. Supp. 1369, 1371 (N.D.N.Y. 1977) (finding special circumstances precluded an award of attorney's fees in a suit challenging an outdated and rarely enforced curfew ordinance); *Bush v. Bays*, 463 F. Supp. 59, 66 (E.D. Va. 1978). In *Bush*, the court found plaintiffs were not prevailing parties, and in the alternative, special circumstances prevented recovery of attorney's fees, when

---

[1] To correct misstatements in Plaintiffs' Motion, the City *never* agreed in principle to submitting an agreed proposed final judgment. Likewise, the City *never* agreed to enter into a consent decree or to pay attorneys' fees. Although Plaintiffs' pleadings repeatedly make such misrepresentations (*see, e.g.,* DKT 34, p. 2, DKT 113, p. 2), the City never agreed to Plaintiff's repeated demands that the City enter into an agreed judgment or consent decree, and never agreed to pay Plaintiffs' demand for attorneys' fees. Rather, the City repeatedly rejected such demands.

the government defendants were making changes to their food stamp programs pursuant to court decisions, and the plaintiffs' involvement only arguably gained a small change in those policies. *Id.* at 64-66, "It is apparent to the Court that the attorneys for the plaintiffs in this case merely caught hold of a train on its way out of the station and are seeking to ride it to a substantial award of attorneys' fees." *Id.* at 66.

Here, it is clear that Plaintiffs were also along for the ride, which Plaintiffs dragged out through this litigation. At the outset, the City never defended the constitutionality of its petition circulator charter provisions in light of the *Buckley* decision. The City made assurances that the provision would not be enforced and provided substitute circulator affidavits—and even passed an ordinance to memorialize the policy. Despite this, Plaintiffs continued the litigation in pursuit of a judicial finding, despite the City's steps to comply with *Buckley*—and then Plaintiffs have turned around and requested almost $200,000 in attorneys' fees. *Indeed, it would be unjust to allow the recovery of attorneys' fees after Plaintiffs have already wasted so much of the Court and City's time—and thus taxpayers' money—through this unnecessary litigation.*

**B. In the event the Court determines that any attorneys' fees are appropriate, courts apply the lodestar method in determining an award of attorneys' fees.**

In adjudicating an attorneys' fees award in a civil rights case, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckherhart*, 461 U.S. 424, 433 (1983). The party seeking attorneys' fees bears the burden of submitting adequate documentation of the hours reasonably expended and of reasonable hourly rates based on the attorneys' qualifications and skill. *Hensley*, 461 U.S. at 437.

Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court

10

must multiply the reasonable hours by the reasonable hourly rates. The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case. *Shipes v. Trinity Industries,* 987 F.2d 311, 319 (5th Cir. 1993), citing *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir. 1990).

In the second step of the lodestar method, the court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Those factors are: (1) the time and labor involved; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.

1. **Although Defendants do not challenge the hourly rates sought by Plaintiffs' counsel, the number of hours for which Plaintiff seeks compensation is unreasonable and excessive under the circumstances.**

Defendants do not challenge the hourly rates of Mr. Najvar and Mr. Rossi. As the next step in the lodestar analysis, the court must determine the number of hours reasonably expended on the litigation. Compensable hours, reasonably spent, are determined from the attorney's time records or other documentation which the district court must examine and discern *which hours are compensable and which are not. Louisiana Power & Light Co. v. Kellstromm,* 50 F.3d 319, 324 (5th Cir. 1995). Counsel must "exclude from a fee request hours that are excessive, redundant, or

11

otherwise unnecessary . . ..." *Id.* In dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *Id.*

Here, Mr. Rossi is seeking fees for 72.6 hours of time spent on this case. Mr. Najvar's affidavit states that he has spent over 80 hours on this case, and he apparently seeks fees of $121,187.36. It is difficult to reconcile the amount claimed with the number of hours claimed in Mr. Najvar's affidavit, but regardless, the amount of attorneys' fees is excessive, particularly as Defendants, at the outset of this litigation, offered to enter into an agreement for Plaintiffs to circulate petitions as they wished to do. *See* **Exhibit 2**, Declaration of Suzanne Chauvin at ¶¶ 8-9.

Mr. Rossi had an initial consultation regarding this case on May 29, 2019. *See* Dkt 34-8, p. 1. Mr. Najvar began work on this case on June 11, 2019, and Mr. Whatley began working on the case on June 19, 2019. Mr. Najvar's time entries note that he had a telephone call with Defendants' counsel on June 24, 2019 regarding a potential agreement, but is asking for fees for over $120,000. On June 25, 2019, Mr. Whatley appears to have researched whether any agreement the City entered into not to enforce its superseded Charter provision would be valid and enforceable. *See* Dkt 34-6, p. 1. At a minimum, Plaintiffs should not recover fees for time spent after Defendants offered to modify affidavit language to eliminate any doubt that Plaintiffs were free to circulate petitions. *See* Chauvin Decl. at ¶ 12.

**2. Plaintiffs' Fee Request Should Be Reduced for Overstaffing Unproductive or Unnecessary Hours.**

"[I]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir. 1986).

In this instance, Plaintiff is seeking fees for three different attorneys. Based on the time entries submitted by all of the attorneys, it appears that many of the hours for which fees are requested were duplicative and unnecessary.

First, although many of the hours spent by Mr. Whatley have been written off, his time entries remain replete with unnecessary hours. For example, both Mr. Najvar and Mr. Whatley spent numerous hours researching unrelated prior litigation and esoteric issues. For example, Mr. Najvar spent .81667 hours "[r]eview[ing] selected pleadings in Lancton v. Anna Russell (Firefighter pay parity petition case) for discussion/treatment of circulator requirement", with no apparent application to this case. *See* Dkt 34-3, p. 1. *See* Chauvin Decl. at ¶ 13. Mr. Whatley researched "Can a government entity enter into a [sic] illegal contract. I.e. would this settlement agreement, despite requiring action explicitly disallowed in the charter to be valid and enforceable" and "[c]ontinued research regarding any case were mandamus was requested to invalidate a petition." Dkt 34-6, pp. 1-2.

### 3. Any fees attributable to Plaintiffs' filing of a Second Amended Complaint to add new plaintiffs and new causes of action are neither necessary nor reasonable.

By the time the Plaintiffs prepared and filed their Second Amended Complaint, Plaintiffs and their counsel were fully aware that the City had placed Editors' Notes on the applicable Charter provisions and on the City Secretary's website evidencing that the City did not intend to enforce the applicable Charter provisions. Chauvin Decl. at ¶ 18. Additionally, Plaintiffs and their Counsel had been informed by the City that the City had passed Ordinance 2020-1033, which acknowledged *Buckley* and confirming the City's policy to enforce the United States Constitutional requirements relating to petition circulators. (*See* DKT 113-2, p. 17, time entry for 3/16/2021 ("Email P. Rossi with thoughts regarding new revelation that City actually passed ordinance in December") and time entry for 3/17/2021 ("Reply to email from P. Rossi regarding

amending complaint, new potential plaintiff, and preparation for scheduling conference")). Thus, the time entries for April 1 and 2, 2021 and May 1 and 4, 2021 do not reflect reasonable or necessary fees. Chauvin Decl. at ¶ 18.

As another example of unnecessary and unreasonable motions and documents filed by Plaintiffs, on July 6, 2021, Plaintiffs filed a so-called "Notice Regarding Status of Defendants Proposed Amended Motion to Dismiss" (DKT 70), in which they argued that the City's Memorandum in Support of a motion to dismiss was not on file with the Court, because the City had not filed the document *again* after the Court granted the City's motion to exceed the page limit. Chauvin Decl. at ¶ 19. The "notice" was ultimately stricken, but the Najvar firm appears to have billed approximately $1,440 in connection with this unnecessary "notice". (See DKT 113-2, p. 21, time entries for 7/6/2021, 7/15/2021, and 7/27/2021, in the amounts of $400, $80, and $960, respectively.) Those charges are neither reasonable nor necessary. Chauvin Decl. at ¶ 19.

Indeed, with all the steps taken by the City to assure Plaintiffs that the unconstitutional charter provisions would not be enforced, all fees attributable to the Second Amended Complaint and after are certainly unreasonable and unnecessary.

4. **Application of the *Johnson* Factors**

The next step in the lodestar method is adjustment to the lodestar by applying the *Johnson* factors. Most of the *Johnson* factors are briefly addressed in the discussion above. However, the eighth factor, the amount involved and the results obtained, deserves examination here. In this case, Plaintiffs had the opportunity to obtain the results they wanted – *i.e.,* to circulate petitions for signature – immediately upon notifying the City that they had any concern about doing so. Instead, they rejected all efforts by the City to assist them in modifying affidavit language on the petition. Accordingly, if the Court determines that attorneys' fees are appropriate in this case, the City

respectfully requests that the charges for the attorneys be reduced to reasonable amounts, and that attorneys' fees be significantly reduced to an amount to be determined by the Court, but for a total of no more than $25,000.

## V. CONCLUSION

Defendants respectfully submit that Plaintiffs should not recover attorneys' fees, expenses, or costs in this case, as this litigation was unnecessary, and Defendants voluntarily attempted to reach an agreement with the Plaintiffs on modified affidavit language in an effort to satisfy any concerns Plaintiffs may have had regarding circulating their petitions. Therefore, the Court should deny Plaintiffs' Bill of Costs (DKT 112) and Motion for Attorneys' Fees and Expenses (DKT 113) In the alternative, Defendants respectfully request that any award of attorneys' fees be held to a maximum of $25,000.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney

SUZANNE R. CHAUVIN
Chief, General Litigation Section

By: /s/ *Lori J. Yount*
Lori J. Yount
Senior Assistant City Attorney
Federal ID No. 2209496
Texas State Bar No. 24084592
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone: 832.393.6459
Facsimile: 832.393.6259
lori.yount@houstontx.gov

Of Counsel:
Collyn A. Peddie
Senior Assistant City Attorney
Federal ID No.: 843
Texas State Bar No.:  15707300
832.393.6463 - Telephone
collyn.peddie@houstontx.gov
Lydia S. Zinkhan
Senior Assistant City Attorney
Federal ID No.: 11882
Texas State Bar No.: 22277600
832.393.6467 – Telephone
lydia.zinkhan@houstontx.gov

***ATTORNEYS FOR DEFENDANTS***
***CITY OF HOUSTON AND PAT J. DANIEL,***
*in her official capacity as Secretary for the City of Houston*


## CERTIFICATE OF SERVICE

I certify that on August 26, 2022, a copy of the foregoing Defendants' Response to Plaintiffs' Opposed Motion for Attorneys' Fees and Expenses was served electronically on the CM/ECF system which will automatically serve an electronic notice on the following counsel of record for Plaintiffs:

Jerad Najvar
Austin M.B. Whatley
NAVJAR LAW FIRM, PLLC
2180 North Loop West, Suite 255
Houston, TX 77018
jerad@najvarlaw.com
austin@najvarlaw.com

IMPG ADVOCATES, INC.
Paul A. Rossi
316 Hill Street
Mountville, PA 17554
Paul-Rossi@comcast.net

<div style="text-align: right">

*/s/ Lori J. Yount*
Lori J. Yount

</div>