UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE RICHARD "TREY" POOL, III, et. al, § § § Plaintiffs § § v. § § CITY OF HOUSTON, et al., § § Defendants. § | Civil Case No. 4:19-cv-02236 |

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR LEAVE TO AMEND FEE REQUEST

Plaintiffs' reply as follows in support of the motion for leave to amend the fee request.

**I.  The Court Has Authority to Allow An Amended Fee Request, and Plaintiffs Have Established Sufficient Cause for the Amendment.**

Contrary to Defendants' argument (ECF 119 at 3), the Fifth Circuit *has* expressly recognized district court authority to entertain untimely requests for fees under Rule 54(d) (even where the party failed *entirely* to request fees by the deadline). *E.g.*, *Romaguera v. Gegenheimer,* 162 F.3d 893, 895 (5th Cir.1998).[1]  Given that the deadline is not jurisdictional,

---

[1] The deadlines in Rule 54(d) are not jurisdictional. *See Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 664 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002) ("Even if the application for costs was untimely, the time limit set forth in Rule 54 is not jurisdictional, and as such, the court may entertain a motion for costs if the purposes of Rule 54 are satisfied."). Section 1988 attorneys' fees, like costs and sanctions issues, are not part of the merits of a lawsuit, but are "auxiliary to [a] case already within th[e] court's adjudicatory authority." *Scarborough v. Principi*, 541 U.S. 401, 414 (2004) (explaining the collateral nature of attorneys' fees under the Equal Access to Justice Act). *Scarborough* reiterates the Court's criticism of the erroneous characterization of rules-based deadlines as jurisdictional. 541 U.S. at 413-14 ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a courts' adjudicatory authority.") (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004)).

1

requests to file an untimely motion (or, as here, to merely amend the motion that was timely filed) can be granted upon a showing of "excusable neglect." The Fifth Circuit has stated that

> Federal Rule of Civil Procedure 6(b) allows the district court to grant a party's motion to file an untimely pleading on a showing of good cause and "if the party failed to act because of excusable neglect." We have said that " 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." In evaluating a party's claim of excusable neglect, the district court may consider the danger of prejudice to the opposing party, the length and impact of the delay, the reason for the delay, and the moving party's good faith.

*DaSilva v. U.S. Citizenship & Immigration Servs.*, 599 F. App'x 535, 544 (5th Cir. 2014) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)) (internal footnotes omitted). The Supreme Court has stated that under Rule 6(b), "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. Co.*, 507 U.S. at 392. Plaintiffs' motion for leave to amend already demonstrates that these factors favor permitting the amendment, and Defendants have not even attempted to claim any cognizable prejudice.

Plaintiffs explained the circumstances that led to counsel's erroneous omission of Austin Whatley's TRO-phase time, and the inability to append Whatley's post-TRO time, in some detail. *Mtn. for Leave to Amend* at 2-3. As stated, counsel actually began preparatory work on his time sheets shortly after the judgment was entered in this case (July 22), and anticipated having sufficient time the week the motion was due to finish the motion and exhibits. *Id.* He explained the last-minute demands in another case, which could not be avoided or extended, because certain work became necessary before a final pretrial hearing in a criminal trial[2] in which a continuance had already been denied. All factors of the "excusable neglect" inquiry strongly favor permitting the amendment here.

---

[2] The case is *State v. Molina*, CR-2056-19-A (92nd Jud. Dist., Hidalgo Cnty.).

Plaintiffs have explained the "reason for the delay." Even if this situation could be described as "neglect"—given that counsel actually had not delayed preparatory work on the motion but began such shortly after the July 22 judgment—it should certainly qualify as the "excusable" variety in these circumstances. Counsel has not yet replaced Whatley as an associate attorney on staff, and therefore did not have any possibility of delegating the work on this fee request or the criminal case to another attorney. (Paul Rossi's work on this case has been limited primarily to substantive, petition-related issues under the First Amendment, whereas Najvar has taken the lead on all other matters, as reflected in the time sheets, and Najvar must take the lead on the fee request, given his role as lead counsel and the attorney who has accrued the most comprehensive time records and therefore in the best position to review and explain the records and delegation of tasks among attorneys.)

Plaintiffs' counsel has worked in good faith to diligently prepare the motion and the voluminous exhibits required, which is reflected in the fact that he expressly noted in the original motion itself that he would have to submit Whatley's time records separately due to the inability to complete that work by August 5, and followed up virtually immediately with Defendants' counsel. In an email to Defense counsel the *very next Monday*, counsel explained that, in securing Whatley's updated time sheets for filing along with Whatley's updated declaration, he realized that Whatley's time records from the TRO phase had not been included in the estimated fee request, and thus provided that revised figure on August 8.[3] Defendants do not challenge any of this, other than to profess confusion as to why the value of Whatley's time requested for the TRO phase in 2019 is less than the compensation requested for that same period of time now. See ECF 119 at 2 n.1. The answer to that is simple, and apparent from the time records and updated

---

[3] That email chain between counsel is attached to Plaintiffs' motion to extend the time to file a reply in favor of their fee motion, and incorporated here by reference.

declaration submitted for Whatley with the proposed amended motion. The TRO-phase request in 2019 excised certain itemized hours (as shown on the relevant exhibit) that, in the 2019 fee motion, were not requested because they were not attributable to securing the TRO (but to certain merits-related tasks), and because the 2022 request incorporates Whatley's higher hourly rate when he left the firm.

As to prejudice, Defendants cannot claim any that is cognizable under Fifth Circuit precedent. The Fifth Circuit long ago set out the test for prejudice allegedly arising from an untimely fee motion, holding that "a finding of prejudice requires more than simply negligence or delay." *Cruz v. Hauck*, 762 F.2d 1230, 1238 (5th Cir. 1985). Prejudice is determined by the equitable doctrine of laches and requires detrimental reliance. "Prejudicial harm does not occur merely because one loses what he otherwise would have kept." *Id.* In other words, the City cannot claim that having to pay fees that it otherwise might have escaped liability for by the coincidence of a late filing constitutes prejudice. Instead, "there must be a delay which causes a disadvantage in asserting and establishing a claimed right or defense, or other damage caused by detrimental reliance." *Id.* The City has not, and cannot, claim that amending the fee motion a week after the 14-day deadline has caused it to lose access to witnesses necessary to defend itself, or some such cognizable prejudice. The City can raise whatever defenses it wants to raise if the amended motion is filed.

This prejudice question overlaps with the final factor in the excusable neglect inquiry; *i.e.*, the length of the delay. The "delay" here was one business day (from Friday to Monday) if one counts to the day the City was in receipt (again) of the TRO-phase records for Whatley (which it already had anyway, as they were filed in 2019). At worst, the "delay" is a week, but Plaintiffs should not be charged for a week's delay when they waited several days for Defendants' position on the motion. *See Plaintiffs' Mtn. for Leave to Extend Time for Reply*.

The court has the authority to permit the proposed amendments, and all factors of the excusable neglect inquiry favor Plaintiffs here. The records at issue here are an important part of Plaintiffs' fee request, and therefore denying the ability to present them with this motion would work amount to a severe penalty to Plaintiffs' right to otherwise recover on their claim for attorneys' fees under federal statute, which is a critical component of civil rights claims under 42 U.S.C. 1983 and essential to the ability of claimants to secure competent representation. At the same time, there is very little or no reason for Defendants to object, based on the factors reflected above. Moreover, Defendants have had notice of the time spent by Whatley during the TRO phase, because that time was already in their possession and on the record in this case since 2019. Plaintiffs even made it the subject of their appeal of the denial of the TRO fee request, which was remanded to this court after Plaintiffs' success in securing a remand of the merits. Plaintiffs have consistently taken the steps necessary to preserve their right to seek the fees at issue, and the fact that they were erroneously left out of the estimated calculation included on August 5, but disclosed again on August 8, should not mean that Plaintiffs lose all right to seek such fees.

## II. The Merits of the Request Are Not At Issue In This Motion, But Even if They Were, The Request is Not Futile.

Defendants' attempt to argue the merits of the fee request in toto in this motion is improper for several reasons. First, it is misplaced in the context of the present motion, which turns only on whether the amendment will be allowed. Plaintiffs should have, and hereby request, the ability to address the "prevailing party" and "special circumstances" issues comprehensively in their reply in support of the motion, once it is determined whether the original or amended motion is at issue. Defendants' arguments on this score delve deeply into the merits, and would require reference to the TRO hearing transcript (which Defendants misrepresent) and other parts of the record throughout this case, including certain communications between counsel that Defendants (for the

5

first time in the entire course of this case) now claim to dispute. *See* ECF 119 at 7 n.2. Plaintiffs also have an independent claim to prevailing party status for the TRO phase itself, irrespective of subsequent activity, which Defendants have not addressed discretely. That issue will be made more or less important in the grand scheme of things based on whether the amended motion is allowed.

Further, Defendants' challenge to Plaintiffs' "standing" is foreclosed by the law of the case, as the Fifth Circuit already held Plaintiffs established a reasonable fear of enforcement of the challenged charter provisions. But just as in the merits phase, if Defendants are raising issues of "standing" and mootness as challenges to prevailing party status, Plaintiffs contend that such is wholly improper here and request to fully respond in their reply to the appropriate motion.

## Conclusion

Plaintiffs request that the Court grant their motion for leave to amend the fee request.

Respectfully submitted,

*/s/ Jerad Najvar*
**JERAD NAJVAR**
Texas Bar No. 24068079
Southern District No. 1155651
2180 N. Loop W., Ste. 255
Houston, TX 77018
Tel.: 281.404.4696
Fax: 281.582.4138
jerad@najvarlaw.com
*Attorney-in-Charge for Plaintiffs*

Najvar Law Firm, PLLC
2180 N. Loop W.,
Suite 255
Houston, TX 77018
*Of Counsel*

**PAUL A. ROSSI**

6

Pennsylvania Bar. No. 84947
Pennsylvania Middle District Bar No. 84947
IMPG Advocates, Inc.
Paul-Rossi@comcast.net
*Of Counsel (admitted pro hac vice)*

## CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that on August 19, 2022, he sought to confer with counsel for Defendants by email (late in the afternoon), and had not received a response prior to filing. Defendants are thus marked as opposed, as undersigned counsel represented to them that he would represent in the event they could not respond before filing.

*/s/ Jerad Najvar*
Jerad Najvar

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 8, 2022, the foregoing document, and any accompanying exhibits, was served by CM/ECF as follows:

Suzanne R. Chauvin
Senior Assistant City Attorney
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
Suzanne.Chauvin@houstontx.gov
832.393.6219 (O)
832.393.6259 (F)
*Counsel for Defendants*

*/s/ Jerad Najvar*
Jerad Najvar